Appeal Nos. 2021-2316, 2021-2317

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

BLUE GENTIAN, LLC, NATIONAL EXPRESS, INC., TELEBRANDS CORPO-
RATION,

*Plaintiffs-Appellants,*

v.

TRISTAR PRODUCTS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
District of New Jersey in Case No. 1:13-cv-01758-NLH-AMD,
Honorable Judge Noel L. Hillman

## TRISTAR PRODUCTS, INC.'S OPPOSED MOTION TO DISMISS FOR LACK OF JURISDICTION RESULTING FROM ABSENCE OF A FINAL JUDGMENT

This appeal should be dismissed and the case remanded to the District Court

because Appellant Telebrands Corp. has failed to take the necessary steps below to

reach a final, appealable judgment. Telebrands' consolidated appeal[1] is premature,

and this Court lacks jurisdiction to proceed.[2]

While Telebrands tells the Court there is already a final judgment below

---

[1] Plaintiffs' first (February 14, 2020) and second (September 10, 2021) notices of
appeal (Exs. F, N (Dkts. 555, 571)) were eventually docketed as 22-2316 and 22-
2317 on September 16, 2021, and consolidated in docket 22-2316.
[2] Appellant has stated that it opposes this motion and will file a response.

(*e.g.,* DE[3] 9 at 1, 4 (Appellant Telebrands' docketing statement)), Telebrands actually appealed a judgment concerning only *one* of Appellee's counterclaims (Exs. F, N (Dkts. 555, 571)), and numerous *other* claims remain pending in the District Court—including Telebrands' own claims (together with the remaining Plaintiffs who are not appellants here) for infringement of the six Asserted Patents,[4] as well as Tristar Products, Inc.'s counterclaims for declarations of non-infringement, invalidity, and unenforceability, and for a declaration that Tristar is a licensee, of each of the Asserted Patents (along with, *e.g.*, Appellee's claims for costs and fees). Although Telebrands is correct that the ruling below on Appellee Tristar's correction of inventorship counterclaims means "Plaintiffs' patent suit must be dismissed" (DE 9 at 4), this has not yet occurred. Plaintiffs' infringement claims, and these other claims of Tristar's, have not yet been dismissed or otherwise finally adjudicated.

Moreover, Telebrands clearly recognizes this: together with the two other Plaintiffs who have since pulled out of this appeal, Telebrands filed two separate notices of appeal nineteen months apart, and between these notices Telebrands pursued Rule 54(b) certification from the District Court so that it could appeal despite

---

[3] Citations to "DE" refer to the docket on appeal, and "Dkt." to the docket below.
[4] U.S. Pat. Nos. 8,291,941, 8,291,942, 8,479,776, 8,757,213, D722,681, and D724,186.

the other pending claims.  Certification was denied without prejudice pending me-diation, but with a clear invitation to renew the motion if (as occurred) mediation was unsuccessful.  Telebrands, however, ignored that invitation, and it declined several proposals from Tristar (over three months of discussions) to address the re-maining claims below and establish proper jurisdiction.

It is clear Telebrands intends, instead, to progress with substantive briefing in the hopes this Court may permit it to clean up its jurisdictional defect informally at some later stage.   But Telebrands' knowing pursuit of this appeal now without the required finality risks the "needless delay and inefficiency" this Court has re-peatedly cautioned against.  *E.g.*, *Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1293 (Fed. Cir. 2005).  Because this Court lacks jurisdiction, it should dismiss the appeal and remand before Telebrands continues to impose further unnecessary ex-pense and burdens both on this Court and Appellee Tristar.

## I.     Background

### A.     Multiple Unadjudicated Claims Remain Pending Below

The current Plaintiffs below are Blue Gentian, LLC, National Express, Inc., and Telebrands (which was joined as a Plaintiff and Counterclaim Defendant on June 19, 2017 (Ex. B (Dkt. 289))).  Plaintiffs' operative pleading is their Fifth

Amended Complaint against Defendants Tristar and Wal-Mart Stores, Inc.,[5] alleging infringement of the six Asserted Patents.  Ex. A (Dkt. 166).  Appellee Tristar's operative pleading below is its Amended Answer to Fifth Amended Complaint, Affirmative Defenses, and Counterclaims (Ex. C (Dkt. 352)), which includes counterclaims for a declaration of non-infringement, a declaration of invalidity, a declaration of unenforceability, and a declaration that Tristar is a licensee of each Asserted Patent, as well as for correction of inventorship of each Asserted Patent. *Id.*

Plaintiffs' claims for infringement remain pending; they have not yet been dismissed or otherwise finally adjudicated in the District Court, and the Plaintiffs below are not all present here before this Court as appellants.  *See* DE 15 (granting motion of Blue Gentian and National Express to withdraw from appeal).  The Court has also not dismissed or otherwise adjudicated any of Appellee Tristar's counterclaims other than inventorship, the sole issue Telebrands seeks to appeal.[6]

---

[5] Plaintiffs and Defendant Walmart stipulated to the dismissal of this action against Walmart on May 13, 2020 (Ex. I (Dkt. 565)), after Plaintiffs' first notice of appeal here (Ex. F (Dkt. 555)), leaving Tristar as the sole remaining Defendant.

[6] On January 16, 2020, the District Court rendered an Opinion (Ex. E (Dkt. 545)) and ordered the entry of judgment in favor of Defendants Tristar and Walmart as to Defendants' counterclaims for correction of inventorship of the six Asserted Patents (Ex. D (Dkt. 548)).  On August 12, 2021, the district court (in response to Tristar's motion for limited clarification) entered the Amended Opinion (Ex. M (Dkt. 569)) and left its judgment on Appellee Tristar's counterclaims for correction

### B.    Plaintiffs Filed Two Notices of Appeal, Nineteen Months Apart, Without Ever Reaching Final Judgment

On January 31, 2020, Plaintiffs (including Appellant Telebrands) moved for certification under Fed. R. Civ. P. 54(b) of the District Court's judgment regarding Defendants' inventorship counterclaims, or in the alternative "entry of a final judgment." *E.g.*, EX. G (Dkt. 550).  At the same time, Plaintiffs sought to stay District Court proceedings on all remaining claims.  *See id.*  On February 14, 2020, Plaintiffs filed their first notice of appeal, appealing *only* the District Court's ruling on Defendants' correction of inventorship counterclaims.  *See* Ex. F (Dkt. 555) (appealing "from the Judgment and Opinion (Docket Nos. 545 & 548) entered in this action on January 16, 2020, entered in favor of Defendants *as to Defendants' claims for Correction of Inventorship*" (emphasis added)).  Plaintiffs also continued to urge their motion for Rule 54(b) certification[7] and a stay of District Court proceedings.  Ex. H (Dkt. 562) (Reply filed February 24, 2020); *cf.* Ex. J (Dkt. 558) at 3 n.3 (Defendants noting Plaintiffs' notice of appeal was premature).

---

of inventorship (Ex. D (Dkt. 548)) undisturbed.

[7] *See, e.g., Meade Instruments Corp. v. Reddwarf Starware*, LLC, 2000 U.S. App. LEXIS 17877, *8 (Fed. Cir. June 23, 2000) (nonprec.) ("Reddwarf's motion for Rule 54(b) certification belies any notion that it was under the mistaken impression that the district court's order was final and appealable.").

On August 12, 2021, the District Court denied without prejudice Plaintiffs'

motion for Rule 54(b) certification in light of pending mediation, but invited re-

newal of the motion if mediation was unsuccessful.  Ex. K (Dkt. 567) at 18–19,

23–24 ("If the mediation is unsuccessful, …the Court finds a longer stay for certi-

fication may be appropriate.").  As noted, the District Court on August 12, 2021

also made limited clarifications to the Opinion accompanying its ruling on Tristar's

correction of inventorship counterclaims (Exs. K–M (Dkts. 567–569)), but no

changes to the January 16, 2020 judgment itself.  Ex. D (Dkt. 548).  Plaintiffs

nonetheless appealed again on September 10, 2021, despite the earlier denial of

their Rule 54(b) motion and the many other claims still pending.  Plaintiffs' second

notice of appeal was again limited to the District Court's disposition of Tristar's

correction of inventorship counterclaims.  *See* Ex. N (Dkt. 571) (appealing "from

the Opinion and Judgment (Docket Nos. 545 & 548) as entered in this action on

January 16, 2020, and Amended Opinion (Docket No. 567), as entered in this ac-

tion on August 12, 2021, entered in favor of Defendants as to Defendants' claims

for Correction  of Inventorship").

Upon Plaintiffs' filing of their September notice, Defendants again reached

out to warn that this appeal, too, was premature as there was no final judgment.

Since then, Appellee Tristar has sought resolution of Telebrands' jurisdictional de-

fect without the imposition of further burden, risk, and expense on Tristar and the

courts involved.  However, Telebrands (with the other Plaintiffs below) has rejected those proposals.  Accordingly, Appellee Tristar must seek relief from the Court and dismissal of this appeal.

## II.    Argument

Telebrands' consolidated appeal, like both notices on which it is based, is premature because—despite Telebrands' assertion—there is no "Final Judgment." *Cf*. DE 9 at 1.  In particular, there is no decision that "ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment." *See, e.g.*, *Nystrom v. TREX Co.*, 339 F.3d 1347, 1350 (Fed. Cir. 2003) (quoting *Caitlin v. U.S.*, 324 U.S. 229 (1945)); *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) ("Generally, an order which terminates fewer than all claims pending in an action or claims against fewer than all the parties to an action does not constitute a 'final' order for purposes of 28 U.S.C. § 1291").[8]  Nor is there any Rule 54(b) certification.  As explained above, Plaintiffs' (including Telebrands') still-pending claims for infringement, as well as Appellee Tristar's still-pending

---

[8] *See, e.g.*, *W.L. Gore & Assocs. v. Int'l Med. Prosthetics Research*, 975 F.2d 858, 861, 864 (Fed. Cir. 1992) (looking to Supreme Court case law, as well as Federal Circuit and pertinent regional (Ninth) circuit case law and then the law of all circuits, as necessary, for guidance in considering meaning of "finality" for Rule 54(b) purposes and "traditional notions of finality").

counterclaims for declarations of non-infringement, invalidity, and unenforceability, and a declaration that Tristar is a licensee of each Asserted Patent, have never been dismissed or otherwise finally adjudicated, meaning the judgment appealed from is not final. *See, e.g.*, *Nystrom*, 339 F.3d at 1348 ("Because TREX's invalidity and unenforceability counterclaim… remains pending at the district court, the judgment appealed is not final… Therefore, the court dismisses the appeal for lack of jurisdiction"); *Pause Tech.*, 401 F.3d at 1293–94 (dismissing appeal for lack of jurisdiction where invalidity counterclaim remained unadjudicated; "There is no dispute that the district court did not expressly dismiss the invalidity counterclaim and that a pending counterclaim precludes jurisdiction absent certification under Rule 54(b)").

That various of these claims *could* or *should* be dismissed in the future[9]—as Telebrands has argued, but now without participation on appeal of two other remaining Plaintiffs (*see* DE 12; DE 15)—cannot and does not create finality here, and the consolidated appeal is clearly premature. *E.g.*, *Nystrom*, 339 F.3d at 1350-51 (outlining four paths the parties and district court *could* have taken to yield an appeal with jurisdiction, but had not yet taken, in dismissing appeal for lack of ju-

---

[9] To be clear, Tristar has repeatedly identified to Telebrands ways in which finality and disposition of the remaining claims could be achieved now, but Telebrands has chosen not to pursue them.

risdiction).  Indeed, there is no colorable argument that the judgment here is final—Telebrands' own actions confirm it is not, and it is undisputed that numerous claims remain pending below.  This Court made the consequences of just this sort of jurisdictional error clear in *Pause Tech*., which recognized that "parties too frequently are not reviewing the actions of the district courts for finality before lodging appeals," leading to "needless delay and inefficiency…."  401 F.3d at 1293.  This Court thus concluded it "will insist upon diligent compliance by counsel with the rule of finality."  *Id.*

Finally, Appellant Telebrands' repeated suggestion over the last three months that this defect can simply be brushed under the rug until oral argument[10] is untenable, and would knowingly invite the "needless delay and inefficiency" this Court has warned against.  *E.g.*, *Pause Tech.*, 401 F.3d at 1293.  Telebrands' apparent plan to seek forgiveness later, rather than reach a solution to this known jurisdictional defect now, is not only improper but also unworkable.  Among other things, two of the parties (Plaintiffs Blue Gentian and National Express) that would

---

[10] In particular, Telebrands has cited prior decisions permitting last-minute cures of jurisdictional defects raised at oral argument.  *See, e.g.*, *Amgen Inc. v. Amneal Pharms. LLC*, 945 F.3d 1368, 1374 (Fed. Cir. 2020) ("when questioned at oral argument about the jurisdictional defect in Zydus's appeal, Zydus represented that it would 'give up' its invalidity defense"); *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1366 (Fed. Cir. 2021) ("During oral argument, Dropbox agreed to give up its invalidity counterclaims"); *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1316 (Fed. Cir. 2000) ("At oral argument, [appellant's] counsel… conceded… the district court's claim construction resolved the issue").

9

be required to make an on-the-fly "deal" regarding Plaintiffs' pending claims, as Telebrands apparently contemplates, *are not present* in this appeal, having expressly withdrawn from it in coordination with Telebrands.  *See* DE 12; DE 15.

## III.    Conclusion

As this Court has repeatedly warned it will do in cases like this one, the Court should dismiss Appellant Telebrands' clearly premature appeal and remand to the District Court, where Plaintiffs may undertake to address this jurisdictional defect.

Date:  December 14, 2021               /s/J. Steven Baughman
                                        J. Steven Baughman
                                        PAUL, WEISS, RIFKIND,
                                            WHARTON & GARRISON LLP
                                        2001 K Street, NW
                                        Washington, DC 20006
                                        Tel. (202) 223-7300
                                        Fax. (202) 223-7420
                                        sbaughman@paulweiss.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). The motion contains 2088 words, excluding parts exempted by Fed. R. App. P. 32(f) and Federal Circuit Rule 32(b). The word count includes the words counted by the Microsoft Word 2016 function.

This motion also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E). The motion has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font of Times New Roman.

Dated:  December 14, 2021                    /s/ J. Steven Baughman
                                             J. Steven Baughman

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2021-2316, 2021-2317 |
| **Short Case Caption** | Blue Gentian, LLC v. Tristar Products, Inc. |
| **Filing Party/Entity** | Tristar Products, Inc. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/30/2021

Signature: /s/ J. Steven Baughman

Name: J. Steven Baughman

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Tristar Products, Inc. | Mr. Gary Ragner;<br>Ragner Technology Corp. | n/a |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| Edward Paul Bakos with Bakos & Kritzer | | |
| Noam Joseph Kritzer with Bakos & Kritzer | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| Tristar Prods., Inc. v. Nat'l Express, Inc., Case No. 2:13-cv-07752-ES-MAH (D.N.J.) | Telebrands Corp. v. Ragner Tech. Corp., Case No. 2:16-cv-03594-ES-MAH (D.N.J.) | Ragner Tech. Corp. v. Berardi, Case No. 1:15-cv-7752 (D.N.J.) |
| Ragner Tech. Corp. v. Telebrands Corp., Case No. 2:15-cv-08185-ES-MAH (D.N.J.) | Telebrands Corp. v. Ragner Tech. Corp., Case No. 2:16-cv-3474-ES-MAH (D.N.J.) | Ragner Tech. Corp. v. True Value Co., Case No. 1:15-cv-00741 (D. Del.) |
| Telebrands Corp. v. Ragner Tech. Corp., Case No. 2:15-cv-03163-ES-MAH (D.N.J.) | Blue Gentian, LLC v. Tristar Prods., Inc., Case No. 1:13-cv-7099-NLH-AMD (D.N.J.) | Ragner Tech. Corp. v. Berardi, Case No. 50-2019-CA-006688 (Fla. 15th Cir. Ct.) |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

| EXHIBIT NO. | DOCUMENT | DISTRICT COURT DOCKET NO. ("Dkt.") |
|---|---|---|
| Exhibit A | Fifth Amended Complaint For Patent Infringement | 166 |
| Exhibit B | Order dtd. June 19, 2017 | 289 |
| Exhibit C | Defendant Tristar Products, Inc.'s Amended Answer To Fifth Amended Complaint, Affirmative Defenses, and Counterclaims | 352 |
| Exhibit D | Order dtd. January 16, 2020 | 548 |
| Exhibit E | Opinion dtd. January 16, 2020 | 545 |
| Exhibit F | Notice of Appeal dtd. February 14, 2020 | 555 |
| Exhibit G | Notice of Motion Requesting Certification of Judgment Under Rule 54(B) and Motion for Stay of Order and Judgment (Docket Nos. 545 & 548) and of Certain Proceedings Pending Appeal | 550 |
| Exhibit H | Reply Brief in Further Support of Plaintiffs' Motion Requesting Certification of Judgment Under Rule 54(B) and Motion for Stay of Order and Judgment (Docket Nos. 545 & 548) and of Certain Proceedings Pending Appeal | 562 |
| Exhibit I | Stipulation of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(ii) | 565 |
| Exhibit J | Defendants' Brief in Response to Plaintiffs' Motion to Certify for Appeal Under Rule 54(B) and for Related Stay | 558 |

| EXHIBIT NO. | DOCUMENT | DISTRICT COURT DOCKET NO. ("Dkt.") |
|---|---|---|
| Exhibit K | Opinion dtd. August 12, 2021 | 567 |
| Exhibit L | Order dtd. August 12, 2021 | 568 |
| Exhibit M | Amended Opinion dtd. August 12, 2021 | 569 |
| Exhibit N | [Amended] Notice of Appeal dtd. September 10, 2021 | 571 |

# EXHIBIT A

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

*Attorneys for Plaintiffs*
*Blue Gentian, LLC and National Express, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BLUE GENTIAN, LLC and NATIONAL EXPRESS, INC., | : : : | Civil Action No. 13-1758 (NLH) (AMD) |
| Plaintiffs, | : : | Hon. Noel L. Hillman, U.S.D.J. Hon. Ann Marie Donio, U.S.M.J. |
| v. | : : | |
| TRISTAR PRODUCTS, INC., and WAL-MART STORES, INC., | : : : | |
| Defendants. | : : | |

**FIFTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs, BLUE GENTIAN, LLC ("Blue Gentian") and NATIONAL EXPRESS, INC. ("National Express") sue Defendants TRISTAR PRODUCTS, INC. ("Tristar"), and WAL-MART STORES, INC. ("Wal-Mart") for Patent Infringement under the Patent Act and complain as follows:

**JURISDICTION AND VENUE**

1.      This is an action for Patent Infringement under the Patent Act, 35 U.S.C. § 271.

2.      This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1338(a).

3.      This court has personal jurisdiction over Tristar, which has its principal place of business in the State of New Jersey, has marketed and sold the accused Flex-Able Hose products throughout the State, and has submitted to jurisdiction in this Court by filing an Answer, Affirmative Defenses and Counterclaims in this action.  This court has personal jurisdiction over Wal-Mart, which regularly conducts business throughout the State of New Jersey, including selling and offering to sell Tristar's accused Flex-Able Hose products in its "Wal-Mart" and "Sam's Club" and/or "Sam's Wholesale Club" retail locations therein.

4.      Venue is proper in this District, pursuant to 28 U.S.C. §§ 1391(b & c) and 1400(b), because Tristar and Wal-Mart are each subject to personal jurisdiction in the District and have committed acts of Patent Infringement in the District.

## THE PARTIES

5.      Plaintiff Blue Gentian is a Florida limited liability company having its principal place of business at 516 Les Jardin Drive, Florida.

6.      Plaintiff National Express is a Connecticut corporation having its principal place of business at 2 Morgan Avenue, Norwalk, Connecticut.

7.      Defendant Tristar is a Pennsylvania corporation having its principal place of business at 492 Route 46 East, Fairfield, New Jersey.

8.      Defendant Wal-Mart is a Delaware corporation having its principal place of business at 702 SW 8th Street, Bentonville, Arkansas.

## BACKGROUND

9.      Blue Gentian's principal, Michael Berardi, has conceived and invented a novel hose product that is light in weight, does not kink when unwrapped or uncoiled, and can be substantially reduced in length and width when not in use simply by turning off the flow of water

into it.  The product has been marketed in the United States, under the XHose® trademark, since March 24, 2012.

10.     Blue Gentian is the owner of all intellectual property rights in connection with the XHose® product invented by Berardi including, without limitation, the patent rights asserted in this Complaint.  Blue Gentian is the owner of U.S. Patent No. 8,757,213, entitled "Commercial Hose" and issued on June 24, 2014 ("the '213 Patent").  The '213 Patent is a continuation-in-part of the invention disclosed in U.S. Patent No. 8,479,776, entitled "Expandable Garden Hose" and issued on July 9, 2013 ("the '776 Patent"), which is a continuation-in-part of the inventions disclosed in U.S. Patent No. 8,291,941, entitled "Expandable and Contractible Hose" and issued on October 23, 2012 ("the '941 Patent") and U.S. Patent No. 8,291,942, entitled "Expandable Hose Assembly" and also issued on October 23, 2012 ("the '942 Patent").  Copies of the '213, '776, '941 and '942 Patents are attached as Exhibits "A", "B", "C" and "D" hereto, respectively.

11.     Blue Gentian is also the owner of all right, title and interest in and to certain U.S. Design Patents depicting ornamental designs also invented by Berardi.  Specifically, Blue Gentian is the owner of U.S. Design Patent D722,681, entitled "Expandable Hose" and issued on February 17, 2015 ("the '681 Patent"), which is a continuation-in-part of the ornamental design shown in U.S. Design Patent D724,186, entitled "Expandable Hose Assembly" and issued on March 10, 2015 ("the '186 Patent").  Copies of the '681 and '186 Patents are attached as Exhibits "E" and "F" hereto, respectively.

12.     Blue Gentian has granted National Express the exclusive right under the '941, '942, '776, '213, '681 and '186 Patents (collectively, "the Patents-in-Suit") to make, use, sell, offer for sale, import, market, promote and/or distribute expandable/retractable hoses embodying the inventions disclosed therein, within certain non-geographic markets, including the direct-to-

consumer and retail markets in which Tristar sells the accused Flex-Able Hose product. As such, National Express maintains the right to exclude all others from practicing the patents within those defined markets.

13.     Consistent with such license, both the packaging for the XHose® and the product's website advised of pending patent protection as early as March, 2012, and have also advised of the Patents-in-Suit after their issuance.

14.     Indicative of the ingenuity and popularity of the XHose® product, as well as Tristar's determination to sell the product, since August 2012 Tristar has promoted and sold an infringing expandable hose product embodying the inventions protected under the Patents-in-Suit. A screen shot of Tristar's website "www.flexablehose.com" promoting such product under the brand "Flex-Able Hose" is attached as Exhibit "G" hereto.

15.     Wal-Mart has promoted and sold iterations of the Flex-Able Hose product at its "Wal-Mart" and "Sam's Club" retail locations, as well as on its websites www.walmart.com and www.samsclub.com. Screen shots of these websites promoting the product are attached as Exhibit "H" hereto.

16.     Plaintiffs and Tristar filed suit against each other on October 23, 2012, the day the '941 and '942 Patents issued. Plaintiffs filed the present action in the Southern District of Florida for infringement of the '941 and '942 Patents. Tristar sued Plaintiffs, E. Mishan & Sons, Inc. and DAP Brands Co. in the District of New Jersey for declaratory judgment of patent non-infringement and invalidity with respect to the '941 and '942 Patents (Civil Action No. 12-cv-06675-DMC). The present action was ultimately transferred to this Court. Tristar's declaratory judgment action was dismissed without prejudice by the Court.

17.     Tristar received formal written notice of the '776 Patent through a letter to its counsel dated July 9, 2013.  A copy of this letter is attached as Exhibit "I" hereto.  Despite such notice, Tristar has willfully continued to infringe the '776 Patent.

18.     Wal-Mart received a similar formal written notice of the Patents-in-Suit through a letter to its president dated November 21, 2013.  A copy of this letter is attached as Exhibit "J" hereto. To date, Wal-Mart has issued only a generic, non-committal response while willfully continuing to infringe the Patents-in-Suit.

19.     Plaintiffs advised Defendants of the impending issuance of the '213 Patent, including the date thereof, in a joint letter of counsel (D.E. # 97) to the Court submitted on June 6, 2014.

20.     Plaintiffs advised Defendants of the impending issuance of the '681 and '186 Patents, including the dates thereof, in a joint letter of counsel (D.E. # 120) to the Court submitted on March 2, 2015.

21.     Wal-Mart was previously a named defendant in Civil Action No. 13-cv-4627, styled *Blue Gentian, LLC, et al. v. Wal-Mart Stores, Inc., et al.*, which was previously consolidated with the present action for pretrial purposes and then stayed.  The 13-4627 action was dismissed upon notice to the Court of the settlement of Civil Action No. 12-cv-6671 and the 13-4627 action on June 8, 2015.  Each of the Patents-in-Suit in the present action was asserted against Wal-Mart in the 13-4627 action for its sale and offers to sell the Pocket Hose expandable and contractible hose product produced by Telebrands Corporation.

22.     Wal-Mart was also previously a named defendant in Civil Action No. 13-cv-7099, styled *Blue Gentian, LLC, et al. v. Wal-Mart Stores, Inc., d/b/a Sam's Club and Sam's Wholesale Club,* which was consolidated with the present action for pretrial purposes and then stayed.  The

Court recently lifted the stay of the 13-7099 action, and then administratively closed and consolidated it into the present action.

23.     Wal-Mart had previously sold the XHose® in its stores in January and February 2013, selling all units that had been shipped to test the market for the product. The XHose® was marked with the '941 and '942 Patents, in accordance with 35 U.S.C. § 287, during that entire time period. A sample Wal-Mart display of the XHose®, with the patent markings included on a white label on the lower left corner of the product's packaging, is depicted in Exhibit "K" hereto.

24.     Over the course of this litigation, Tristar has redesigned certain features related to the inlet and outlet couplers and flow restrictor of the Flex-Able Hose. Tristar has also marketed a "Tough Grade" Flex-Able Hose constructed of purportedly stronger materials than the original Flex-Able Hose. Tristar has also incorporated the Flex-Able Hose into its sales of a pressure washer product under the brand "EZ-Jet". Screen shots from Tristar's websites "www.flexablehose.com" and "www.tryezjet.com" promoting these products are attached as composite Exhibit "L" hereto.

25.     Tristar has also recently introduced yet another iteration of the Flex-Able Hose, advertised and sold as the "Extreme Flex-Able Hose" which also infringes the Patents-in-Suit. While the Flex-Able Hose generally is sold at "Wal-Mart" retail stores and on the Wal-Mart website, the "Extreme Flex-Able Hose" appears to be sold only through Sam's Club and on the Sam's Club website. A photograph of the product in its packaging is attached as Exhibit "M" hereto. Further discovery is required as to the full extent of sales of this product.

26.     Tristar has endeavored to legitimize its infringement of the Patents-in-Suit through inequitable conduct before the U.S. Patent Office. On May 5, 2015 U.S. Patent No. 9,022,076, entitled "Linearly Retractable Pressure Hose Structure" ("the '076 Patent"), was

issued to Ragner Technology Corporation ("Ragner"). Tristar sells Flex-Able Hose products under purported license from Ragner's patents including U.S. Patent No. 7,549,448 ("the '448 Patent") and U.S. Patent No. 8,776,836 ("the '836 Patent"). Ragner and Tristar are currently asserting the '448 and '836 Patents against the XHose® product in the case styled *Tristar Prods., Inc., et al. v. National Express, Inc. et al.,* Civil Action No. 2:13-cv-07752-ES-MAH (D.N.J.) ("the 13-7752 action"). The '076 Patent was filed as a continuation of the '836 Patent (eight years after the '836 Patent was filed), which was filed as a continuation-in-part of the '448 Patent. Upon information and belief, Tristar was actively involved in Ragner's prosecution of the '076 Patent. A copy of the '076 Patent is attached as Exhibit "N" hereto.

27.    The filing of the '076 Patent constitutes an attempt by Tristar and Ragner to manufacture prior art evidence against the Patents-in-Suit through deception before the Patent Office. The '076 Patent was filed as a continuation of the '836 Patent in order to claim an earlier priority date, notwithstanding the fact that its claims consist mainly of language directly copied from the claims of the '941 Patent. Significant portions of language from the '941 Patent were copied into the claims of the '076 Patent, as follows: Claim 1 of the '076 Patent copies language from Claim 1 of the '941 Patent as originally filed; Claims 2, 4 and 7 of the '076 Patent copy language from Claim 1 of the issued '941 Patent; Claim 8 of the '076 Patent copies language from Claim 2 of the issued '941 Patent; Claim 9 of the '076 Patent copies language (including a typographical error) from Claim 3 of the issued '941 Patent; Claim 11 of the '076 Patent copies language from Claim 10 of the issued '941 Patent; Claim 12 of the '076 Patent copies language from Claim 11 of the issued '941 Patent; Claim 13 of the '076 Patent copies language from Claim 13 of the issued '941 Patent; Claim 14 of the '076 Patent copies language from Claim 15 of the issued '941 Patent; Claim 15 of the '076 Patent copies language from Claim 18 of the

issued '941 Patent; and Claim 16 of the '076 Patent copies language from Claim 22 of the issued '941 Patent.

28.    The claims copied from the '941 Patent were grafted onto the specification of the '836 Patent, a patent which Ragner fraudulently revived after abandonment during prosecution. The '076 Patent was filed as a continuation of the '836 Patent in order to improperly influence the Patent Examiner into finding support for the '941 Patent claim language in the '836 Patent specification, while not considering the '941 Patent as prior art because of the earlier priority date afforded to the '076 Patent for being filed as a continuation of the '836 Patent.

29.    Ragner did not disclose this copying of the '941 Patent - or the existence of the present action, the 13-7099 action and the 13-7752 action involving the subject matter of these patents – to the Patent Office, all in violation of his duty to disclose material information under 37 C.F.R. § 1.56. Such an act constitutes an example of "disreputable or gross misconduct" under the former 37 C.F.R. § 10.23(c)(7), now incorporated into 37 C.F.R. § 11.804. Further, Ragner filed the '076 Patent with its copied claims more than 12 months after the '941 Patent had issued, in violation of 35 U.S.C. § 135(b)(1), as applicable to the '076 Patent because it claims priority before March 16, 2013.

30.    In its Invalidity Contentions served in this action, Tristar invoked the '076 Patent as purported prior art, claiming that each of the '941, '942, '776 and '213 Patents is invalid as anticipated or obvious under 35 U.S.C. §§ 102 and 103 in view of the '076 Patent. Tristar is now raising the '076 Patent as prior art against the same '941 Patent from which its claims were fraudulently copied. It is doing so notwithstanding the fact that the '076 Patent was filed 29 months after the filing of the '941 Patent, 22 months after the '942 Patent, 17 months after the '776 Patent and 12 months after the '213 Patent.

31.     Tristar has also attempted to improperly use the '076 Patent to bolster its overreaching proposed claim constructions of Ragner's '448 and '836 Patents, for the purposes of expanding their scope to support their infringement claim against the XHose® product in the above-referenced 13-7752 action, while also supporting the assertion of Ragner's 448 Patent as prior art against the '941, '942, '776 and '213 Patents in the present action.

32.     Upon information and belief, the '076 Patent was prosecuted with Tristar's knowledge, consent and assistance solely for the purpose of unduly influencing the outcome of the present action and the 13-7752 action, without regard or concern for the inequitable conduct before the Patent Office necessary to obtain its issuance.  Such disregard was evident during a July 6, 2015 hearing before the Honorable Judge Salas in the 13-7752 action, in which Tristar's counsel argued that, even if the allegations of fraud in connection with the '076 Patent are true, the result was nevertheless the issuance of a patent that would be used to support Ragner and Tristar's proposed claim construction for the '448 and '836 Patents in that action.

33.     Upon information and belief, Wal-Mart has knowledge of and has adopted Tristar's bad-faith course of action in connection with the '076 Patent as part of their concerted defense in the present action.

## COUNT I
## DIRECT PATENT INFRINGEMENT
### (Tristar - '941 Patent)

34.     This Count alleges direct Patent Infringement of the '941 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

35.     Tristar has infringed and is still infringing one or more claims of the '941 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose

products embodying the invention protected under the '941 Patent, and will continue to do so unless enjoined by this Court.

36.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

37.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT II
## INDIRECT PATENT INFRINGEMENT
### (Tristar - '941 Patent)

38.     This Count alleges indirect Patent Infringement of the '941 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**A.     INDUCEMENT OF INFRINGEMENT**

39.     Tristar has induced others to infringe and continues to induce others to infringe one or more claims of the '941 Patent.

40.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

41.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '941 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

42.     Tristar should have known, and has known, that selling and offering to sell, and, upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '941 Patent.

43.     Despite having knowledge of the issuance of the '941 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause infringement of the '941 Patent by end-user retail customers and retailers.

44.     Since at least the date of the issuance of the '941 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

45.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

46.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**B.     CONTRIBUTORY INFRINGEMENT**

47.     Tristar has contributorily infringed and continues to contributorily infringe the '941 Patent.

48.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

49.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '941 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

50.     Despite having knowledge of the announced issuance of the '941 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '941 Patent by customers and retailers.

51.     Since at least the date of the issuance of the '941 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

52.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '941 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '941 Patent.

53.     Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

54.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

55.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are

causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT III
## <u>DIRECT PATENT INFRINGEMENT</u>
### (Tristar - '942 Patent)

56.    This Count alleges direct Patent Infringement of the '942 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

57.    Tristar has infringed and is still infringing one or more claims of the '942 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products embodying the invention protected under the '942 Patent, and will continue to do so unless enjoined by this Court.

58.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

59.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT IV
## <u>INDIRECT PATENT INFRINGEMENT</u>
### (Tristar - '942 Patent)

60.    This Count alleges indirect Patent Infringement of the '942 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

## A.    INDUCEMENT OF INFRINGEMENT

61.    Tristar has induced others to infringe and continue to induce others to infringe one or more claims of the '942 Patent.

62.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

63.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '942 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

64.    Tristar should have known, and has known, that selling and offering to sell and, upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '942 Patent.

65.    Despite having knowledge of the announced issuance of the '942 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold and offered to sell the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '942 Patent by customers and retailers.

66.    Since at least the date of the issuance of the '942 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including though its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

67.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

68.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**B.     CONTRIBUTORY INFRINGEMENT**

69.     Tristar has contributorily infringed and continues to contributorily infringe the '942 Patent.

70.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

71.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '942 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

72.     Despite having knowledge of the announced issuance of the '942 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause the infringement of the '942 Patent by customers and retailers.

73.     Since at least the date of the issuance of the '942 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

74.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '942 Patent, and has done so with

knowledge that the products are especially made or adapted for use in an infringement of the '942 Patent.

75.     Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.   They are assembled from manufactured components for a specific function having no purpose other than infringement.

76.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

77.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.   These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**COUNT V**
**DIRECT PATENT INFRINGEMENT**
**(Tristar - '776 Patent)**

78.     This Count alleges direct Patent Infringement of the '776 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

79.     Tristar has infringed and is still infringing one or more claims of the '776 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products embodying the invention protected under the '776 Patent, and will continue to do so unless enjoined by this Court.

80.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

Case 21-2346   Document 17   Page 34   Filed 12/14/2021

81.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**COUNT VI**
**INDIRECT PATENT INFRINGEMENT**
**(Tristar - '776 Patent)**

82.     This Count alleges indirect Patent Infringement of the '776 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**A.     INDUCEMENT OF INFRINGEMENT**

83.     Tristar has induced others to infringe and continues to induce others to infringe one or more claims of the '776 Patent.

84.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '776 Patent.

85.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '776 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

86.     Tristar should have known, and has known, that selling and offering to sell, and, upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '776 Patent.

87.     Despite having knowledge of the issuance of the '776 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '776 Patent by customers and by retailers.

88.   Since at least the date of the issuance of the '776 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

89.   Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

90.   Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**B.   CONTRIBUTORY INFRINGEMENT**

91.   Tristar has contributorily infringed and continues to contributorily infringe the '776 Patent.

92.   Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '776 Patent.

93.   Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '776 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

94.   Despite having knowledge of the issuance of the '776 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause the infringement of the '776 Patent by customers and retailers.

95.     Since at least the date of the issuance of the '776 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

96.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '776 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '776 Patent.

97.     Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

98.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

99.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT VII
## DIRECT PATENT INFRINGEMENT
### ('213 Patent)

100.     This Count alleges direct Patent Infringement of the '213 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

101.     Tristar has infringed and is still infringing one or more claims of the '213 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products embodying the invention protected under the '213 Patent, and will continue to do so unless enjoined by this Court.

102.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

103.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT VIII
## <u>INDIRECT PATENT INFRINGEMENT</u>
### (Tristar - '213 Patent)

104.     This Count alleges indirect Patent Infringement of the '213 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

## A.     INDUCEMENT OF INFRINGEMENT

105.     Tristar has induced others to infringe and continues to induce others to infringe one or more claims of the '213 Patent.

106.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

107.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '213 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

108.    Tristar should have known, and has known, that selling and offering to sell, and, upon belief, importing into the United States Flex-Able Hose products would cause the direct infringement of the '213 Patent.

109.    Despite having knowledge of the issuance of the '213 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '213 Patent by customers and by retailers.

110.    Since at least the date of the issuance of the '213 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

111.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

112.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## B.    CONTRIBUTORY INFRINGEMENT

113.    Tristar has contributorily infringed and continues to contributorily infringe the '213 Patent.

114.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

115.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '213 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

116.    Despite having knowledge of the issuance of the '213 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '213 Patent by customers and retailers.

117.    Since at least the date of the issuance of the '213 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®. Upon belief, it has taken no steps to remedy any infringement.

118.    Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '213 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '213 Patent.

119.    Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use. They are assembled from manufactured components for a specific function having no purpose other than infringement.

120.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

121.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs. These infringing acts have caused, are

causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT IX
## <u>DIRECT PATENT INFRINGEMENT</u>
### (Tristar - '681 Patent)

122.   This Count alleges direct Patent Infringement of the '681 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

123.   Tristar has infringed and is still infringing the '681 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products incorporating the ornamental design shown in the '681 Patent, and will continue to do so unless enjoined by this Court.

124.   Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

125.   Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT X
## <u>INDIRECT PATENT INFRINGEMENT</u>
### (Tristar - '681 Patent)

126.   This Count alleges indirect Patent Infringement of the '681 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

## A.      INDUCEMENT OF INFRINGEMENT

127.    Tristar has induced others to infringe and continues to induce others to infringe the '681 Patent.

128.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe the '681 Patent.

129.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe the '681 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

130.    Tristar should have known, and has known, that selling and offering to sell, and, upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '681 Patent.

131.    Despite having knowledge of the issuance of the '681 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '681 Patent by customers and by retailers.

132.    Since at least the date of the issuance of the '681 Patent, Tristar has had actual knowledge of Patent and the fact that its Flex-Able Hose products are infringements thereof, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

133.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

134.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are

causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**B.     CONTRIBUTORY INFRINGEMENT**

135.     Tristar has contributorily infringed and continues to contributorily infringe the '681 Patent.

136.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe the '681 Patent.

137.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe the '681 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

138.     Despite having knowledge of the issuance of the '681 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '681 Patent by customers and retailers.

139.     Since at least the date of the issuance of the '681 Patent, Tristar has had actual knowledge of the Patent and the fact that its Flex-Able Hose products are infringements thereof, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

140.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '681 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '681 Patent.

141.     Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific appearance having no purpose other than infringement.

142. Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

143. Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs. These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT XI
## DIRECT PATENT INFRINGEMENT
### (Tristar - '186 Patent)

144. This Count alleges direct Patent Infringement of the '186 Patent against Tristar, pursuant to 35 U.S.C. § 271(a). Plaintiffs repeat and reallege Paragraphs 1-33 above.

145. Tristar has infringed and is still infringing the '186 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products incorporating the ornamental design shown in the '186 Patent, and will continue to do so unless enjoined by this Court.

146. Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

147. Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs. These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT XII
## INDIRECT PATENT INFRINGEMENT
### (Tristar - '186 Patent)

148.    This Count alleges indirect Patent Infringement of the '186 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c). Plaintiffs repeat and reallege Paragraphs 1-33 above.

## A.    INDUCEMENT OF INFRINGEMENT

149.    Tristar has induced others to infringe and continues to induce others to infringe the '186 Patent.

150.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe the '186 Patent.

151.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe the '186 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

152.    Tristar should have known, and has known, that selling and offering to sell, and, upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '186 Patent.

153.    Despite having knowledge of the issuance of the '186 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '186 Patent by customers and by retailers.

154.    Since at least the date of the issuance of the '186 Patent, Tristar has had actual knowledge of Patent and the fact that its Flex-Able Hose products are infringements thereof, including through its copying of the XHose®. Upon belief, it has taken no steps to remedy any infringement.

155.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

156.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## B.    CONTRIBUTORY INFRINGEMENT

157.    Tristar has contributorily infringed and continues to contributorily infringe the '186 Patent.

158.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe the '186 Patent.

159.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe the '186 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

160.    Despite having knowledge of the issuance of the '186 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '186 Patent by customers and retailers.

161.    Since at least the date of the issuance of the '186 Patent, Tristar has had actual knowledge of the Patent and the fact that its Flex-Able Hose products are infringements thereof, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

162.    Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '186 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '186 Patent.

163.    Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use. They are assembled from manufactured components for a specific appearance having no purpose other than infringement.

164.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

165.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

## COUNT XIII
## DIRECT PATENT INFRINGEMENT
### (Wal-Mart - '941 Patent)

166.    This Count alleges direct Patent Infringement of the '941 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

167.    Wal-Mart has infringed and is still infringing one or more claims of the '941 Patent by selling and offering to sell hose products embodying the invention protected under the '941 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

168.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

169.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**COUNT XIV**
**<u>INDIRECT PATENT INFRINGEMENT</u>**
**(Wal-Mart - '941 Patent)**

170.    This Count alleges indirect Patent Infringement of the '941 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

## A.    INDUCEMENT OF INFRINGEMENT

171.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '941 Patent.

172.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

173.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '941 Patent.

174.    Despite having knowledge of the issuance of the '941 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '941 Patent.

175.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '941 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

176.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

177.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## B.    CONTRIBUTORY INFRINGEMENT

178.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '941 Patent.

179.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

180.    Despite having knowledge of the issuance of the '941 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '941 Patent.

181.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '941 Patent, and the fact that the Flex-Able Hose products

infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

182.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '941 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '941 Patent.

183.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use. They are assembled from manufactured components for a specific function having no purpose other than infringement.

184.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

185.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## COUNT XV
## DIRECT PATENT INFRINGEMENT
### (Wal-Mart - '942 Patent)

186.    This Count alleges direct Patent Infringement of the '942 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

187.    Wal-Mart has infringed and is still infringing one or more claims of the '942 Patent by selling and offering to sell hose products embodying the invention protected under the

'942 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

188.     Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

189.     Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**COUNT XVI**
**<u>INDIRECT PATENT INFRINGEMENT</u>**
**(Wal-Mart - '942 Patent)**

190.     This Count alleges indirect Patent Infringement of the '942 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**A.     INDUCEMENT OF INFRINGEMENT**

191.     Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '942 Patent.

192.     Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

193.     Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '942 Patent.

194.     Despite having knowledge of the issuance of the '942 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused

Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '942 Patent.

195.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '942 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.   Upon belief, it has taken no steps to remedy any infringement.

196.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

197.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.   These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## B.    CONTRIBUTORY INFRINGEMENT

198.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '942 Patent.

199.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

200.    Despite having knowledge of the issuance of the '942 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '942 Patent.

201.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '942 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

202.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '942 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '942 Patent.

203.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

204.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

205.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## COUNT XVII
## DIRECT PATENT INFRINGEMENT
### (Wal-Mart - '776 Patent)

206.    This Count alleges direct Patent Infringement of the '776 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

207.    Wal-Mart has infringed and is still infringing one or more claims of the '776 Patent by selling and offering to sell hose products embodying the invention protected under the '776 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

208.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

209.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**COUNT XVIII**
**INDIRECT PATENT INFRINGEMENT**
**(Wal-Mart - '776 Patent)**

210.    This Count alleges indirect Patent Infringement of the '776 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**A.      INDUCEMENT OF INFRINGEMENT**

211.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '776 Patent.

212.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '776 Patent.

213.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '776 Patent.

214.     Despite having knowledge of the issuance of the '776 Patent since at least the date
of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused
Flex-Able Hose products with specific intent to encourage and cause its customers' infringement
of the '776 Patent.

215.     Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual
knowledge of the claims of the '776 Patent, and the fact that the Flex-Able Hose products
infringe one or more of those claims.   Upon belief, it has taken no steps to remedy any
infringement.

216.     Wal-Mart's acts of infringement are willful, warranting the assessment of
increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional
case, pursuant to 35 U.S.C. § 285.

217.     Wal-Mart's acts of infringement have occurred, are occurring and will continue to
occur without the authority or license of Plaintiffs.   These infringing acts have caused, are
causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages,
unless and until Wal-Mart is enjoined from doing so by this Court.

**B.     CONTRIBUTORY INFRINGEMENT**

218.     Wal-Mart has contributorily infringed and continue to contributorily infringe the
'776 Patent.

219.     Wal-Mart's customers, by using the accused Flex-Able Hose products, have
directly infringed and continue to directly infringe one or more claims of the '776 Patent.

220.     Despite having knowledge of the issuance of the '776 Patent since at least the date
of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused

Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '776 Patent.

221.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '776 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

222.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '776 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '776 Patent.

223.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

224.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

225.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## COUNT XIX
## <u>DIRECT PATENT INFRINGEMENT</u>
### (Wal-Mart - '213 Patent)

226.    This Count alleges direct Patent Infringement of the '213 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

227.    Wal-Mart has infringed and is still infringing one or more claims of the '213 Patent by selling and offering to sell hose products embodying the invention protected under the '213 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

228.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

229.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## COUNT XX
## <u>INDIRECT PATENT INFRINGEMENT</u>
### (Wal-Mart - '213 Patent)

230.    This Count alleges indirect Patent Infringement of the '213 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**A.    INDUCEMENT OF INFRINGEMENT**

231.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '213 Patent.

232.   Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

233.   Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '213 Patent.

234.   Despite having knowledge of the issuance of the '213 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '213 Patent.

235.   Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '213 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

236.   Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

237.   Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

B.     CONTRIBUTORY INFRINGEMENT

238.   Wal-Mart has contributorily infringed and continue to contributorily infringe the '213 Patent.

239.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

240.    Despite having knowledge of the issuance of the '213 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '213 Patent.

241.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '213 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.   Upon belief, it has taken no steps to remedy any infringement.

242.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '213 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '213 Patent.

243.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.   They are assembled from manufactured components for a specific function having no purpose other than infringement.

244.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

245.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.   These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages,

unless and until Wal-Mart is enjoined from doing so by this Court.

## COUNT XXI
## DIRECT PATENT INFRINGEMENT
### (Wal-Mart - '681 Patent)

246.    This Count alleges direct Patent Infringement of the '681 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

247.    Wal-Mart has infringed and is still infringing one or more claims of the '681 Patent by selling and offering to sell hose products incorporating the ornamental design shown in the '681 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

248.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

249.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## COUNT XXII
## INDIRECT PATENT INFRINGEMENT
### (Wal-Mart - '681 Patent)

250.    This Count alleges indirect Patent Infringement of the '681 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

A.     **INDUCEMENT OF INFRINGEMENT**

251.   Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '681 Patent.

252.   Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '681 Patent.

253.   Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '681 Patent.

254.   Despite having knowledge of the issuance of the '681 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '681 Patent.

255.   Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '681 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

256.   Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

257.   Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## B.    CONTRIBUTORY INFRINGEMENT

258.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '681 Patent.

259.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '681 Patent.

260.    Despite having knowledge of the issuance of the '681 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '681 Patent.

261.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '681 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

262.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '681 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '681 Patent.

263.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

264.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

265.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**COUNT XXIII**
**DIRECT PATENT INFRINGEMENT**
**(Wal-Mart - '186 Patent)**

266.    This Count alleges direct Patent Infringement of the '186 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

267.    Wal-Mart has infringed and is still infringing one or more claims of the '186 Patent by selling and offering to sell hose products incorporating the ornamental design shown in the '186 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

268.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

269.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**COUNT XXIV**
**INDIRECT PATENT INFRINGEMENT**
**(Wal-Mart - '186 Patent)**

270.     This Count alleges indirect Patent Infringement of the '186 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**A.     INDUCEMENT OF INFRINGEMENT**

271.     Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '186 Patent.

272.     Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '186 Patent.

273.     Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '186 Patent.

274.     Despite having knowledge of the issuance of the '186 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '186 Patent.

275.     Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '186 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

276.     Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

277.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## B.    CONTRIBUTORY INFRINGEMENT

278.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '186 Patent.

279.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '186 Patent.

280.    Despite having knowledge of the issuance of the '186 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '186 Patent.

281.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '186 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

282.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '186 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '186 Patent.

283.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

284. Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

285. Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs. These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

## DEMAND FOR JURY TRIAL

Plaintiffs request that all issues in this case be tried to a jury.

WHEREFORE, Plaintiffs pray that this Court:

A. Enter judgment against Defendants for infringement of the '941 Patent and permanently enjoin Defendants, their principals, officers, directors, agents, employees, subsidiaries, affiliates and all other persons in active concert or participation with them, from further acts of infringement, pursuant to 35 U.S.C. § 283;

B. Enter judgment against Defendants for infringement of the '942 Patent and permanently enjoin Defendants, their principals, officers, directors, agents, employees, subsidiaries, affiliates and all other persons in active concert or participation with them, from further acts of infringement, pursuant to 35 U.S.C. § 283;

C. Enter judgment against Defendants for infringement of the '776 Patent and permanently enjoin Defendants, their principals, officers, directors, agents, employees, subsidiaries, affiliates and all other persons in active concert or participation with them, from further acts of infringement, pursuant to 35 U.S.C. § 283;

D.      Enter judgment against Defendants for infringement of the '213 Patent and permanently enjoin Defendants, their principals, officers, directors, agents, employees, subsidiaries, affiliates and all other persons in active concert or participation with them, from further acts of infringement, pursuant to 35 U.S.C. § 283;

E.      Enter judgment against Defendants for infringement of the '681 Patent and permanently enjoin Defendants, their principals, officers, directors, agents, employees, subsidiaries, affiliates and all other persons in active concert or participation with them, from further acts of infringement, pursuant to 35 U.S.C. § 283;

F.      Enter judgment against Defendants for infringement of the '186 Patent and permanently enjoin Defendants, their principals, officers, directors, agents, employees, subsidiaries, affiliates and all other persons in active concert or participation with them, from further acts of infringement, pursuant to 35 U.S.C. § 283;

G.      Enter judgment for Plaintiffs for an accounting as to all damages arising from Defendants' infringement of the '941 Patent;

H.      Enter judgment against Defendants for damages arising from the infringement of the '941 Patent, pursuant to 35 U.S.C. § 284;

I.      Enter judgment for Plaintiffs for an accounting as to all damages arising from Defendants' infringement of the '942 Patent;

J.      Enter judgment against Defendants for damages arising from the infringement of the '942 Patent, pursuant to 35 U.S.C. § 284;

K.      Enter judgment for Plaintiffs for an accounting as to all damages arising from Defendants' infringement of the '776 Patent;

L.      Enter judgment against Defendants for damages arising from the infringement of the '776 Patent, pursuant to 35 U.S.C. § 284;

M.      Enter judgment for Plaintiffs for an accounting as to all damages arising from Defendants' infringement of the '213 Patent;

N.      Enter judgment against Defendants for damages arising from the infringement of the '213 Patent, pursuant to 35 U.S.C. § 284;

O.      Enter judgment for Plaintiffs for an accounting as to all damages arising from Defendants' infringement of the '681 Patent;

P.      Enter judgment against Defendants for damages arising from the infringement of the '681 Patent, pursuant to 35 U.S.C. § 284;

Q.      Enter judgment against Defendants for damages in the form of all of Defendants' profits arising from the infringement of the '681 Patent, pursuant to 35 U.S.C. § 289;

R.      Enter judgment for Plaintiffs for an accounting as to all damages arising from Defendants' infringement of the '186 Patent;

S.      Enter judgment against Defendants for damages arising from the infringement of the '186 Patent, pursuant to 35 U.S.C. § 284;

T.      Enter judgment against Defendants for damages in the form of all of Defendants' profits arising from the infringement of the '186 Patent, pursuant to 35 U.S.C. § 289;

U.      Enter judgment that this case is exceptional, and award Plaintiffs treble damages, attorney fees and costs incurred in connection therewith, pursuant to 35 U.S.C. § 285; and

V.      Enter judgment granting Plaintiffs such other relief as this Court deems appropriate.

Dated:  November 6, 2015          Respectfully submitted,

          s/ *Thomas R. Curtin*

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
Telephone:    (973) 292-1700
Facsimile:    (973) 292-1767
E-mail:    tcurtin@GrahamCurtin.com
        gjones@GrahamCurtin.com

Edward F. McHale *(pro hac vice)*
Brian M. Taillon *(pro hac vice)*
McHALE & SLAVIN, P.A.
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone:    (561) 625-6575
Facsimile:    (561) 625-6572
E-mail:    litigation@mchaleslavin.com

*Attorneys for Plaintiffs*
*Blue Gentian, LLC and National Express, Inc.*

# EXHIBIT B

[D.I. 271]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BLUE GENTIAN, LLC and NATIONAL EXPRESS, INC., | Civil No. 13-1758 (NLH/AMD) |
| Plaintiffs, | |
| v. | |
| TRISTAR PRODUCTS, INC., | |
| Defendant. | |
| BLUE GENTIAN, LLC and NATIONAL EXPRESS, INC., | |
| Plaintiffs, | |
| v. | |
| WAL-MART STORES, INC. d/b/a SAM'S CLUB and SAM'S WHOLESALE CLUB, | |
| Defendant. | |

**ORDER**

        This matter comes before the Court by way of motion [D.I. 271] filed by Plaintiff National Express seeking to substitute current nonparty Telebrands as a plaintiff for National Express. (See Motion to Substitute Pursuant to Fed. R. Civ. P. 25(c) (hereinafter, "Pl.'s Mot.") [D.I. 271].) Defendants Tristar

Products Inc. and Walmart Stores, Inc. (hereinafter, "Defendants") oppose the motion. (See Response in Opposition (hereinafter, "Defs.' Opp'n") [D.I. 279].) The Court has considered the submissions and conducted oral argument on the record on June 19, 2017, with George C. Jones, Esquire, and Kenneth W. Cohen, Esquire, appearing on behalf of Plaintiff National Express; Edward P. Bakos, Esquire, appearing on behalf of Defendants; J. Steven Baughman, Esquire, appearing on behalf of Defendant Tristar Products Inc.; and Jeffrey L. Snow, Esquire, appearing on behalf of nonparty Telebrands Corp. For the reasons set forth on the record, and for good cause shown:

IT IS on this 19th day of June 2017,

**ORDERED** that, as set forth on the record, Plaintiff National Express' motion [D.I. 271] seeking to substitute Telebrands Corp. for National Express shall be, and is hereby, **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that, as set forth on the record, Telebrands Corp. shall be joined as a party plaintiff and counterclaim defendant pursuant to Rule 25(c); and it is further

**ORDERED** that, as set forth on the record, the parties shall submit a proposed order to reflect the joinder of Telebrands Corp. as a plaintiff and counterclaim defendant; and it is further

      **ORDERED** that, as set forth on the record, Defendants are granted leave to serve Telebrands Corp. with twenty-five (25) interrogatories and ten (10) document requests.


                            s/ Ann Marie Donio
                            ANN MARIE DONIO
                            UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Noel L. Hillman

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN DIVISION

Edward P. Bakos (ebakos@bakoskritzer.com)
Noam J. Kritzer (nkritzer@bakoskritzer.com)
**Bakos & Kritzer**
147 Columbia Turnpike
Florham Park, New Jersey
Telephone: 212-724-0770
Facsimile: 973-520-8260

Counsel for the Defendants:
*Tristar Products, Inc. and*
*Walmart Inc.*

| | |
|---|---|
| **BLUE GENTIAN, LLC** | ) |
| **(a Florida limited liability company) and** | ) |
| **NATIONAL EXPRESS, INC.** | ) |
| **(a Connecticut corporation),** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **TRISTAR PRODUCTS, INC.** | ) |
| **(a Pennsylvania corporation) and** | ) |
| **WALMART INC.** | ) |
| **d/b/a SAM'S CLUB and SAM'S** | ) |
| **WHOLESALE CLUB** | ) |
| **(a Delaware corporation),** | ) |
| | ) |
| Defendants. | ) |

**CIVIL ACTION FILE NUMBER:**

**1:13-CV-1758-NLH-AMD**

**DEFENDANT TRISTAR PRODUCTS, INC.'S AMENDED ANSWER TO FIFTH AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant TRISTAR PRODUCTS, INC. ("Defendant," or "Tristar"), by its undersigned attorneys, responds to Plaintiffs BLUE GENTIAN, LLC'S ("Blue Gentian") and NATIONAL EXPRESS, INC.'S ("National Express") (hereinafter collectively "Plaintiffs") Fifth Amended Complaint ("Complaint"). To the extent not specifically admitted, Tristar denies each and every allegation in the Complaint. Tristar incorporates the heading used by Plaintiffs in the Complaint

1

for convenience and ease of reference, and denies any allegations, assertions or inferences associated with same.

<u>**JURISDICTION AND VENUE**</u>

1.      This is an action for Patent Infringement under the Patent Act, 35 U.S.C. § 271.

**<u>Answer:</u>**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.

2.      This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1338(a).

**<u>Answer:</u>**  Tristar admits that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a), in that it may involve claims arising under the Patent Act, 35 U.S.C. § 271.

3.      This court has personal jurisdiction over Tristar, which has its principal place of business in the State of New Jersey, has marketed and sold the accused Flex-Able Hose products throughout the State, and has submitted to jurisdiction in this Court by filing an Answer, Affirmative Defenses and Counterclaims in this action.  This court has personal jurisdiction over Wal-Mart, which regularly conducts business throughout the State of New Jersey, including selling and offering to sell Tristar's accused Flex-Able Hose products in its "Wal-Mart" and "Sam's Club" and/or "Sam's Wholesale Club" retail locations therein.

**<u>Answer:</u>**  Tristar admits that this Court has personal jurisdiction over Tristar.  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 regarding Walmart, and therefore denies same.  Tristar denies all other allegations set forth in Paragraph 3 of the Complaint.

4.      Venue is proper in this District, pursuant to 28 U.S.C. §§ 1391(b & c) and 1400(b), because Tristar and Wal-Mart are each subject to personal jurisdiction in the District and have committed acts of Patent Infringement in the District.

**Answer:**  Tristar admits that venue is proper in this District for Tristar.  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 regarding Walmart, and therefore denies same.  Tristar denies all other allegations set forth in Paragraph 4 of the Complaint.

## THE PARTIES

5.      Plaintiff Blue Gentian is a Florida limited liability company having its principal place of business as 516 Les Jardin Drive, Florida.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, and therefore denies same.

6.      Plaintiff National Express is a Connecticut corporation having its principal place of business at 2 Morgan Avenue, Norwalk, Connecticut.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint, and therefore denies same.

7.      Defendant Tristar is a Pennsylvania corporation having its principal place of business at 492 Route 46 East, Fairfield, New Jersey.

**Answer:**  Tristar admits the allegations set forth in Paragraph 7 of the Complaint.

8.      Defendant Wal-Mart is a Delaware corporation having its principal place of business at 702 SW 8th Street, Bentonville, Arkansas.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, and therefore denies same.

## BACKGROUND

9.      Blue Gentian's principal, Michael Berardi, has conceived and invented a novel hose product that is light in weight, does not kink when unwrapped or uncoiled, and can be substantially reduced in length and width when not in use simply by turning off the flow of water into it. The product has been marketed in the United States, under the XHose® trademark, since March 24, 2012.

**Answer:**  Tristar is without sufficient information to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint, and therefore denies same.

10.      Blue Gentian is the owner of all intellectual property rights in connection with the XHose® product invented by Berardi including, without limitation, the patent rights asserted in this Complaint. Blue Gentian is the owner of U.S. Patent No. 8,757,213, entitled "Commercial Hose" and issued on June 24, 2014 ("the '213 Patent"). The '213 Patent is a continuation-in-part of the invention disclosed in U.S. Patent No. 8,479,776, entitled "Expandable Garden Hose" and issued on July 9, 2013 ("the '776 Patent"), which is a continuation-in-part of the inventions disclosed in U.S. Patent No. 8,291,941, entitled "Expandable and Contractible Hose" and issued on October 23, 2012 ("the '941 Patent") and U.S. Patent No. 8,291,942, entitled "Expandable Hose Assembly" and also issued on October 23, 2012 ("the '942 Patent"). Copies of the '213, '776, '941 and '942 Patents are attached as Exhibits "A", "B", "C" and "D" hereto, respectively.

**Answer:**  Tristar admits that the electronic records maintained by the United States Patent and Trademark Office includes a record for U.S. Patent No. 8,757,213 (issued June 24, 2014) entitled "Commercial Hose" and list the assignee as "Blue Gentian, LLC."  Tristar admits that attached Exhibit A appears to be the '213 patent.  Tristar admits that the electronic records maintained by the United States Patent and Trademark Office includes a record for U.S. Patent

No. 8,479,776 (issued July 9, 2013) entitled "Expandable Garden Hose" and list the assignee as "Blue Gentian, LLC." Tristar admits that attached Exhibit B appears to be the '776 patent. Tristar admits that the electronic records maintained by the United States Patent and Trademark Office includes a record for U.S. Patent No. 8,291,941 (issued Oct. 23, 2012) entitled "Expandable and Contractible Hose" and list the assignee as "Blue Gentian, LLC." Tristar admits that attached Exhibit C appears to be the '941 patent. Tristar admits that the electronic records maintained by the United States Patent and Trademark Office includes a record for U.S. Patent No. 8,291,942 (issued October 23, 2012) entitled "Expandable Hose Assembly" and list the assignee as "Blue Gentian, LLC." Tristar admits that attached Exhibit D appears to be the '942 patent. Tristar is without information sufficient to form a belief as to the truth of all other allegations set forth in Paragraph 10 of the Complaint, and therefore denies same.

11.     Blue Gentian is also the owner of all right, title and interest in and to certain U.S. Design Patents depicting ornamental designs also invented by Berardi. Specifically, Blue Gentian is the owner of U.S. Design Patent D722,681, entitled "Expandable Hose" and issued on February 17, 2015 ("the '681 Patent"), which is a continuation-in-part of the ornamental design shown in U.S. Design Patent D724,186, entitled "Expandable Hose Assembly" and issued on March 10, 2015 ("the '186 Patent"). Copies of the '681 and '186 Patents are attached as Exhibits "E" and "F" hereto, respectively.

**Answer:** Tristar admits that the electronic records maintained by the United States Patent and Trademark Office includes a record for U.S. Design Patent No. D722,681 (issued February 17, 2015) entitled "Expandable Hose" and list the assignee as "Blue Gentian, LLC." Tristar admits that attached Exhibit E appears to be the '681 patent. Tristar admits that the electronic records maintained by the United States Patent and Trademark Office includes a record for U.S. Design

5

Patent No. D724,186 (issued March 10, 2015) entitled "Expandable Hose Assembly" and list the assignee as "Blue Gentian, LLC." Tristar admits that attached Exhibit F appears to be the '186 patent. Tristar is without information sufficient to form a belief as to the truth of all other allegations set forth in Paragraph 11 of the Complaint, and therefore denies same.

12.     Blue Gentian has granted National Express the exclusive right under the '941, '942, '776, '213, '681 and '186 Patents (collectively, "the Patents-in-Suit") to make, use, sell, offer for sale, import, market, promote and/or distribute expandable/retractable hoses embodying the inventions disclosed therein, within certain non-geographic markets, including the direct-to-consumer and retail markets in which Tristar sells the accused Flex-Able Hose product. As such, National Express maintains the right to exclude all others from practicing the patents within those defined markets.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint, and therefore denies same.

13.     Consistent with such license, both the packaging for the XHose® and the product's website advised of pending protection as early as March, 2012, and have also advised of the Patents-in-Suit after their issuance.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint, and therefore denies same.

14.     Indicative of the ingenuity and popularity of the XHose® product, as well as Tristar's determination to sell the product, since August 2012 Tristar has promoted and sold an infringing expandable hose product embodying the inventions protected under the Patents-in-Suit. A screen shot of Tristar's website "www.flexablehose.com" promoting such product under the brand "Flex-Able Hose" is attached as Exhibit "G" hereto.

**Answer:** Tristar admits to promoting a product under the brand "Flex~Able Hose." Tristar admits that a depiction of a screen shot appears to be attached to the Complaint as Exhibit "G." Tristar denies all other allegations set forth in Paragraph 14 of the Complaint.

15.     Wal-Mart has promoted and sold iterations of the Flex-Able Hose product at its "Wal-Mart" and "Sam's Club" retail locations, as well as on its websites www.walmart.com and www.samsclub.com. Screen shots of these websites promoting the product are attached as Exhibit "H" hereto.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint, and therefore denies same.

16.     Plaintiffs and Tristar filed suit against each other on October 23, 2012, the day the '941 and '942 Patents issued. Plaintiffs filed the present action in the Southern District of Florida for infringement of the '941 and '942 Parents. Tristar sued Plaintiffs, E. Mishan & Sons, Inc. and DAP Brands Co. in the District of New Jersey for declaratory judgment of patent non-infringement and invalidity with respect to the '941 and '942 Patents (Civil Action No. 12-cv-06675-DMC). The present action was ultimately transferred to this Court. Tristar's declaratory judgment action was dismissed without prejudice by the Court.

**Answer:** Tristar admits to filing a case styled *Tristar Prods, Inc. v. Nat'l Express, Inc.*, No. 12-CV-06675-DMC-JAD (D.N.J. 2013) that was dismissed solely as a result of for lack of standing due to the absence of Ragner Technology Corporation as a party Plaintiff. Tristar denies all other allegations set forth in Paragraph 16 of the Complaint.

17.     Tristar received formal written notice of the '776 Patent though a letter to its counsel dated July 9, 2013. A copy of this letter is attached as Exhibit "I" hereto. Despite such notice, Tristar has willfully continued to infringe the '776 Patent.

**Answer:**  Tristar admits to receiving notice of the '776 Patent through a letter dated July 9, 2013.  Tristar admits that the letter appears to be attached as Exhibit "I" to the Complaint.  Tristar denies all other allegations set forth in Paragraph 17 of the Complaint.

18.     Wal-Mart received a similar formal written notice of the Patents-in-Suit through a letter to its president dated November 21, 2013.  A copy of this letter is attached as Exhibit "J" hereto.  To date, Wal-Mart has issued only a generic, non-committal response while willfully continuing to infringe the Patents-in-Suit.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint, and therefore denies same.

19.     Plaintiffs advised Defendants of the impending issuance of the '213 Patent, including the date thereof, in a joint letter of counsel (D.E. # 97) to the Court submitted on June 6, 2014.

**Answer:**  Tristar admits the allegations set forth in Paragraph 19 of the Complaint.

20.     Plaintiffs advised Defendants of the impending issuance of the '681 and '186 Patents, including the dates thereof, in a joint letter of counsel (D.E. # 120) to the Court submitted on March 2, 2015.

**Answer:**  Tristar admits the allegations set forth in Paragraph 20 of the Complaint.

21.     Wal-Mart was previously a named defendant in Civil Action No. 13-cv-4627, styled *Blue Gentian, LLC, et al. v Wal-Mart Stores, Inc., et al.*, which was previously consolidated with the present action for pretrial purposes and then stayed.  The 13-4627 action was dismissed upon notice to the Court of the settlement of Civil Action No. 12-cv-6671 and the 13-4627 action on June 8, 2015.  Each of the Patents-in-Suit in the present action was asserted against Wal-Mart in

the 13-4627 action for its sale and offers to sell the Pocket Hose expandable and contractible hose product produced by Telebrands Corporation.

**Answer:**  Tristar admits that the case styled *Blue Gentian, LLC v. Wal-Mart Stores, Inc.*, Civil Action No. 13-cv-4627 was consolidated with the present action for pretrial purposes.  Tristar admits that Civil Action No. 13-cv-4627 was stayed.  Tristar is without information sufficient to form a belief as to the truth of the other allegations set forth in Paragraph 21 of the Complaint, and therefore denies same.

22.    Wal-Mart was also previously a named defendant in Civil Action No. 13-cv-7099, styled *Blue Gentian, LLC, et al. v. Wal-Mart Stores, Inc., d/b/a Sam's Club and Sam's Wholesale Club*, which was consolidated with the present action for pretrial purposes and then stayed.  The Court recently lifted the stay of the 13-7099 action, and then administratively closed and consolidated it into the present action.

**Answer:**   Tristar admits that Walmart was a named defendant in the case styled *Blue Gentian, LLC v. Tristar Products, Inc.*, Civil Action No. 13-cv-7099.  Tristar admits that Civil Action No. 13-cv-7099 was consolidated with the present action for pretrial purposes.  Tristar admits that Civil Action No. 13-cv-7099 was stayed.   Tristar admits that the Court lifted the stay on Civil Action No. 13-cv-7099 and then administratively closed and consolidated it into the present action.  Tristar denies all other allegations set forth in Paragraph 22 of the Complaint.

23.    Wal-Mart had previously sold the XHose® in its stores in January and February 2013, selling units that had been shipped to test the market for the product.  The XHose® was marked with the '941 and '942 Patents, in accordance with 35 U.S.C. § 287, during that entire time period.  A sample Wal-Mart display of the XHose®, with the patent markings included on a white label on the lower left corner of the product's packaging, is depicted in Exhibit "K" hereto.

Case: 21-2316   Document: 17   Page: 83   Filed: 12/14/2021

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint, and therefore denies same.

24.     Over the course of this litigation, Tristar has redesigned certain features related to the inlet and outlet couplers and flow restrictor of the Flex-Able Hose.  Tristar has also marketed a "Tough Grade" Flex-Able Hose constructed of purportedly stronger materials than the original Flex-Able Hose.  Tristar has also incorporated the Flex-Able Hose into its sales of a pressure washer under the brand "EZ-Jet".  Screen shots from Tristar's websites "www.flexablehose.com" and "www.tryezjet.com" promoting these products are attached as composite Exhibit "L" hereto.

**Answer:**  Tristar admits to promoting a product under the brand "Tough Grade Flex~Able Hose."  Tristar admits to promoting a product under the brand "EZ-Jet."  Tristar admits that screen shots of two websites appear to be attached to the Complaint as Exhibit "L".  Tristar denies all other allegations set forth in Paragraph 24 of the Complaint.

25.     Tristar has also recently introduced yet another iteration of the Flex-Able Hose, advertised and sold as the "Extreme Flex-Able Hose" which also infringes the Patents-in-Suit.  While the Flex-Able Hose generally is sold at "Wal-Mart" retail stores and on the Wal-Mart website, the 'Extreme Flex-Able Hose" appears to be sold only through Sam's Club and on the Sam's Club website.  A photograph of the product in its packaging is attached as Exhibit "M" hereto.  Further discovery is required as to the full extent of sales of this product.

**Answer:**  Tristar admits to promoting a product under the brand "Extreme Flex~Able Hose."  Tristar admits that a depiction of screen shot appears to be attached to the Complaint as Exhibit "M."  Tristar denies all other allegations set forth in Paragraph 25 of the Complaint.

26.     Tristar has endeavored to legitimize its infringement of the Patents-in-Suit through inequitable conduct before the U.S. Patent Office.  On May 5, 2015 U.S. Patent No. 9,022,076,

entitled "Linearly Retractable Pressure Hose Structure" ("the '076 Patent"), was issued to Ragner Technology Corporation ("Ragner"). Tristar sells Flex-Able Hose products under purported license from Ragner's patents including U.S. Patent No. 7,549,448 ("the '448 Patent") and U.S. Patent No. 8,776,836 ("the '836 Patent"). Ragner and Tristar are currently asserting the '448 and '836 Patents against the XHose® product in the case styled *Tristar Prods., Inc., et al. v. National Express, Inc. et al.*, Civil Action No. 2:13-cv-07752-ES-MAH (D.N.J.) ("the 13-7752 action"). The '076 Patent was filed as a continuation of the '836 Patent (eight years after the '836 Patent was filed), which was filed as a continuation-in-part of the '448 Patent. Upon information and belief, Tristar was actively involved in Ragner's prosecution of the '076 Patent. A copy of the '076 Patent is attached as Exhibit "N" hereto.

**Answer:** Tristar admits that the electronic records maintained by the United States Patent and Trademark Office includes a record for U.S. Patent No. 9,022,076 (issued May 5, 2015) entitled "Linearly Retractable Pressure Hose Structure" and lists the assignee as "Ragner Technology Corporation." Tristar admits that attached Exhibit N appears to be the '076 patent. Tristar admits to having an exclusive license to make, have made, use, distribute, sell, offer for sale, and import in the United States certain products covered by the '448 patent and '836 patent. Tristar admits to filing a case styled *Tristar Prods., Inc., et al. v. National Express, Inc. et al.*, Civil Action No. 13-cv-07752-ES-MAH (D.N.J.) with Ragner Technology Corporation. Tristar admits that U.S. Patent No. 7,549,448 and U.S. Patent No. 8,776,836 are asserted in Civil Action No. 13-cv-07752. Tristar denies all other allegations set forth in Paragraph 26 of the Complaint.

27.    The filing of the '076 Patent constitutes an attempt by Tristar and Ragner to manufacture prior art evidence against the Patents-in-Suit through deception before the Patent Office. The '076 Patent was filed as a continuation of the '836 Patent in order to claim an earlier

priority date, notwithstanding the fact that its claims consist mainly of language directly copied from the claims of the '941 Patent.  Significant portions of the language from the '941 Patent were copied into claims of the '076 Patent, as follows: Claim 1 of the '076 Patent copies language from Claim 1 of the '941 Patent as originally filed; Claims 2, 4, and 7 of the '076 Patent copy language from Claim 1 of the issued '941 Patent; Claim 8 of the '076 Patent copies language from Claim 2 of the issued '941 Patent; Claim 9 of the '076 Patent copies language (including a typographical error) from Claim 3 of the issued '941 Patent; Claim 11 of the '076 Patent copies language from Claim 10 of the issued '941 Patent; Claim 12 of the '076 Patent copies language from Claim 11 of the issued '941 Patent; Claim 13 of the '076 Patent copies language from Claim 13 of the issued '941 Patent; Claim 14 of the '076 Patent copies language from Claim 15 of the issued '941 Patent; Claim 15 of the '076 Patent copies language from Claim 18 of the issued '941 Patent; and Claim 16 of the '076 Patent copies language from Claim 22 of the issued '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint, and therefore denies same.

28.    The claims copies from the '941 Patent were grafted onto the specification of the '836 Patent, a patent which Ragner fraudulently revived after abandonment during prosecution. The '076 Patent was filed as a continuation of the '836 Patent in order to improperly influence the Patent Examiner into finding support for the '941 Patent claim language in the '836 Patent specification, while not considering the '941 Patent as prior art because of the earlier priority date afforded to the '076 Patent for being filed as a continuation of the '836 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint, and therefore denies same.

29.     Ragner did not disclose this copying of the '941 Patent – or the existence of the present action, the 13-7099 action and the 13-7752 action involving the subject matter of these patents – to the Patent Office, all in violation of his duty to disclose material information under 37 C.F.R. § 1.56.  Such an act constitutes an example of "disreputable or gross misconduct" under the former 37 C.F.R. § 10.23(c)(7), now incorporated into 37 C.F.R. § 11.804.  Further, Ragner filed the '076 Patent with its copied claims more than 12 months after the '941 Patent has issued, in violation of 35 U.S.C. § 135(b)(1), as applicable to the '076 Patent because it claims priority before March 16, 2013.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint, and therefore denies same.

30.     In its Invalidity Contentions served in this action, Tristar invoked the '076 Patent as purported prior art, claiming that each of the '941, '942, '776, and '213 Patents is invalid as anticipated or obvious under 35 U.S.C. §§ 102 and 103 in view of the '076 Patent.  Tristar is now raising the '076 Patent as prior art against the same '941 Patent from which its claims were fraudulently copied.  It is doing so notwithstanding the fact that the '076 Patent was filed 29 months after the filing of the '941 Patent, 22 months after the '942 Patent, 17 months after the '776 Patent and 12 months after the '213 Patent.

**Answer:**  Tristar admits to setting forth the '076 patent and U.S. Patent No. 6,948,527 as prior art references that anticipate the asserted claims of the '941, '942, '776, and '213 patents in its Invalidity Contentions Pursuant to L. Pat. R. 3.3 served on June 15, 2015.  Tristar admits to setting forth the '076 patent, U.S. Patent No. 6,948,527, U.S. Patent No. 1,220,661, U.S. Patent No. 6,523,539, U.S. Patent No. 3,980,325, and Chinese Patent Application No. CN 201220069023 as prior art references that alone, in combination with the knowledge of one of ordinary skill in the

13

art, or in combination with one another render the asserted claims of the '941, '942, and '213 patents obvious in its Invalidity Contentions Pursuant to L. Pat. R. 3.3 served on June 15, 2015. Tristar denies all other allegations set forth in Paragraph 30 of the Complaint.

31.     Tristar has also attempted to improperly use the '076 Patent to bolster its overreaching proposed claim constructions of Ragner's '448 and '836 Patents, for the purposes of expanding their scope to support their infringement claim against the XHose® product in the above-referenced 13-7752 action, while also supporting the assertion of the Ragner's 448 Patent as prior art against the '941, '942, '776, and '213 Patents in the present action.

**Answer:**  Tristar denies the allegations set forth in Paragraph 31 of the Complaint.

32.     Upon information and belief, the '076 Patent was prosecuted with Tristar's knowledge, consent and assistance solely for the purpose of unduly influencing the outcome of the present action and the 13-7752 action, without regard or concern for the inequitable conduct before the Patent Office necessary to obtain its issuance.  Such disregard was evidence during a July 6, 2015 hearing before the Honorable Judge Salas in the 13-7752 action, in which Tristar's counsel argued that, even if the allegations of fraud in connection with the '076 Patent are true, the result was nevertheless the issuance of a patent that would be used to support Ragner and Tristar's proposed claim construction for the '448 and '836 Patents in that action.

**Answer:**  Tristar denies the allegations set forth in Paragraph 32 of the Complaint.

33.     Upon information and belief, Wal-Mart has knowledge of and has adopted Tristar's bad-faith course of action in connection with the '076 Patent as part of their concerted defense in the present action.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the other allegations set forth in Paragraph 33 of the Complaint, and therefore denies same.

## COUNT I
## <u>DIRECT PATENT INFRINGEMENT</u>
### (Tristar – '941 Patent)

34.     This Count alleges direct Patent Infringement of the '941 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**<u>Answer:</u>**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

35.     Tristar has infringed and is still infringing one or more claims of the '941 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products embodying the invention protected under the '941 Patent, and will continue to do so unless enjoined by this Court.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 35 of the Complaint.

36.     Tristar's actions of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 36 of the Complaint.

37.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 37 of the Complaint.

## COUNT II
## <u>INDIRECT PATENT INFRINGEMENT</u>
### (Tristar – '941 Patent)

38.     This Count alleges indirect Patent Infringement of the '941 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**<u>Answer:</u>** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

### A.     INDUCEMENT OF INFRINGEMENT

39.     Tristar has induced others to infringe and continues to induce others to infringe one or more claims of the '941 Patent.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 39 of the Complaint.

40.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 40 of the Complaint.

41.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '941 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint, and therefore denies same.

42.     Tristar should have known, and has known, that selling and offering to sell, and upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '941 Patent.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 42 of the Complaint.

43.     Despite having knowledge of the issuance of the '941 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause infringement of the '941 Patent by end-user retail customers and retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 43 of the Complaint.

44.     Since at least the date of the issuance of the '941 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 44 of the Complaint.

45.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 45 of the Complaint.

46.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 46 of the Complaint.

**B.     CONTRIBUTORY INFRINGEMENT**

47.     Tristar has contributorily infringed and continues to contributorily infringe the '941 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 47 of the Complaint.

48.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 48 of the Complaint.

49.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '941 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint, and therefore denies same.

50.     Despite having knowledge of the announced issuance of the '941 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '941 Patent by customers and retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 50 of the Complaint.

51.     Since at least the date of the issuance of the '941 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 51 of the Complaint.

52.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '941 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '941 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 52 of the Complaint.

53.    Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 53 of the Complaint.

54.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 54 of the Complaint.

55.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 55 of the Complaint.

**COUNT III**
**DIRECT PATENT INFRINGEMENT**
**(Tristar – '942 Patent)**

56.    This Count alleges direct Patent Infringement of the '942 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

57.    Tristar has infringed and is still infringing one or more claims of the '942 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products embodying the invention protected under the '942 Patent, and will continue to do so unless enjoined by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 57 of the Complaint.

58.    Tristar's act of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 58 of the Complaint.

59.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 59 of the Complaint.

**COUNT IV**
**INDIRECT PATENT INFRINGEMENT**
**(Tristar – '942 Patent)**

60.    This Count alleges indirect Patent Infringement of the '942 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.    INDUCEMENT OF INFRINGEMENT**

61.    Tristar has induced others to infringe and continue to induce others to infringe one or more claims of the '942 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 61 of the Complaint.

62.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 62 of the Complaint.

63.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '942 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 63 of the Complaint, and therefore denies same.

64.     Tristar should have known, and has known, that selling and offering to sell and, upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '942 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 64 of the Complaint.

65.     Despite having knowledge of the announced issuance of the '942 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold and offered to sell the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '942 Patent by customers and retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 65 of the Complaint.

66.     Since at least the date of the issuance of the '942 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including though its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 66 of the Complaint.

67.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 67 of the Complaint.

68.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 68 of the Complaint.

**B.     CONTRIBUTORY INFRINGEMENT**

69.     Tristar has contributorily infringed and continues to contributorily infringe the '942 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 69 of the Complaint.

70.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 70 of the Complaint.

71.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '942 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71 of the Complaint, and therefore denies same.

72.     Despite having knowledge of the announced issuance of the '942 Patent prior to the date thereof, and actual knowledge of its issuance since October 23, 2012, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause the infringement of the '942 Patent by customers and retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 72 of the Complaint.

73.     Since at least the date of the issuance of '942 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 73 of the Complaint.

74.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '942 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '942 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 74 of the Complaint.

75.     Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 75 of the Complaint.

76.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 76 of the Complaint.

77.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 77 of the Complaint.

## COUNT V
## DIRECT PATENT INFRINGEMENT
### (Tristar – '776 Patent)

78.     This Count alleges direct Patent Infringement of the '776 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

79.     Tristar has infringed and is still infringing one or more claims of the '776 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products embodying the invention protected under the '776 Patent and will continue to do so unless enjoined by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 79 of the Complaint.

80.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 80 of the Complaint.

81.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 81 of the Complaint.

## COUNT VI
## <u>INDIRECT PATENT INFRINGEMENT</u>
### (Tristar – '776 Patent)

82.    This Count alleges indirect Patent Infringement of the '776 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**<u>Answer:</u>**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

### A.    INDUCEMENT OF INFRINGEMENT

83.    Tristar has induced others to infringe and continues to induce others to infringe one or more claims of the '776 Patent.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 83 of the Complaint.

84.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '776 Patent.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 84 of the Complaint.

85.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '776 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 85 of the Complaint, and therefore denies same.

86.    Tristar should have known, and has known, that selling and offering to sell, and upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '776 Patent.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 86 of the Complaint.

87.     Despite having knowledge of the issuance of the '776 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '776 Patent by customers and by retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 87 of the Complaint.

88.     Since at least the date of the issuance of the '776 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 88 of the Complaint.

89.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 89 of the Complaint.

90.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority of license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 90 of the Complaint.

**B.     CONTRIBUTORY INFRINGEMENT**

91.     Tristar has contributorily infringed and continues to contributorily infringe the '776 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 91 of the Complaint.

92.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '776 Patent.

**Answer:** Tristar denies the allegations set forth in Paragraph 92 of the Complaint.

93.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '776 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 93 of the Complaint, and therefore denies same.

94.     Despite having knowledge of the issuance of the '776 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause the infringement of the '776 Patent by customers and retailers.

**Answer:** Tristar denies the allegations set forth in Paragraph 94 of the Complaint.

95.     Since at least the date of the issuance of the '776 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:** Tristar denies the allegations set forth in Paragraph 95 of the Complaint.

96.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '776 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '776 Patent.

**Answer:** Tristar denies the allegations set forth in Paragraph 96 of the Complaint.

97.     Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 97 of the Complaint.

98.     Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 98 of the Complaint.

99.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 99 of the Complaint.

**COUNT VII**
**DIRECT PATENT INFRINGEMENT**
**('213 Patent)**

100.    This Count alleges direct Patent Infringement of the '213 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

101.    Tristar has infringed and is still infringing one or more claims of the '213 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products embodying the invention protected under the '213 Patent, and will continue to do so unless enjoined by this Court.

28

**Answer:**  Tristar denies the allegations set forth in Paragraph 101 of the Complaint.

102.  Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 102 of the Complaint.

103.  Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 103 of the Complaint.

**COUNT VIII**
**INDIRECT PATENT INFRINGEMENT**
**(Tristar – '213 Patent)**

104.  This Count alleges indirect Patent Infringement of the '213 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.   INDUCEMENT OF INFRINGEMENT**

105.  Tristar has induced others to infringe and continues to induce others to infringe one or more claims of the '213 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 105 of the Complaint.

106.  Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 106 of the Complaint.

107.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '213 Patent by selling and offering to sell Flex-Able Hose Products in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 107 of the Complaint, and therefore denies same.

108.    Tristar should have known, and has known, that selling and offering to sell, and upon belief, importing into the United States Flex-Able Hose products would cause the direct infringement of the '213 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 108 of the Complaint.

109.    Despite having knowledge of the issuance of the '213 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause the infringement of the '213 Patent by customers and by retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 109 of the Complaint.

110.    Since at least the date of the issuance of the '213 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 110 of the Complaint.

111.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 111 of the Complaint.

112.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 112 of the Complaint.

## B.    CONTRIBUTORY INFRINGEMENT

113.    Tristar has contributorily infringed and continues to contributorily infringe the '213 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 113 of the Complaint.

114.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

**Answer:**   Tristar denies the allegations set forth in Paragraph 114 of the Complaint.

115.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe one or more claims of the '213 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 115 of the Complaint, and therefore denies same.

116.    Despite having knowledge of the issuance of the '213 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '213 Patent by customers and retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 116 of the Complaint.

117.    Since at least the date of the issuance of the '213 Patent, Tristar has had actual knowledge of the claims of the Patent, and the fact that its Flex-Able Hose products infringe one

or more of those claims, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

    **Answer:**  Tristar denies the allegations set forth in Paragraph 117 of the Complaint.

    118.   Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '213 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '213 Patent.

    **Answer:**  Tristar denies the allegations set forth in Paragraph 118 of the Complaint.

    119.   Tristar's Flex-Able Hose products are not staples of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

    **Answer:**  Tristar denies the allegations set forth in Paragraph 119 of the Complaint.

    120.   Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

    **Answer:**  Tristar denies the allegations set forth in Paragraph 120 of the Complaint.

    121.   Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

    **Answer:**  Tristar denies the allegations set forth in Paragraph 121 of the Complaint.

## COUNT IX
## <u>DIRECT PATENT INFRINGEMENT</u>
### (Tristar – '681 Patent)

122.    This Count alleges direct Patent Infringement of the '681 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**<u>Answer:</u>**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

123.    Tristar has infringed and is still infringing the '681 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products incorporating the ornamental design shown in the '681 Patent, and will continue to do so unless enjoined by this Court.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 123 of the Complaint.

124.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 124 of the Complaint.

125.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**<u>Answer:</u>**  Tristar denies the allegations set forth in Paragraph 125 of the Complaint.

**COUNT X**
**INDIRECT PATENT INFRINGEMENT**
**(Tristar – '681 Patent)**

126.    This Count alleges indirect Patent Infringement of the '681 Patent against Tristar,

pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar

repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.     INDUCEMENT OF INFRINGEMENT**

127.    Tristar has induced others to infringe and continues to induce others to infringe the

'681 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 127 of the Complaint.

128.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have

directly infringed and continue to directly infringe the '681 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 128 of the Complaint.

129.    Retailers including, without limitation, Wal-Mart, have directly infringed and

continue to directly infringe the '681 Patent by selling and offering to sell Flex-Able Hose products

in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the

allegations set forth in Paragraph 129 of the Complaint, and therefore denies same.

130.    Tristar should have known, and has known, that selling and offering to sell, and

upon belief, importing into the United States the Flex-Able Hose products would cause the direct

infringement of the '681 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 130 of the Complaint.

131.    Despite having knowledge of the issuance of the '681 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '681 Patent by customers and by retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 131 of the Complaint.

132.    Since at least the date of the issuance of the '681 Patent, Tristar has had actual knowledge of Patent and the fact that its Flex-Able Hose products are infringements thereof, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 132 of the Complaint.

133.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 133 of the Complaint.

134.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 134 of the Complaint.

**B.    CONTRIBUTORY INFRINGEMENT**

135.    Tristar has contributorily infringed and continues to contributorily infringe the '681 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 135 of the Complaint.

136.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe the '681 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 136 of the Complaint.

137.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe the '681 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 137 of the Complaint, and therefore denies same.

138.     Despite having knowledge of the issuance of the '681 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '681 Patent by customers and retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 138 of the Complaint.

139.     Since at least the date of the issuance of the '681 Patent, Tristar has had actual knowledge of the Patent and the fact that its Flex-Able Hose products are infringements thereof, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 139 of the Complaint.

140.     Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '681 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '681 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 140 of the Complaint.

141.    Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific appearance having no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 141 of the Complaint.

142.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 142 of the Complaint.

143.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 143 of the Complaint.

**COUNT XI**
**DIRECT PATENT INFRINGEMENT**
**(Tristar – '186 Patent)**

144.    This Count alleges direct Patent Infringement of the '186 Patent against Tristar, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

145.    Tristar has infringed and is still infringing the '186 Patent by making, using, selling, offering to sell and, upon belief, importing into the United States hose products incorporating the ornamental design shown in the '186 Patent, and will continue to do so unless enjoined by this Court.

37

**Answer:**  Tristar denies the allegations set forth in Paragraph 145 of the Complaint.

146.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 146 of the Complaint.

147.    Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**  Tristar denies the allegations set forth in Paragraph 147 of the Complaint.

**COUNT XII**
**INDIRECT PATENT INFRINGEMENT**
**(Tristar – '186 Patent)**

148.    This Count alleges indirect Patent Infringement of the '186 Patent against Tristar, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.    INDUCEMENT OF INFRINGEMENT**

149.    Tristar has induced others to infringe and continues to induce others to infringe the '186 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 149 of the Complaint.

150.    Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe the '186 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 150 of the Complaint.

151.    Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe the '186 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 151 of the Complaint, and therefore denies same.

152.    Tristar should have known, and has known, that selling and offering to sell, and upon belief, importing into the United States the Flex-Able Hose products would cause the direct infringement of the '186 Patent.

**Answer:**  Tristar denies the allegations set forth in Paragraph 152 of the Complaint.

153.    Despite having knowledge of the issuance of the '186 Patent, Tristar has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause the infringement of the '186 Patent by customers and by retailers.

**Answer:**  Tristar denies the allegations set forth in Paragraph 153 of the Complaint.

154.    Since at least the date of the issuance of the '186 Patent, Tristar has had actual knowledge of Patent and the fact that its Flex-Able Hose products are infringements thereof, including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 154 of the Complaint.

155.    Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar denies the allegations set forth in Paragraph 155 of the Complaint.

156.     Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs. These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:** Tristar denies the allegations set forth in Paragraph 156 of the Complaint.

## B.     CONTRIBUTORY INFRINGEMENT

157.     Tristar has contributorily infringed and continues to contributorily infringe the '186 Patent.

**Answer:** Tristar denies the allegations set forth in Paragraph 157 of the Complaint.

158.     Tristar's end-user customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe the '186 Patent.

**Answer:** Tristar denies the allegations set forth in Paragraph 158 of the Complaint.

159.     Retailers including, without limitation, Wal-Mart, have directly infringed and continue to directly infringe the '186 Patent by selling and offering to sell Flex-Able Hose products in their retail locations.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 159 of the Complaint, and therefore denies same.

160.     Despite having knowledge of the issuance of the '186 Patent, Tristar has sold and offered to sell the accused Flex-Able Hose products with the specific intent to encourage and cause infringement of the '186 Patent by customers and retailers.

**Answer:** Tristar denies the allegations set forth in Paragraph 160 of the Complaint.

161.     Since at least the date of the issuance of the '186 Patent, Tristar has had actual knowledge of the Patent and the fact that its Flex-Able Hose products are infringements thereof,

including through its copying of the XHose®.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**   Tristar denies the allegations set forth in Paragraph 161 of the Complaint.

162.   Tristar has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '186 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '186 Patent.

**Answer:**   Tristar denies the allegations set forth in Paragraph 162 of the Complaint.

163.   Tristar's Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific appearance having no purpose other than infringement.

**Answer:**   Tristar denies the allegations set forth in Paragraph 163 of the Complaint.

164.   Tristar's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warranting a finding that this is an exceptional case pursuant to 35 U.S.C. § 285.

**Answer:**   Tristar denies the allegations set forth in Paragraph 164 of the Complaint.

165.   Tristar's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Tristar is enjoined from doing so by this Court.

**Answer:**   Tristar denies the allegations set forth in Paragraph 165 of the Complaint.

## COUNT XIII
## <u>DIRECT PATENT INFRINGEMENT</u>
### (Wal-Mart – '941 Patent)

166.    This Count alleges direct Patent Infringement of the '941 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**<u>Answer:</u>** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

167.    Wal-Mart has infringed and is still infringing one or more claims of the '941 Patent by selling and offering to sell hose products embodying the invention protected under the '941 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 167 of the Complaint, and therefore denies same.

168.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 168 of the Complaint, and therefore denies same.

169.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 169 of the Complaint, and therefore denies same.

## COUNT XIV
## INDIRECT PATENT INFRINGEMENT
### (Wal-Mart – '941 Patent)

170.    This Count alleges indirect Patent Infringement of the '941 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

## A.    INDUCEMENT OF INFRINGEMENT

171.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 171 of the Complaint, and therefore denies same.

172.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 172 of the Complaint, and therefore denies same.

173.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 173 of the Complaint, and therefore denies same.

174.    Despite having knowledge of the issuance of the '941 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 174 of the Complaint, and therefore denies same.

175.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '941 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 175 of the Complaint, and therefore denies same.

176.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 176 of the Complaint, and therefore denies same.

177.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 177 of the Complaint, and therefore denies same.

**B.    CONTRIBUTORY INFRINGEMENT**

178.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 178 of the Complaint, and therefore denies same.

179.   Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 179 of the Complaint, and therefore denies same.

180.   Despite having knowledge of the issuance of the '941 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 180 of the Complaint, and therefore denies same.

181.   Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '941 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 181 of the Complaint, and therefore denies same.

182.   Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '941 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '941 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 182 of the Complaint, and therefore denies same.

183.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function have no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 183 of the Complaint.

184.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 184 of the Complaint, and therefore denies same.

185.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 185 of the Complaint, and therefore denies same.

**COUNT XV**
**DIRECT PATENT INFRINGEMENT**
**(Wal-Mart – '942 Patent)**

186.    This Count alleges direct Patent Infringement of the '942 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

187.    Wal-Mart has infringed and is still infringing one or more claims of the '942 Patent by selling and offering to sell hose products embodying the invention protected under the '942

Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 187 of the Complaint, and therefore denies same.

188.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 188 of the Complaint, and therefore denies same.

189.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 189 of the Complaint, and therefore denies same.

**COUNT XVI**
**INDIRECT PATENT INFRINGEMENT**
**(Wal-Mart – '942 Patent)**

190.    This Count alleges indirect Patent Infringement of the '942 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.    INDUCEMENT OF INFRINGEMENT**

191.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 191 of the Complaint, and therefore denies same.

192.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 192 of the Complaint, and therefore denies same.

193.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 193 of the Complaint, and therefore denies same.

194.    Despite having knowledge of the issuance of the '942 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 194 of the Complaint, and therefore denies same.

195.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '942 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 195 of the Complaint, and therefore denies same.

196.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 196 of the Complaint, and therefore denies same.

197.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 197 of the Complaint, and therefore denies same.

**B.    CONTRIBUTORY INFRINGEMENT**

198.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 198 of the Complaint, and therefore denies same.

199.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 199 of the Complaint, and therefore denies same.

200.    Despite having knowledge of the issuance of the '942 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused

Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 200 of the Complaint, and therefore denies same.

201.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '942 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 201 of the Complaint, and therefore denies same.

202.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '942 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '942 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 202 of the Complaint, and therefore denies same.

203.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function have no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 203 of the Complaint.

204.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 204 of the Complaint, and therefore denies same.

205.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 205 of the Complaint, and therefore denies same.

**COUNT XVII**
**DIRECT PATENT INFRINGEMENT**
**(Wal-Mart – '776 Patent)**

206.    This Count alleges direct Patent Infringement of the '776 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

207.    Wal-Mart has infringed and is still infringing one or more claims of the '776 Patent by selling and offering to sell hose products embodying the invention protected under the '776 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 207 of the Complaint, and therefore denies same.

208.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 208 of the Complaint, and therefore denies same.

209.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs. These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 209 of the Complaint, and therefore denies same.

## COUNT XVIII
## INDIRECT PATENT INFRINGEMENT
### (Wal-Mart – '776 Patent)

210.    This Count alleges indirect Patent Infringement of the '776 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c). Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations. Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.    INDUCEMENT OF INFRINGEMENT**

211.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '776 Patent.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 211 of the Complaint, and therefore denies same.

212.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '776 Patent.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 212 of the Complaint, and therefore denies same.

213.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '776 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 213 of the Complaint, and therefore denies same.

214.    Despite having knowledge of the issuance of the '776 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '776 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 214 of the Complaint, and therefore denies same.

215.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '776 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 215 of the Complaint, and therefore denies same.

216.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 216 of the Complaint, and therefore denies same.

217.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing

and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 217 of the Complaint, and therefore denies same.

**B.       CONTRIBUTORY INFRINGEMENT**

218.     Wal-Mart has contributorily infringed and continue to contributorily infringe the '776 Patent.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 218 of the Complaint, and therefore denies same.

219.     Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '776 Patent.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 219 of the Complaint, and therefore denies same.

220.     Despite having knowledge of the issuance of the '776 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '776 Patent.

**Answer:** Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 220 of the Complaint, and therefore denies same.

221.     Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '776 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 221 of the Complaint, and therefore denies same.

222.   Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '776 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '776 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 222 of the Complaint, and therefore denies same.

223.   The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function have no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 223 of the Complaint.

224.   Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 224 of the Complaint, and therefore denies same.

225.   Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 225 of the Complaint, and therefore denies same.

## COUNT XIX
## <u>DIRECT PATENT INFRINGEMENT</u>
### (Wal-Mart – '213 Patent)

226.     This Count alleges direct Patent Infringement of the '213 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**<u>Answer:</u>** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

227.     Wal-Mart has infringed and is still infringing one or more claims of the '213 Patent by selling and offering to sell hose products embodying the invention protected under the '213 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 227 of the Complaint, and therefore denies same.

228.     Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 228 of the Complaint, and therefore denies same.

229.     Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**<u>Answer:</u>**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 229 of the Complaint, and therefore denies same.

**COUNT XX**
**INDIRECT PATENT INFRINGEMENT**
**(Wal-Mart – '213 Patent)**

230.    This Count alleges indirect Patent Infringement of the '213 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.      INDUCEMENT OF INFRINGEMENT**

231.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 231 of the Complaint, and therefore denies same.

232.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 232 of the Complaint, and therefore denies same.

233.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 233 of the Complaint, and therefore denies same.

234.    Despite having knowledge of the issuance of the '213 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 234 of the Complaint, and therefore denies same.

235.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '213 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 235 of the Complaint, and therefore denies same.

236.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 236 of the Complaint, and therefore denies same.

237.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 237 of the Complaint, and therefore denies same.

**B.    CONTRIBUTORY INFRINGEMENT**

238.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 238 of the Complaint, and therefore denies same.

239.     Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 239 of the Complaint, and therefore denies same.

240.     Despite having knowledge of the issuance of the '213 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 240 of the Complaint, and therefore denies same.

241.     Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '213 Patent, and the fact that the Flex-Able Hose products infringe one or more of those claims.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 241 of the Complaint, and therefore denies same.

242.     Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in one or more claims of the '213 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '213 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 242 of the Complaint, and therefore denies same.

243.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function have no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 243 of the Complaint.

244.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 244 of the Complaint, and therefore denies same.

245.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 245 of the Complaint, and therefore denies same.

### COUNT XXI
### DIRECT PATENT INFRINGEMENT
### (Wal-Mart – '681 Patent)

246.    This Count alleges direct Patent Infringement of the '681 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

247.    Wal-Mart has infringed and is still infringing one or more claims of the '681 Patent by selling and offering to sell hose products incorporating the ornamental design shown in the '681

Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 247 of the Complaint, and therefore denies same.

248.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 248 of the Complaint, and therefore denies same.

249.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 249 of the Complaint, and therefore denies same.

**COUNT XXII**
**INDIRECT PATENT INFRINGEMENT**
**(Wal-Mart – '681 Patent)**

250.    This Count alleges indirect Patent Infringement of the '681 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.    INDUCEMENT OF INFRINGEMENT**

251.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 251 of the Complaint, and therefore denies same.

252.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 252 of the Complaint, and therefore denies same.

253.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 253 of the Complaint, and therefore denies same.

254.    Despite having knowledge of the issuance of the '681 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 254 of the Complaint, and therefore denies same.

255.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '681 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 255 of the Complaint, and therefore denies same.

256.   Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 256 of the Complaint, and therefore denies same.

257.   Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 257 of the Complaint, and therefore denies same.

**B.    CONTRIBUTORY INFRINGEMENT**

258.   Wal-Mart has contributorily infringed and continue to contributorily infringe the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 258 of the Complaint, and therefore denies same.

259.   Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 259 of the Complaint, and therefore denies same.

260.   Despite having knowledge of the issuance of the '681 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused

Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 260 of the Complaint, and therefore denies same.

261.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '681 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 261 of the Complaint, and therefore denies same.

262.    Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '681 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '681 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 262 of the Complaint, and therefore denies same.

263.    The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function having no purpose other than infringement.

**Answer:**  Tristar denies the allegations set forth in Paragraph 263 of the Complaint.

264.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 264 of the Complaint, and therefore denies same.

265.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 265 of the Complaint, and therefore denies same.

**COUNT XXIII**
**DIRECT PATENT INFRINGEMENT**
**(Wal-Mart – '186 Patent)**

266.    This Count alleges direct Patent Infringement of the '186 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(a).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:**  Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

267.    Wal-Mart has infringed and is still infringing one or more claims of the '186 Patent by selling and offering to sell hose products incorporating the ornamental design shown in the '186 Patent at its "Wal-Mart" and "Sam's Club" retail locations and online at www.walmart.com and www.samsclub.com, and will continue to do so unless enjoined by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 267 of the Complaint, and therefore denies same.

268.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 268 of the Complaint, and therefore denies same.

269.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 269 of the Complaint, and therefore denies same.

**COUNT XXIV**
**INDIRECT PATENT INFRINGEMENT**
**(Wal-Mart – '186 Patent)**

270.    This Count alleges indirect Patent Infringement of the '186 Patent against Wal-Mart, pursuant to 35 U.S.C. § 271(b) and (c).  Plaintiffs repeat and reallege Paragraphs 1-33 above.

**Answer:** Tristar denies the legal sufficiency of Plaintiffs' claims and allegations.  Tristar repeats and reiterates the responses to the allegations set forth in Paragraphs 1-33 above.

**A.    INDUCEMENT OF INFRINGEMENT**

271.    Wal-Mart has induced others to infringe and continue to induce others to infringe one or more claims of the '186 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 271 of the Complaint, and therefore denies same.

272.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '186 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 272 of the Complaint, and therefore denies same.

273.    Wal-Mart should have known, and has known, that selling and offering to sell the Flex-Able Hose products would cause the direct infringement of the '186 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 273 of the Complaint, and therefore denies same.

274.    Despite having knowledge of the issuance of the '186 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with specific intent to encourage and cause its customers' infringement of the '186 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 274 of the Complaint, and therefore denies same.

275.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '186 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 275 of the Complaint, and therefore denies same.

276.    Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 276 of the Complaint, and therefore denies same.

277.    Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 277 of the Complaint, and therefore denies same.

**B.    CONTRIBUTORY INFRINGEMENT**

278.    Wal-Mart has contributorily infringed and continue to contributorily infringe the '186 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 278 of the Complaint, and therefore denies same.

279.    Wal-Mart's customers, by using the accused Flex-Able Hose products, have directly infringed and continue to directly infringe one or more claims of the '186 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 279 of the Complaint, and therefore denies same.

280.    Despite having knowledge of the issuance of the '186 Patent since at least the date of receipt of notice from Plaintiffs, Wal-Mart has sold, offered to sell and promoted the accused Flex-Able Hose products with the specific intent to encourage and cause its customers' infringement of the '186 Patent.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 280 of the Complaint, and therefore denies same.

281.    Since at least the date of receipt of notice from Plaintiffs, Wal-Mart has had actual knowledge of the claims of the '186 Patent, and the fact that the Flex-Able Hose products are infringements thereof.  Upon belief, it has taken no steps to remedy any infringement.

**Answer:**  Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 281 of the Complaint, and therefore denies same.

282.     Wal-Mart has sold and offered to sell the accused Flex-Able Hose products to practice the invention claimed in the '186 Patent, and has done so with knowledge that the products are especially made or adapted for use in an infringement of the '186 Patent.

**Answer:**   Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 282 of the Complaint, and therefore denies same.

283.     The Flex-Able Hose products are not staple articles of commerce suitable for substantial non-infringing use.  They are assembled from manufactured components for a specific function have no purpose other than infringement.

**Answer:**   Tristar denies the allegations set forth in Paragraph 283 of the Complaint.

284.     Wal-Mart's acts of infringement are willful, warranting the assessment of increased damages pursuant to 35 U.S.C. § 284, and warrant a finding that this is an exceptional case, pursuant to 35 U.S.C. § 285.

**Answer:**   Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 284 of the Complaint, and therefore denies same.

285.     Wal-Mart's acts of infringement have occurred, are occurring and will continue to occur without the authority or license of Plaintiffs.  These infringing acts have caused, are causing and will continue to cause injury to Plaintiffs, including irreparable injury and damages, unless and until Wal-Mart is enjoined from doing so by this Court.

**Answer:**   Tristar is without information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 285 of the Complaint, and therefore denies same.

286.     Tristar denies that Plaintiffs are entitled to any relief whatsoever, including the relief requested by Plaintiffs in its prayer for relief and subparagraphs A through V.

## AFFIRMATIVE DEFENSES

Tristar asserts the following affirmative defenses and reserves the right to amend its Answer as additional information becomes available.  Tristar further reserves the right to rely upon and plead additional defenses that may be revealed or discovered throughout the pendency of this case.

### FIRST AFFIRMATIVE DEFENSE

287.     Tristar has not directly infringed any claim of the '941 patent, either literally or under the doctrine of equivalents.

### SECOND AFFIRMATIVE DEFENSE

288.     Tristar has not indirectly infringed any claim of the '941 patent, either by inducing infringement or committing acts constituting contributory infringement.

### THIRD AFFIRMATIVE DEFENSE

289.     Each and every claim of the '941 patent is invalid for failure to comply with the Patent Laws of the United States 35 U.S.C. § 101 et seq. and 37 C.F.R. Chapter 1.

### FOURTH AFFIRMATIVE DEFENSE

290.     Each and every claim of the '941 patent is unenforceable for inequitable conduct, fraud on the Patent Office, and/or unclean hands as set forth in the Counterclaims.

### FIFTH AFFIRMATIVE DEFENSE

291.     Each and every claim of the '941 patent is unenforceable under the doctrine of patent misuse.

### SIXTH AFFIRMATIVE DEFENSE

292.     Plaintiffs are estopped, based on statements, representations, and admissions made during the prosecution of the '941 patent from asserting any interpretation of the '941 patent that would cover any product or service of Tristar.

## SEVENTH AFFIRMATIVE DEFENSE

293.    Tristar has not directly infringed any claim of the '942 patent, either literally or under the doctrine of equivalents.

## EIGHTH AFFIRMATIVE DEFENSE

294.    Tristar has not indirectly infringed any claim of the '942 patent, either by inducing infringement or committing acts constituting contributory infringement.

## NINTH AFFIRMATIVE DEFENSE

295.    Each and every claim of the '942 patent is invalid for failure to comply with the Patent Laws of the United States 35 U.S.C. § 101 et seq. and 37 C.F.R. Chapter 1.

## TENTH AFFIRMATIVE DEFENSE

296.    Each and every claim of the '942 patent is unenforceable for inequitable conduct, fraud on the Patent Office, and/or unclean hands as set forth in the Counterclaims.

## ELEVENTH AFFIRMATIVE DEFENSE

297.    Each and every claim of the '942 patent is unenforceable under the doctrine of patent misuse.

## TWELFTH AFFIRMATIVE DEFENSE

298.    Plaintiffs are estopped, based on statements, representations, and admissions made during the prosecution of the '942 patent from asserting any interpretation of the '942 patent that would cover any product or service of Tristar.

## THIRTEENTH AFFIRMATIVE DEFENSE

299.    Tristar has not directly infringed any claim of the '776 patent, either literally or under the doctrine of equivalents.

## FOURTEENTH AFFIRMATIVE DEFENSE

300.    Tristar has not indirectly infringed any claim of the '776 patent, either by inducing infringement or committing acts constituting contributory infringement.

## FIFTEENTH AFFIRMATIVE DEFENSE

301.    Each and every claim of the '776 patent is invalid for failure to comply with the Patent Laws of the United States 35 U.S.C. § 101 et seq. and 37 C.F.R. Chapter 1.

## SIXTEENTH AFFIRMATIVE DEFENSE

302.    Each and every claim of the '776 patent is unenforceable for inequitable conduct, fraud on the Patent Office, and/or unclean hands as set forth in the Counterclaims.

## SEVENTEENTH AFFIRMATIVE DEFENSE

303.    Each and every claim of the '776 patent is unenforceable under the doctrine of patent misuse.

## EIGHTEENTH AFFIRMATIVE DEFENSE

304.    Plaintiffs are estopped, based on statements, representations, and admissions made during the prosecution of the '776 patent from asserting any interpretation of the '776 patent that would cover any product or service of Tristar.

## NINETEENTH AFFIRMATIVE DEFENSE

305.    Tristar has not directly infringed any claim of the '213 patent, either literally or under the doctrine of equivalents.

## TWENTIETH AFFIRMATIVE DEFENSE

306.    Tristar has not indirectly infringed any claim of the '213 patent, either by inducing infringement or committing acts constituting contributory infringement.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

307.    Each and every claim of the '213 patent is invalid for failure to comply with the

Patent Laws of the United States 35 U.S.C. § 101 et seq. and 37 C.F.R. Chapter 1.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

308.    Each and every claim of the '213 patent is unenforceable for inequitable conduct,

fraud on the Patent Office, and/or unclean hands as set forth in the Counterclaims.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

309.    Each and every claim of the '213 patent is unenforceable under the doctrine of

patent misuse.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

310.    Plaintiffs are estopped, based on statements, representations, and admissions

made during the prosecution of the '213 patent from asserting any interpretation of the '213

patent that would cover any product or service of Tristar.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

311.    Tristar has not directly infringed any claim of the '681 patent, either literally or

under the doctrine of equivalents.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

312.    Tristar has not indirectly infringed any claim of the '681 patent, either by inducing

infringement or committing acts constituting contributory infringement.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

313.    Each and every claim of the '681 patent is invalid for failure to comply with the

Patent Laws of the United States 35 U.S.C. § 101 et seq. and 37 C.F.R. Chapter 1.

## TWENTY-EIGHT AFFIRMATIVE DEFENSE

314.    Each and every claim of the '681 patent is unenforceable for inequitable conduct, fraud on the Patent Office, and/or unclean hands as set forth in the Counterclaims.

## TWENTY-NINETH AFFIRMATIVE DEFENSE

315.    Each and every claim of the '681 patent is unenforceable under the doctrine of patent misuse.

## THIRTIETH AFFIRMATIVE DEFENSE

316.    Plaintiffs are estopped, based on statements, representations, and admissions made during the prosecution of the '681 patent from asserting any interpretation of the '681 patent that would cover any product or service of Tristar.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

317.    Tristar has not directly infringed any claim of the '186 patent, either literally or under the doctrine of equivalents.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

318.    Tristar has not indirectly infringed any claim of the '186 patent, either by inducing infringement or committing acts constituting contributory infringement.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

319.    Each and every claim of the '186 patent is invalid for failure to comply with the Patent Laws of the United States 35 U.S.C. § 101 et seq. and 37 C.F.R. Chapter 1.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

320.    Each and every claim of the '186 patent is unenforceable for inequitable conduct, fraud on the Patent Office, and/or unclean hands as set forth in the Counterclaims.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

321.    Each and every claim of the '186 patent is unenforceable under the doctrine of patent misuse.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

322.    Plaintiffs are estopped, based on statements, representations, and admissions made during the prosecution of the '186 patent from asserting any interpretation of the '186 patent that would cover any product or service of Tristar.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

323.    Plaintiffs are barred from maintaining this action against Walmart because at all times Walmart's actions were justified and lawful.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

324.    Tristar reserves the right to assert any additional or further affirmative defenses which may arise in the course of this proceeding.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

325.    As stated herein, Tristar alleges and asserts that the '941 patent is invalid.  However, Blue Gentian and National Express[1] allege that the '941 patent is valid.  At minimum, Mr. Ragner contributed to the conception of one claim of the '941 patent.  Accordingly, the inventorship of the '941 patent should be corrected pursuant to 35 U.S.C. § 256 to include Mr. Ragner as a named inventor.

---

[1] Pursuant to this Court's September 21, 2017 Order (DE 317), Telebrands Corp. ("Telebrands") has been joined as a plaintiff and counterclaim defendant in connection with all allegations, claims, and defenses pled by and against National Express, and thus references in Tristar's pleadings to National Express or Plaintiffs include Telebrands.

326.    By virtue of Mr. Ragner's employment agreement with Ragner Technology Corp., Mr. Ragner owes a duty to tender any hose-related patents to Ragner Technology Corp.  And, because Tristar is an exclusive licensee of Ragner Technology Corp. and Ragner Technology has confirmed it will accept Mr. Ragner's tender of these rights, once Mr. Ragner is properly named as an inventor, Tristar will receive a license to all of the patents in suit, including the '941 patent.

327.    Mr. Ragner's rights and interests in the '941 patent are among the rights and interests Mr. Ragner agreed to assign to Ragner Technology Corp., which in turn granted a license to such rights and interests to Tristar.  By virtue of Mr. Ragner's rights in the patent and his agreement to assign, Tristar is entitled to practice and license the '941 patent without the consent of, and without account to, any of the Plaintiffs.  Tristar has wrongfully been denied its rights by Mr. Ragner's omission as a named inventor.

### FORTIETH AFFIRMATIVE DEFENSE

328.    As stated herein, Tristar alleges and asserts that the '942 patent is invalid.  However, Blue Gentian and National Express allege that the '942 patent is valid.  At minimum, Mr. Ragner contributed to the conception of one claim of the '942 patent.  Accordingly, the inventorship of the '942 patent should be corrected pursuant to 35 U.S.C. § 256 to include Mr. Ragner as a named inventor.

329.    By virtue of Mr. Ragner's employment agreement with Ragner Technology Corp., Mr. Ragner owes a duty to tender any hose-related patents to Ragner Technology Corp.  And, because Tristar is an exclusive licensee of Ragner Technology Corp. and Ragner Technology has confirmed it will accept Mr. Ragner's tender of these rights, once Mr. Ragner is properly named as an inventor, Tristar will receive a license to all of the patents in suit, including the '942 patent.

330.    Mr. Ragner's rights and interests in the '942 patent are among the rights and interests Mr. Ragner agreed to assign to Ragner Technology Corp., which in turn granted a license to such rights and interests to Tristar.  By virtue of Mr. Ragner's rights in the patent and his agreement to assign, Tristar is entitled to practice and license the '942 patent without the consent of, and without account to, any of the Plaintiffs.  Tristar has wrongfully been denied its rights by Mr. Ragner's omission as a named inventor.

## FORTY-FIRST AFFIRMATIVE DEFENSE

331.    As stated herein, Tristar alleges and asserts that the '776 patent is invalid.  However, Blue Gentian and National Express allege that the '776 patent is valid.  At minimum, Mr. Ragner contributed to the conception of one claim of the '776 patent.  Accordingly, the inventorship of the '776 patent should be corrected pursuant to 35 U.S.C. § 256 to include Mr. Ragner as a named inventor.

332.    By virtue of Mr. Ragner's employment agreement with Ragner Technology Corp., Mr. Ragner owes a duty to tender any hose-related patents to Ragner Technology Corp.  And, because Tristar is an exclusive licensee of Ragner Technology Corp. and Ragner Technology has confirmed it will accept Mr. Ragner's tender of these rights, once Mr. Ragner is properly named as an inventor, Tristar will receive a license to all of the patents in suit, including the '776 patent.

333.    Mr. Ragner's rights and interests in the '776 patent are among the rights and interests Mr. Ragner agreed to assign to Ragner Technology Corp., which in turn granted a license to such rights and interests to Tristar.  By virtue of Mr. Ragner's rights in the patent and his agreement to assign, Tristar is entitled to practice and license the '776 patent without the consent of, and without account to, any of the Plaintiffs.  Tristar has wrongfully been denied its rights by Mr. Ragner's omission as a named inventor.

## FORTY-SECOND AFFIRMATIVE DEFENSE

334.    As stated herein, Tristar alleges and asserts that the '213 patent is invalid.  However, Blue Gentian and National Express allege that the '213 patent is valid.  At minimum, Mr. Ragner contributed to the conception of one claim of the '213 patent.  Accordingly, the inventorship of the '213 patent should be corrected pursuant to 35 U.S.C. § 256 to include Mr. Ragner as a named inventor.

335.    By virtue of Mr. Ragner's employment agreement with Ragner Technology Corp., Mr. Ragner owes a duty to tender any hose-related patents to Ragner Technology Corp.  And, because Tristar is an exclusive licensee of Ragner Technology Corp. and Ragner Technology has confirmed it will accept Mr. Ragner's tender of these rights, once Mr. Ragner is properly named as an inventor, Tristar will receive a license to all of the patents in suit, including the '213 patent.

336.    Mr. Ragner's rights and interests in the '213 patent are among the rights and interests Mr. Ragner agreed to assign to Ragner Technology Corp., which in turn granted a license to such rights and interests to Tristar.  By virtue of Mr. Ragner's rights in the patent and his agreement to assign, Tristar is entitled to practice and license the '213 patent without the consent of, and without account to, any of the Plaintiffs.  Tristar has wrongfully been denied its rights by Mr. Ragner's omission as a named inventor.

## FORTY-THIRD AFFIRMATIVE DEFENSE

337.    As stated herein, Tristar alleges and asserts that the '681 patent is invalid.  However, Blue Gentian and National Express allege that the '681 patent is valid.  At minimum, Mr. Ragner contributed to the conception of one claim of the '681 patent.  Accordingly, the inventorship of the '681 patent should be corrected pursuant to 35 U.S.C. § 256 to include Mr. Ragner as a named inventor.

338.    By virtue of Mr. Ragner's employment agreement with Ragner Technology Corp., Mr. Ragner owes a duty to tender any hose-related patents to Ragner Technology Corp.  And, because Tristar is an exclusive licensee of Ragner Technology Corp. and Ragner Technology has confirmed it will accept Mr. Ragner's tender of these rights, once Mr. Ragner is properly named as an inventor, Tristar will receive a license to all of the patents in suit, including the '681 patent.

339.    Mr. Ragner's rights and interests in the '681 patent are among the rights and interests Mr. Ragner agreed to assign to Ragner Technology Corp., which in turn granted a license to such rights and interests to Tristar.  By virtue of Mr. Ragner's rights in the patent and his agreement to assign, Tristar is entitled to practice and license the '681 patent without the consent of, and without account to, any of the Plaintiffs.  Tristar has wrongfully been denied its rights by Mr. Ragner's omission as a named inventor.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

340.    As stated herein, Tristar alleges and asserts that the '186 patent is invalid.  However, Blue Gentian and National Express allege that the '186 patent is valid.  At minimum, Mr. Ragner contributed to the conception of one claim of the '186 patent.  Accordingly, the inventorship of the '186 patent should be corrected pursuant to 35 U.S.C. § 256 to include Mr. Ragner as a named inventor.

341.    By virtue of Mr. Ragner's employment agreement with Ragner Technology Corp., Mr. Ragner owes a duty to tender any hose-related patents to Ragner Technology Corp.  And, because Tristar is an exclusive licensee of Ragner Technology Corp. and Ragner Technology has confirmed it will accept Mr. Ragner's tender of these rights, once Mr. Ragner is properly named as an inventor, Tristar will receive a license to all of the patents in suit, including the '186 patent.

342.    Mr. Ragner's rights and interests in the '186 patent are among the rights and interests Mr. Ragner agreed to assign to Ragner Technology Corp., which in turn granted a license to such rights and interests to Tristar.  By virtue of Mr. Ragner's rights in the patent and his agreement to assign, Tristar is entitled to practice and license the '186 patent without the consent of, and without account to, any of the Plaintiffs.  Tristar has wrongfully been denied its rights by Mr. Ragner's omission as a named inventor.

WHEREFORE, Tristar respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice, enter judgment as a matter of law on behalf of Tristar, and award Tristar such other relief as the Court deems just, proper and equitable, including, without limitation the costs and attorneys' fees of this action.

## COUNTERCLAIMS

Counterclaim Plaintiff TRISTAR PRODUCTS, INC. ("Counterclaim Plaintiff," "Tristar Products" or "Tristar"), pleads the following counterclaims against Counterclaim Defendants BLUE GENTIAN, LLC ("Blue Gentian") and NATIONAL EXPRESS, INC. ("National Express") (hereinafter collectively "Counterclaim Defendants"), as follows:

## THE PARTIES

1.      Counterclaim Plaintiff Tristar Products, Inc. is a Pennsylvania corporation having its corporate headquarters at 492 Route 46 East, Fairfield, New Jersey 07004.

2.      Upon information and belief, Counterclaim Defendant Blue Gentian is a Florida limited liability company having its principal place of business at 516 Les Jardin Drive, Palm Beach Gardens, Florida.

3.      Upon information and belief, Counterclaim Defendant National Express is a Connecticut corporation having its principal place of business at 2 Morgan Avenue, Norwalk, Connecticut.

## JURISDICTION AND VENUE

4.      These counterclaims against Counterclaim Defendants arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and under 28 U.S.C. § 1338(a).  There is a justiciable controversy concerning the validity, enforceability and infringement of U.S. Patent No. 8,291,941 ("the '941 patent"), U.S. Patent No. 8,291,942 ("the '942 patent"), U.S. Patent No. 8,479,776 ("the '776 patent"), U.S. Patent No. 8,757,213 ("the '213 patent"), U.S. Design Patent D722,681 ("the '681 patent"), and U.S. Design Patent D724,186 ("the '186 patent") as set forth in the Fifth Amended Complaint and in the Answer to which this Counterclaim is appended.

5.      This Court has subject matter jurisdiction over Tristar's counterclaims under 28 U.S.C. §§ 1338(a) and 1367 and Fed. R. Civ. P. 13.  Counterclaim Defendants have submitted to the personal jurisdiction of this Court.

## BACKGROUND

6.      Tristar Products is a developer, manufacturer, and marketer of various consumer products including, but not limited to, home appliances, fitness equipment, health and beauty articles, and hardware.

7.      Among the products sold by Tristar Products is the accused FLEX-ABLE HOSE® product.  Upon information and belief, Walmart Inc. ("Walmart") sells the accused FLEX-ABLE HOSE® product at its retail locations.

8.      Upon information and belief, Counterclaim Defendants market and offer for sale an expandable hose product under the brand name "XHOSE."

9.      The accused FLEX-ABLE HOSE® product competes directly with Counterclaim Defendants' expandable hose product under the brand name "XHOSE."

10.      On September 25, 2005, U.S. Patent No. 6,948,527 ("the '527 patent") entitled "Pressure-Actuated Linearly Retractable and Extendible Hose" duly and legally issued to Gary Dean Ragner and Robert Daniel deRochemont, Jr.  Ragner Technology Corporation ("Ragner Technology") is the owner and assignee of all right, title, and interest in and to the '527 patent, subject only to an exclusive license to Tristar Products.  Tristar Products has an exclusive license to make, have made, use, distribute, sell, offer for sale, and import in the United States certain products covered by the '527 patent.  Together, Ragner Technology and Tristar Products own all substantial rights in the '527 patent.

11. On June 23, 2009, U.S. Patent No. 7,549,448 ("the '448 patent") entitled "Linearly Retractable Pressure Hose" duly and legally issued to Gary Dean Ragner. Ragner Technology is the owner and assignee of all right, title, and interest in and to the '448 patent, subject only to an exclusive license to Tristar Products. Tristar Products has an exclusive license to make, have made, use, distribute, sell, offer for sale, and import in the United States certain products covered by the '448 patent. Together, Ragner Technology and Tristar Products own all substantial rights in the '448 patent.

12. Upon information and belief, in or about May 2011, Ragner Technology was introduced to Greg Janson ("Janson") through a business broker named Vince Simonelli ("Simonelli"). Upon information and belief, Simonelli portrayed Janson as interested in investing in Ragner Technology or bringing Ragner Technology to the attention of potential investors. Upon information and belief, Ragner Technology hired Janson as a broker to recruit potential investors in Ragner Technology's patented products. Upon information and belief, Janson signed a non-disclosure agreement with Ragner Technology on or about May 12, 2011.

13. Upon information and belief, on August 9, 2011, Janson contacted Ragner Technology requesting a copy of its business plan to distribute to potential investors. Upon information and belief, in response to Janson's request, and in reliance of the terms of the executed non-disclosure agreement, Ragner Technology provided a business plan to Janson without any technical specifications of the product then under development.

14. Upon information and belief, Janson informed Counterclaim Defendant Blue Gentian's principal Michael Berardi ("Berardi"), Counterclaim Plaintiff National Express, and the Estate of Edward Kelly ("Kelly") that Ragner Technology was seeking to meet strictly with investors and not potential licensees of the patented technology.

15.     Upon information and belief, on August 15, 2011, Margaret Combs, CEO of Ragner Technology, was copied on an e-mail correspondence between Janson and Berardi.   Upon information and belief, the e-mail contained a copy of Ragner Technology's business plan and instructions for accessing Ragner Technology's password protected website for their expandable retractable hose products (the "Microhose product").   Upon information and belief, the password protected website demonstrated the various features and benefits of the Microhose.   Upon information and belief, the email further detailed the amount that Ragner Technology was seeking as investment in its expandable hose product.

16.     Upon information and belief, in or about the week of August 15, 2011, Janson called Ragner Technology to set up a meeting between Ragner Technology and potential investors in Jupiter, Florida.  Upon information and belief, a meeting was established for the morning of August 23, 2011.  Upon information and belief, Ragner Technology was given an address of 223 Skylark Point in Jupiter, Florida for the meeting.   Upon information and belief, Janson also informed Ragner Technology that a gentleman was flying in from Connecticut for the meeting.   Upon information and belief, email correspondence makes clear that Berardi received a copy of the Microhose Business Plan and that Ragner Technology was seeking $3 million as an investment in its patented technology.

17.     Upon information and belief, on August 23, 2011, representatives of Ragner Technology comprising Gary Ragner, Robert deRochemont, Jr., and Margaret Combs arrived at 223 Skylark Point in Jupiter, Florida for the scheduled meeting, and for the first time learned that it was the home of Berardi when he opened the door and introduced himself and his wife.  Upon information and belief, at the meeting, Ragner Technology was introduced to and for the first time learned that the Connecticut gentleman was Kelly, CEO of Counterclaim Defendant National

Express.  Upon information and belief, Berardi was introduced to Ragner Technology as Kelly's producer for his television commercials.  Upon information and belief, Simonelli and Janson were also present at the meeting.

18.     Upon information and belief, following pleasantries, Kelly requested clarification regarding the scope of the meeting, and Ragner Technology again stated it was seeking investors and not licensing opportunities for its patented technology.  Upon information and belief, prior to disclosing any confidential information, Margaret Combs informed Berardi and Kelly that non-disclosure agreements had not been prepared for Berardi, Berardi's wife, or Counterclaim Defendant National Express, or Kelly, because Ragner Technology had been unaware with whom they were meeting.  Upon information and belief, nevertheless, because confidential information was involved, Ms. Combs insisted that the meeting could not be conducted without agreement to terms of non-disclosure.  Upon information and belief, for the purposes of the meeting, Ragner Technology and Berardi, Counterclaim Defendant National Express, and Kelly verbally agreed to terms of confidentiality and non-disclosure for the purposes of the meeting and Berardi, Counterclaim Defendant National Express, and Kelly agreed to execute a written non-disclosure agreement to be sent by Ms. Combs following the meeting.

19.     Upon information and belief, upon assurances by Berardi, Counterclaim Defendant National Express, and Kelly that the information disclosed by Ragner Technology during the meeting was in accordance with the terms of the verbal non-disclosure agreement, Ragner Technology disclosed information relating to Ragner Technology, the scope of the patents, product specifications, and target market of the Microhose product.  Upon information and belief, the material and false representations and omissions of confidentiality and non-disclosure made by Berardi, Counterclaim Defendant National Express and Kelly, were intended to induce and did

induce reliance by Ragner Technology to disclose confidential information in its presentation, including specific engineering diagrams, ideas, materials of manufacture, including but not limited to, prior iterations of prototype hoses and prototype hoses constructed of more than one layer, more than one material, at least one fabric layer, various materials of manufacture including, but not limited to, vinyl, nylon, rubber, polyester, and/or polypropylene, at least one layer with cord reinforcement including a hose wherein the biasing was performed by elastic material such as polymers made of thermoplastic polyurethane to provide retracting force, manufacture know-how, concepts, etc. related to its prototypes of the Microhose product.

20.     Upon information and belief, Ragner Technology again articulated its request for a financial investor and Counterclaim Defendant National Express quickly expressed that it was interested in only licensing the patented technology -- it intended the product be manufactured in Taiwan.   Upon information and belief, Ragner Technology informed Berardi, Counterclaim Defendant National Express, and Kelly of its hesitancy to use a foreign manufacturer, due to prior experience with non-U.S. manufacturing.  Kelly made assurances to Ragner Technology that he and/or Counterclaim Defendant National Express had an excellent contact in Taiwan who was capable of manufacturing a hose in accordance with the specification of the patented technology. Upon information and belief, Kelly requested, subject to the terms of the non-disclosure agreement, permission to contact his manufacturer in Taiwan to address the ability of the manufacturer to produce a product in accordance with the patented technology.  Upon information and belief, Ragner Technology informed Kelly and Counterclaim Defendant National Express that limited disclosure for this limited purpose was authorized and in accordance with the parties' goals and therefore such disclosure was permissible, subject to all other terms of the non-disclosure agreement.  Upon information and belief, Kelly agreed and indicated that he would contact the

manufacturer and would inform Ragner Technology regarding his discussion(s) with the Taiwanese manufacturer.

21.     Upon information and belief, after lunch Berardi was anxious to see a prototype or prototypes of the Microhose product.   Upon information and belief, Ragner Technology demonstrated one of the patented prototypes of the Microhose product in its possession to Berardi, Counterclaim Defendant National Express, and Kelly by connecting the prototype to Berardi's faucet located in a side yard.  Upon information and belief, before all the parties present, Berardi used the patented prototypes and saw it expand while walking around the side yard and retract when the water was turned off.

22.     Upon information and belief, Kelly left immediately after Ragner Technology's disclosure of confidential information to go to the airport.  Upon information and belief, Ragner Technology collected the patented prototypes and left Berardi's house at or about 2:00 PM EST.

23.     Upon information and belief, on the following morning (August 24, 2011), Margaret Combs, as CEO of Ragner Technology, prepared non-disclosure agreements for Berardi, Counterclaim Defendant National Express, and Kelly.  Upon information and belief, the non-disclosure agreements were dated for August 23, 2011, reflecting the date that Berardi, Counterclaim Defendant National Express, and Kelly verbally agreed to the terms of the confidentiality and non-disclosure agreement.  Upon information and belief, both non-disclosure agreements were sent to an e-mail address on the business card provided by Counterclaim Defendant National Express.

24.     Upon information and belief, despite assurances by Berardi, Counterclaim Defendant National Express, and Kelly that (1) the disclosure made by Ragner Technology on August 23, 2011 would be protected as confidential and (2) that each would execute the non-

disclosure following the meeting, Berardi, Counterclaim Defendant National Express, nor Kelly never executed the non-disclosure agreement.

25. Upon information and belief, Ragner Technology would not have agreed to meet with Berardi, Mrs. Berardi, Counterclaim Defendant National Express, or Kelly if they had not misrepresented their intentions with respect to investment in Ragner Technology. Upon information and belief, but for Berardi, Counterclaim Defendant National Express, or Kelly's apparently interest in inventing in Ragner Technology's expandable hose products, Ragner Technology would neither have met with them, nor disclosed any confidential information to them.

26. Upon information and belief, on November 4, 2011, Berardi filed a patent application titled "Expandable and contractible hose" that purported to claim novel features of the prototypes of the Microhose product demonstrated by Ragner Technology at the August 23, 2011 meeting.

27. Upon information and belief, Berardi fraudulently obtained patents from the United States Patent and Trademark Office ("USPTO"), including but not limited to U.S. Patent No. 8,291,941 ("the '941 patent") entitled "Expandable and contractible hose," U.S. Patent No. 8,291,942 ("the '942 patent") entitled "Expandable hose assembly," U.S. Patent No. 8,479,776 ("the '776 patent") entitled "Expandable garden hose," U.S. Patent No. 8,757,213 ("the '213 patent") entitled "Commercial hose," U.S. Design Patent No. D722,681 ("the '681 patent") entitled "Expandable Hose," and U.S. Design Patent No. D724,186 ("the '186 patent") entitled "Expandable Hose Assembly"). Upon information and belief, in so doing Berardi deliberately failed to disclose material information—including proper identification of inventorship and key prior art—at times when it was known to Berardi that claimed features were from the prototypes

presented by and other information received from Ragner Technology at the August 23, 2011 meeting and Berardi had a duty to disclose that prior art and inventorship to the USPTO.

28.     Upon information and belief, Berardi made representations to the USPTO that were material to the patentability in its then pending patent claims which it knew to be false.  Upon information and belief, the material and false representations and omissions were intended to induce and did induce reliance by the patent examiners charged with determining whether to grant Berardi's patent claims

29.     On August 3, 2012, the USPTO issued an Office Action in connection with the application which ultimately issued as the '941 patents, and on August 2, 2012, the USPTO issued an Office Action in connection with the application which ultimately issued as the '942 patent. Upon information and belief, the Office Actions demonstrate that the patent examiner (1) rejected a subset of pending claims as anticipated by the '527 patent, (2) rejected various subsets of pending claims as obvious in light of a combination of the '527 patent and other references.  Upon information and belief, on August 15, 2012, Berardi, during an in-person conference, "presenting a video showing how Berardi initially manufactured the hose" without informing the examiner that he obtained such information from Mr. Ragner regarding creation of the hose under terms of non-disclosure.  Upon information and belief, Berardi further "pointed [to] differences between the [pending claims] and the Ragner et al. reference, mainly the fact that the inner and outer layers of the Ragner et al. hose are bonded together and that the outer layer is plastic material, wherein the [pending claims'] outer layer is formed of a fabric material."  Upon information and belief, Berardi failed to inform the patent examiner that Mr. Ragner explained, under terms of non-disclosure, that the outer cover of the '527 invention could include a fabric cover, and that the inner and outer layer need not be bonded.  Upon information and belief, but for these material

misrepresentations regarding the scope of the invention disclosed in the '527 patent – information that was known by Berardi and obtained during the August 23, 2011 meeting under terms of non-disclosure – the examiner would have maintained his rejection and the '941 and '942 patents would not have issued.

30.     As reflected in the prosecution history of the '941, '942, '776, '213, '681, and '186 patents, Berardi failed to mention the prototypes presented by Ragner Technology at the August 23, 2011 meeting or correct inventorship for claimed features which Berardi did not conceive. Upon information and belief, Mr. Berardi filed an Oath and Declaration with the USPTO on November 4, 2011 representing that he was the inventor of the expandable and retractable hose that is the subject of the '941 patent, despite knowing that Mr. Ragner was the inventor of the subject of the '941 patent. Upon information and belief, Mr. Berardi filed an Oath and Declaration with the USPTO on June 6, 2012 representing that he was the inventor of the expandable and retractable hose that is the subject of the '942 patent, despite knowing that Mr. Ragner was the inventor of the subject of the '942 patent. Upon information and belief, the USPTO relied on Berardi's material false statements and omissions as a principal reason for allowing Berardi's patent claims to issue. But for Berardi's material false statements and omissions, the claims of the '941, '942, '776, and '213 patents could not have issued as written.

31.     Upon information and belief, Counterclaim Defendant Blue Gentian, is the owner of all right, title, and interests in the '941, '942, '776, '213, '681, and '186 patents fraudulently obtained by Berardi. Berardi is a managing member of Blue Gentian, LLC and as such Counterclaim Defendant Blue Gentian knew that the '941, '942, '776, '213, '681, and '186 patents were fraudulently obtained.

32.     Upon information and belief, Counterclaim Defendant Blue Gentian has granted Counterclaim Defendant National Express the exclusive right under the '941, '942, '776, '213, '681, and '186 patents to at least market and sell an expandable hose product under the brand name "XHOSE."  Counterclaim Defendant National Express knew that the '941, '942, '776, '213, '681, and '186 patents were fraudulently obtained since Kelly acting on behalf of Counterclaim Defendant National Express was present at the August 23, 2011 meeting where Ragner Technology disclosed features that are now fraudulently claimed in the '941, '942, '776, '213, '681, and '186 patents.

33.     Upon information and belief, Chinese Patent Application No. 201220704911.9, now Chinese Patent CN 20352052 ("the CN '052 patent"), was filed on December 18, 2012.  The CN '052 patent was published on July 10, 2013.  A copy of the CN '052 patent (with machine translation) is attached hereto as Exhibit A.

34.     Upon information and belief, the CN '052 patent identified Linwu Yu as the sole inventor.

35.     Upon information and belief, the '776 patent and the '213 patent include claims to a connection mechanism that the CN '052 patent discloses.

36.     Upon information and belief, the CN '052 patent was assigned to Counterclaim Defendant Blue Gentian on February 11, 2014.

37.     As reflected in the prosecution history of the '213 patent, Counterclaim Defendant Blue Gentian deliberately failed to disclose material information at times when it was known to Counterclaim Defendant Blue Gentian that claimed features were from the CN '052 patent or correct inventorship for claimed features which Berardi did not conceive.  Upon information and belief, the USPTO relied on Counterclaim Defendant Blue Gentian's material false statements and

omissions as a principal reason for allowing the '213 patent claims to issue. But for Counterclaim Defendant Blue Gentian's material false statements and omissions, the claims of the '776 patent could not have issued as written.

38.     Upon information and belief, Counterclaim Defendant Blue Gentian is the owner of all right, title, and interests in the Canadian Industrial Design Patent No. 146,676 ("the '676 Canadian Industrial Design Patent") entitled "Expandable Hose Assembly." The '676 Canadian Industrial Design Patent was filed July 26, 2013 and claims priority to U.S. Patent Application Serial No. 29/427,541 (issued as the '186 patent).

39.     Upon information and belief, Counterclaim Defendant Blue Gentian asserted the '676 Canadian Industrial Design Patent in the Federal Court of Canada in the case styled *E. Mishan and Sons, Inc. and Blue Gentian, LLC v. Supertek et al.* (Case No. T-1112-13) ("the Canadian action").

40.     Upon information and belief, the defendants in the Canadian action served the following invalidating references: U.S. Patent No. D206,236, U.S. Patent No. 6,223,777, U.S. Patent No. 5,915,735, U.S. Patent No. 2,858,854, U.S. Patent No. 6,446,661, U.S. Patent No. 5,947,116, U.S. Patent No. 6,408,848, U.S. Patent Application Publication No. 2002/0013974, U.S. Patent Application Publication No. 2004/0231096, European Patent No. EP 1,271,033, U.S. Patent No. 4,404,969, U.S. Patent No. 5,023,959, U.S. Patent No. 5,555,915, U.S. Patent No. 6,568,610, U.S. Patent No. 6,698,457, U.S. Patent No. 7,735,523, U.S. Patent No. 126,069, U.S. Patent No. 1,179,374, U.S. Patent No. 6,659,366, U.S. Patent No. 4,467,837, U.S. Patent No. 6,446,661, U.S. Patent No. 4,404,969, U.S. Patent No. 3,861,424, U.S. Patent No. 4,091,063, U.S. Patent No. 4,140,154, U.S. Patent No. 5,555,915, U.S. Patent No. 4,445,543, U.S. Patent No. 6,305,428, U.S. Patent No. 6,192,940, U.S. Patent No. 6,698,457, U.S. Patent No. 5,918,642, U.S.

Patent No. 5,148,836, U.S. Patent No. 6,024,132, U.S. Patent Application Publication No. 2009/0301593, U.S. Patent No. 6,103,971, U.S. Patent No. 7,735,523, U.S. Patent No. 4,669,757, U.S. Patent No. 4,736,969, U.S. Patent No. 5,112,087, U.S. Patent No.5,558,375, U.S. Patent No. 2,102,010, U.S. Patent No. 4,154,237, U.S. Patent No. 543,220, U.S. Patent No. 674,045, U.S. Patent No. 2,634,071, U.S. Patent No. 7,549,448, and U.S. Patent No. 5,816,622.

41.     Upon information and belief, Counterclaim Defendant Blue Gentian dedicated the '676 Canadian Industrial Design Patent to the public on July 10, 2014.

42.     As reflected in the prosecution histories of the 681 patent and '186 patent, Counterclaim Defendant Blue Gentian deliberately failed to disclose material information at times when it was known to Counterclaim Defendant Blue Gentian of the invalidating prior art references in the Canadian action and dedication of the '676 Canadian Industrial Design Patent to the public.  Upon information and belief, the USPTO relied on Counterclaim Defendant Blue Gentian's material false statements and omissions as a principal reason for allowing the '681 and '186 patent claims to issue.  But for Counterclaim Defendant Blue Gentian's material false statements and omissions, the claims of the '681 patent and '186 patent could not have issued as written.

43.     On July 15, 2014, U.S. Patent No. 8,776,836 ("the '836 patent") entitled "Linearly Retractable Pressure Hose Structure" duly and legally issued to Gary Dean Ragner.  Ragner Technology is the owner and assignee of all right, title, and interest in and to the '836 patent, subject only to an exclusive license to Tristar Products.  Tristar Products has an exclusive license to make, have made, use, distribute, sell, offer for sale, and import in the United States certain products covered by the '836 patent.  Together, Ragner Technology and Tristar Products own all substantial rights in the '836 patent.

44.     Tristar Products' activities with respect to the FLEX-ABLE HOSE® product are a direct result of Tristar Products' exclusive license granted from Ragner Technology to make, have made, use, distribute, sell, offer for sale, and import in the United States certain products covered by the '527 patent, the '448 patent, and the '836 patent.  Tristar Products' act of making, having made, using, distributing, selling, offering for sale, and/or importing in the United States certain products covered by the '527 patent, the '448 patent, and the '836 patent are wholly based on its reliance that the '527 patent, the '448 patent, and the '836 patent are valid.

45.     Walmart is a retailer of various consumer products including, but not limited to, home appliances, fitness equipment, health and beauty articles, and hardware.

46.     Among the products sold by Walmart is the FLEX-ABLE HOSE® product.

47.     The FLEX-ABLE HOSE® product competes directly with Counterclaim Defendant National Express' expandable hose product under the brand name "XHOSE."

48.     Upon information and belief, Counterclaim Defendant National Express and Counterclaim Defendant Blue Gentian have used the fraudulently obtained '941, '942, '776, '231, '681 and '186 patents to restrain competition in part by suing Counterclaim Plaintiff Tristar Products, Walmart, and other competitors claiming infringement and threatening their customers. Upon information and belief, various New Jersey cases between Telebrands, Inc. and Blue Gentian, LLC over the fraudulently obtained patents were settled.

49.     Upon information and belief, the parties' settlement, evinces an additional restraint on competition, as Telebrands currently occupies over 70% of the relevant expandable and contractible hose marketshare.

50.     Upon information and belief, Counterclaim Defendant National Express and Counterclaim Defendant Blue Gentian have used the fraudulently obtained '941, '942, and '776

patents to fraudulently obtain international patents to further restrain competition internationally in part by suing Counterclaim Plaintiff Tristar and other competitors claiming infringement and threatening their customers in various international jurisdictions.

51.     Counterclaim Defendants have disseminated information into the marketplace that further evinces the anticompetitive nature of the fraudulently obtained patents.  First, Counterclaim Defendants have spent considerable sums of money filming and displaying commercials in the public domain which attempt to utilize the fraudulent patents.  These commercials are a clear attempt to convince the consuming public that Counterclaim Defendant Blue Gentian's patents signify that their product is the only expanding hose on the market – that if the public buys any other expandable hose it will "be fooled by imitations."   One of Counterclaim Defendants' commercials states "Hi, I'm Michael Berardi.  I'm the inventor of the X-Hose, the original blue expanding hose.  In fact, I've been awarded two U.S. patents for my invention.  My X-Hose is the only patented expanding hose on the market and it bears the trusted DAP products name."  This is despite Counterclaim Defendants' knowledge that the '527 patent covers an expanding hose, and that Berardi is not the original inventor of expandable and contractible hoses.  A later commercial states "In fact, I invented it in my own backyard.  I've been awarded 7 US patents and many international patents for my invention, and still, it's one of the most imitated inventions ever!  So don't get all wrapped up like me with the imitators" while showing an image of Berardi wrapped in what are identified to consumers to be competitor's "imitation" hoses.  This commercial goes so far as to plead "and if you believe that a person's hard work, ideas and dreams should be rewarded and not copied, then please buy my new DAP XHose Pro Extreme!"

52.     In addition, in January of 2015, Berardi was the subject of a cover story for Inventor's Digest in which he appears on the cover which exclaims that Mr. Berardi was

"HOSED!" by competition and wrapped in what is identified as "IMITATIONS!"  An article inside the magazine details (1) that Berardi had no inventing experience prior to meeting with Mr. Ragner, (2) that Berardi began experimenting with expandable hoses around the time of the meeting with Ragner, (3) that Berardi has no notes or drawings that would establish his inventorship, only videos which occurred after the meeting with Ragner, (4) that Berardi applied for patents in an attempt to "protect" his invention, (5) that Berardi and Mrs. Berardi created the anticompetitive commercial materials "soup to nuts" and that Mr. and Mrs. Berardi were a team throughout the development and sale of the Xhose product, and (6) that Defendants have attempted to eliminate competition by filing lawsuits against entities they feel infringe the fraudulently obtained patents.

53.    Interestingly, Berardi admits that an inventor "may be surprised to learn that someone else has already thought of your idea or your invention" but fails to discuss his misrepresentations to the United States Patent and Trademark Office in order to fraudulently obtain patents.

54.    Upon information and belief, Counterclaim Defendants have, continue, and will continue to disseminate such information in order to stifle competition in the marketplace.

**THE CONFLICT**

55.    Counterclaim Defendants have asserted that Tristar directly infringe, induce infringement of, or contribute to the infringement the '941, '942, '776, '213, '681, and '186 patents as set forth in the Fifth Amended Complaint and in the Answer to which this Counterclaim is appended.

56.    Upon information and belief, Counterclaim Defendants maintain that the accused FLEX-ABLE HOSE® product is allegedly infringing each and every element of the '941, '942, '776, '213, '681, and '186 patents.  To the extent that this is Counterclaim Defendants' claim of

infringement, Counterclaim Plaintiff has not infringed, induced infringement of, or contributed to the infringement of, any valid claim of the '941, '942, '776, '213, '681, and '186 patents. Should, however, the Court determine that Tristar infringes the '941 patent, '942 patent, '776 patent, '213 patent, '681 patent and/or '186 patent then the '941 patent, '942 patent, '776, '213 patent, '681 patent, and/or '186 patent is invalid.

57.     Tristar has been injured and damaged by Counterclaim Defendants filing a Complaint asserting infringement against the accused FLEX-ABLE HOSE® product, which does not contain each and every element of the '941, '942, 776, '213, '681, and '186 patents.

58.     Tristar has been injured and damaged by Counterclaim Defendants filing a Complaint asserting infringement of invalid patent claims.

**FIRST CLAIM FOR RELIEF**
**<u>Declaration of Noninfringement</u>**
**('941 Patent)**

59.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 58 herein.

60.     An actual case or controversy exists between Tristar and Counterclaim Defendants, based on Counterclaim Defendants' claim that Tristar allegedly infringes one or more claims of the '941 patent.

61.     Tristar does not infringe, induce infringement of, and/or contributorily infringe, and has not infringed, induced infringement of, and /or contributorily infringed any valid and enforceable claim of the '941 patent.

62.     Without declaratory relief, Tristar will be irreparably harmed and damaged.

## SECOND CLAIM FOR RELIEF
### Declaration of Invalidity
#### ('941 Patent)

63.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 62 herein.

64.     Tristar believes that the '941 patent is invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56.

65.     An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '941 patent is valid.

66.     Without declaratory relief, Tristar will be irreparably harmed and damaged.

67.     Tristar is entitled to a judgment declaring that each claim of the '941 patent is invalid for failure to satisfy one or more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD CLAIM FOR RELIEF
### Declaration of Unenforceability
#### ('941 Patent)

68.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 67 herein.

69.     An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '941 patent is enforceable.

70.     The '941 patent is unenforceable due to Counterclaim Defendant Blue Gentian and Berardi's inequitable conduct.

71.     Counterclaim Defendant Blue Gentian and Berardi had a general duty of candor and good faith in their dealing with the Patent Office.  Pursuant to 37 C.F.R. § 1.56, an inventor

has an affirmative obligation to disclose to the Patent Office all information they know to be material to the examination of their pending patent application. The inventor's duty extends to their representatives, and all others who are substantively involved in the preparation and prosecution of the patent applications.

72. Counterclaim Defendant Blue Gentian and Berardi engaged in material misconduct.

73. Counterclaim Defendant Blue Gentian and Berardi made affirmative misrepresentations of material facts and knowingly failed to appropriately disclose material information to the Patent Office with the intent to deceive the Patent Office.

74. Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office that Ragner contributed claimed subject matter of the '941 patent.

75. Counterclaim Defendant Blue Gentian's and Berardi's misconduct was but-for material to the issuance of the '941 patent.

76. Tristar is entitled to judgment declaring that each claim of the '941 patent is unenforceable due to inequitable conduct.

## FOURTH CLAIM FOR RELIEF
### Declaration of Noninfringement
('942 Patent)

77. Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 76 herein.

78. An actual case or controversy exists between Tristar and Counterclaim Defendants, based on Counterclaim Defendants' claim that Tristar allegedly infringes one or more claims of the '942 patent.

79.     Tristar does not infringe, induce infringement of, and/or contributorily infringe, and has not infringed, induced infringement of, and /or contributorily infringed any valid and enforceable claim of the '942 patent.

80.     Without declaratory relief, Tristar will be irreparably harmed and damaged.

### FIFTH CLAIM FOR RELIEF
### Declaration of Invalidity
### ('942 Patent)

81.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 80 herein.

82.     Tristar believes that the '942 patent is invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56.

83.     An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '942 patent is valid.

84.     Without declaratory relief, Tristar will be irreparably harmed and damaged.

85.     Tristar is entitled to a judgment declaring that each claim of the '942 patent is invalid for failure to satisfy one or more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

### SIXTH CLAIM FOR RELIEF
### Declaration of Unenforceability
### ('942 Patent)

86.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 85 herein.

87.     An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '942 patent is enforceable.

88.     The '942 patent is unenforceable due to Counterclaim Defendant Blue Gentian and Berardi's inequitable conduct.

89.     Counterclaim Defendant Blue Gentian and Berardi had a general duty of candor and good faith in their dealing with the Patent Office.  Pursuant to 37 C.F.R. § 1.56, an inventor has an affirmative obligation to disclose to the Patent Office all information they know to be material to the examination of their pending patent application.  The inventor's duty extends to their representatives, and all others who are substantively involved in the preparation and prosecution of the patent applications.

90.     Counterclaim Defendant Blue Gentian and Berardi engaged in material misconduct.

91.     Counterclaim Defendant Blue Gentian and Berardi made affirmative misrepresentations of material facts and knowingly failed to appropriately disclose material information to the Patent Office with the intent to deceive the Patent Office.

92.     Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office that Ragner contributed claimed subject matter of the '942 patent.

93.     Counterclaim Defendant Blue Gentian's and Berardi's misconduct was but-for material to the issuance of the '942 patent.

94.     Tristar is entitled to judgment declaring that each claim of the '942 patent is unenforceable due to inequitable conduct.

### SEVENTH CLAIM FOR RELIEF
### Declaration of Noninfringement
### ('776 Patent)

95.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 94 herein.

96.    An actual case or controversy exists between Tristar and Counterclaim Defendants, based on Counterclaim Defendants' claim that Tristar allegedly infringes one or more claims of the '776 patent.

97.    Tristar does not infringe, induce infringement of, and/or contributorily infringe, and has not infringed, induced infringement of, and /or contributorily infringed any valid and enforceable claim of the '776 patent.

98.    Without declaratory relief, Tristar will be irreparably harmed and damaged.

**EIGHTH CLAIM FOR RELIEF**
**Declaration of Invalidity**
**('776 Patent)**

99.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 98 herein.

100.    Tristar believes that the '776 patent is invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56.

101.    An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '776 patent is valid.

102.    Without declaratory relief, Tristar will be irreparably harmed and damaged.

103.    Tristar is entitled to a judgment declaring that each claim of the '776 patent is invalid for failure to satisfy one or more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

## NINTH CLAIM FOR RELIEF
### Declaration of Unenforceability
('776 Patent)

104.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 103 herein.

105.    An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '776 patent is enforceable.

106.    The '776 patent is unenforceable due to Counterclaim Defendant Blue Gentian and Berardi's inequitable conduct.

107.    Counterclaim Defendant Blue Gentian and Berardi had a general duty of candor and good faith in their dealing with the Patent Office.  Pursuant to 37 C.F.R. § 1.56, an inventor has an affirmative obligation to disclose to the Patent Office all information they know to be material to the examination of their pending patent application.  The inventor's duty extends to their representatives, and all others who are substantively involved in the preparation and prosecution of the patent applications.

108.    Counterclaim Defendant Blue Gentian and Berardi engaged in material misconduct.

109.    Counterclaim Defendant Blue Gentian and Berardi made affirmative misrepresentations of material facts and knowingly failed to appropriately disclose material information to the Patent Office with the intent to deceive the Patent Office.

110.    Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office that Ragner contributed claimed subject matter of the '776 patent.

111.    Counterclaim Defendant Blue Gentian's and Berardi's misconduct was but-for material to the issuance of the '776 patent.

112.     Tristar is entitled to judgment declaring that each claim of the '776 patent is unenforceable due to inequitable conduct.

## TENTH CLAIM FOR RELIEF
### Declaration of Noninfringement
('213 Patent)

113.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 112 herein.

114.     An actual case or controversy exists between Tristar and Counterclaim Defendants, based on Counterclaim Defendants' claim that Walmart allegedly infringes one or more claims of the '213 patent.

115.     Tristar does not infringe, induce infringement of, and/or contributorily infringe, and has not infringed, induced infringement of, and /or contributorily infringed any valid and enforceable claim of the '213 patent.

116.     Without declaratory relief, Tristar will be irreparably harmed and damaged.

## ELEVENTH CLAIM FOR RELIEF
### Declaration of Invalidity
('213 Patent)

117.     Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 116 herein.

118.     Tristar believes that the '213 patent is invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56.

119.     An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '213 patent is valid.

120.     Without declaratory relief, Tristar will be irreparably harmed and damaged.

121.   Tristar is entitled to a judgment declaring that each claim of the '213 patent is invalid for failure to satisfy one or more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

### TWELFTH CLAIM FOR RELIEF
### Declaration of Unenforceability
### ('213 Patent)

122.   Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 121 herein.

123.   An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '213 patent is enforceable.

124.   The '213 patent is unenforceable due to Counterclaim Defendant Blue Gentian and Berardi's inequitable conduct.

125.   Counterclaim Defendant Blue Gentian and Berardi had a general duty of candor and good faith in their dealing with the Patent Office.  Pursuant to 37 C.F.R. § 1.56, an inventor has an affirmative obligation to disclose to the Patent Office all information they know to be material to the examination of their pending patent application.  The inventor's duty extends to their representatives, and all others who are substantively involved in the preparation and prosecution of the patent applications.

126.   Counterclaim Defendant Blue Gentian and Berardi engaged in material misconduct.

127.   Counterclaim Defendant Blue Gentian and Berardi made affirmative misrepresentations of material facts and knowingly failed to appropriately disclose material information to the Patent Office with the intent to deceive the Patent Office.

128.    Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office that Ragner contributed claimed subject matter of the '213 patent.

129.    Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office that Linwu Yu contributed claimed subject matter of the '213 patent.

130.    Counterclaim Defendant Blue Gentian's and Berardi's misconduct was but-for material to the issuance of the '213 patent.

131.    Tristar is entitled to judgment declaring that each claim of the '213 patent is unenforceable due to inequitable conduct.

**THIRTEENTH CLAIM FOR RELIEF**
**Declaration of Noninfringement**
**('681 Patent)**

132.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 131 herein.

133.    An actual case or controversy exists between Tristar and Counterclaim Defendants, based on Counterclaim Defendants' claim that Tristar allegedly infringes one or more claims of the '681 patent.

134.    Tristar does not infringe, induce infringement of, and/or contributorily infringe, and has not infringed, induced infringement of, and /or contributorily infringed any valid and enforceable claim of the '681 patent.

135.    Without declaratory relief, Tristar will be irreparably harmed and damaged.

**FOURTEENTH CLAIM FOR RELIEF**
**Declaration of Invalidity**
**('681 Patent)**

136.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 135 herein.

137.    Tristar believes that the '681 patent is invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56.

138.    An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '681 patent is valid.

139.    Without declaratory relief, Tristar will be irreparably harmed and damaged.

140.    Tristar is entitled to a judgment declaring that each claim of the '681 patent is invalid for failure to satisfy one or more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

### FIFTEENTH CLAIM FOR RELIEF
### Declaration of Unenforceability
### ('681 Patent)

141.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 140 herein.

142.    An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '681 patent is enforceable.

143.    The '681 patent is unenforceable due to Counterclaim Defendant Blue Gentian and Berardi's inequitable conduct.

144.    Counterclaim Defendant Blue Gentian and Berardi had a general duty of candor and good faith in their dealing with the Patent Office.  Pursuant to 37 C.F.R. § 1.56, an inventor has an affirmative obligation to disclose to the Patent Office all information they know to be material to the examination of their pending patent application.  The inventor's duty extends to their representatives, and all others who are substantively involved in the preparation and prosecution of the patent applications.

145.    Counterclaim Defendant Blue Gentian and Berardi engaged in material misconduct.

146.    Counterclaim Defendant Blue Gentian and Berardi made affirmative misrepresentations of material facts and knowingly failed to appropriately disclose material information to the Patent Office with the intent to deceive the Patent Office.

147.    Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office that Ragner contributed claimed subject matter of the '681 patent.

148.    Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office of the references cited in the Canadian action and dedication of the '676 Canadian Industrial Design Patent to the public.

149.    Counterclaim Defendant Blue Gentian's and Berardi's misconduct was but-for material to the issuance of the '681 patent.

150.    Tristar is entitled to judgment declaring that each claim of the '681 patent is unenforceable due to inequitable conduct.

**SIXTEENTH CLAIM FOR RELIEF**
**Declaration of Noninfringement**
**('186 Patent)**

151.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 150 herein.

152.    An actual case or controversy exists between Tristar and Counterclaim Defendants, based on Counterclaim Defendants' claim that Tristar allegedly infringes one or more claims of the '186 patent.

153.    Tristar does not infringe, induce infringement of, and/or contributorily infringe, and has not infringed, induced infringement of, and /or contributorily infringed any valid and enforceable claim of the '186 patent.

154.    Without declaratory relief, Tristar will be irreparably harmed and damaged.

## SEVENTEENTH CLAIM FOR RELIEF
### Declaration of Invalidity
### ('186 Patent)

155.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 154 herein.

156.    Tristar believes that the '186 patent is invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56.

157.    An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '186 patent is valid.

158.    Without declaratory relief, Tristar will be irreparably harmed and damaged.

159.    Tristar is entitled to a judgment declaring that each claim of the '186 patent is invalid for failure to satisfy one or more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

## EIGHTEENTH CLAIM FOR RELIEF
### Declaration of Unenforceability
### ('186 Patent)

160.    Tristar realleges and incorporates the allegations set forth in Paragraph 1 through Paragraph 159 herein.

161.    An actual controversy exists between Tristar and Counterclaim Defendants regarding whether or not each claim of the '186 patent is enforceable.

162.    The '186 patent is unenforceable due to Counterclaim Defendant Blue Gentian and Berardi's inequitable conduct.

163.    Counterclaim Defendant Blue Gentian and Berardi had a general duty of candor and good faith in their dealing with the Patent Office.  Pursuant to 37 C.F.R. § 1.56, an inventor has an affirmative obligation to disclose to the Patent Office all information they know to be material to the examination of their pending patent application.  The inventor's duty extends to their representatives, and all others who are substantively involved in the preparation and prosecution of the patent applications.

164.    Counterclaim Defendant Blue Gentian and Berardi engaged in material misconduct.

165.    Counterclaim Defendant Blue Gentian and Berardi made affirmative misrepresentations of material facts and knowingly failed to appropriately disclose material information to the Patent Office with the intent to deceive the Patent Office.

166.    Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office that Ragner contributed claimed subject matter of the '186 patent.

167.    Neither Counterclaim Defendant Blue Gentian or Berardi informed the Patent Office of the references cited in the Canadian action and dedication of the '676 Canadian Industrial Design Patent to the public.

168.    Counterclaim Defendant Blue Gentian's and Berardi's misconduct was but-for material to the issuance of the '186 patent.

169.    Tristar is entitled to judgment declaring that each claim of the '186 patent is unenforceable due to inequitable conduct.

## NINETEENTH CLAIM FOR RELIEF
### Correction of Inventorship under 35 U.S.C. § 256
#### ('941 Patent)

170.    Tristar realleges and incorporates the allegations set forth in Paragraphs 1 through 169 herein.

171.    This Counterclaim arises out of the improper identification of the inventors of the '941 patent.

172.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder and nonjoinder of inventors.

173.    At minimum, Mr. Ragner contributed to the conception of one claim of the '941 patent.  Therefore Mr. Ragner is, at minimum, a joint inventor of the '941 patent.

174.    As parties involved in the omission of Mr. Ragner as a named inventor of the '941 patent, and/or as parties with a purported ownership interest in the '941 patent, Blue Gentian, and National Express[2] are interested parties for a correction of inventorship claim.  Therefore, this Counterclaim is asserted against all of the aforementioned parties.

175.    The inventorship of the '941 patent should be corrected under 35 U.S.C. § 256 to include Mr. Ragner as a named inventor to the patent.

176.    Tristar further seeks a declaration that Tristar is a licensee of the '941 patent by virtue of Mr. Ragner's rights in the '941 patent and his agreement to assign.

177.    Tristar has a concrete financial interest in the '941 patent and has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

---

[2] *See supra* note 1.  Upon information and belief, Telebrands purports to be an exclusive licensee of the '941 patent, by way of an agreement between Telebrands and National Express, and Telebrands may thus qualify as an interested party for this correction of inventorship claim.

**TWENTIETH CLAIM FOR RELIEF**
**Correction of Inventorship under 35 U.S.C. § 256**
**('942 Patent)**

178.    Tristar realleges and incorporates the allegations set forth in Paragraphs 1 through 177 herein.

179.    This Counterclaim arises out of the improper identification of the inventors of the '942 patent.

180.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder and nonjoinder of inventors.

181.    At minimum, Mr. Ragner contributed to the conception of one claim of the '942 patent.  Therefore Mr. Ragner is, at minimum, a joint inventor of the '942 patent.

182.    As parties involved in the omission of Mr. Ragner as a named inventor of the '942 patent, and/or as parties with a purported ownership interest in the '942 patent, Blue Gentian, and National Express[3] are interested parties for a correction of inventorship claim.  Therefore, this Counterclaim is asserted against all of the aforementioned parties.

183.    The inventorship of the '942 patent should be corrected under 35 U.S.C. § 256 to include Mr. Ragner as a named inventor to the patent.

184.    Tristar further seeks a declaration that Tristar is a licensee of the '942 patent by virtue of Mr. Ragner's rights in the '942 patent and his agreement to assign.

185.    Tristar has a concrete financial interest in the '942 patent and has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

---

[3] *See supra* note 1.  Upon information and belief, Telebrands purports to be an exclusive licensee of the '942 patent, by way of an agreement between Telebrands and National Express, and Telebrands may thus qualify as an interested party for this correction of inventorship claim.

## TWENTY-FIRST CLAIM FOR RELIEF
## Correction of Inventorship under 35 U.S.C. § 256
### ('776 Patent)

186.    Tristar realleges and incorporates the allegations set forth in Paragraphs 1 through 185 herein.

187.    This Counterclaim arises out of the improper identification of the inventors of the '776 patent.

188.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder and nonjoinder of inventors.

189.    At minimum, Mr. Ragner contributed to the conception of one claim of the '776 patent.  Therefore Mr. Ragner is, at minimum, a joint inventor of the '776 patent.

190.    As parties involved in the omission of Mr. Ragner as a named inventor of the '776 patent, and/or as parties with a purported ownership interest in the '776 patent, Blue Gentian, and National Express[4] are interested parties for a correction of inventorship claim.  Therefore, this Counterclaim is asserted against all of the aforementioned parties.

191.    The inventorship of the '776 patent should be corrected under 35 U.S.C. § 256 to include Mr. Ragner as a named inventor to the patent.

192.    Tristar further seeks a declaration that Tristar is a licensee of the '776 patent by virtue of Mr. Ragner's rights in the '776 patent and his agreement to assign.

193.    Tristar has a concrete financial interest in the '776 patent and has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

---

[4] *See supra* note 1.  Upon information and belief, Telebrands purports to be an exclusive licensee of the '776 patent, by way of an agreement between Telebrands and National Express, and Telebrands may thus qualify as an interested party for this correction of inventorship claim.

## TWENTY-SECOND CLAIM FOR RELIEF
### Correction of Inventorship under 35 U.S.C. § 256
#### ('213 Patent)

194.    Tristar realleges and incorporates the allegations set forth in Paragraphs 1 through 193 herein.

195.    This Counterclaim arises out of the improper identification of the inventors of the '213 patent.

196.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder and nonjoinder of inventors.

197.    At minimum, Mr. Ragner contributed to the conception of one claim of the '213 patent.  Therefore Mr. Ragner is, at minimum, a joint inventor of the '213 patent.

198.    As parties involved in the omission of Mr. Ragner as a named inventor of the '213 patent, and/or as parties with a purported ownership interest in the '213 patent, Blue Gentian, and National Express[5] are interested parties for a correction of inventorship claim.  Therefore, this Counterclaim is asserted against all of the aforementioned parties.

199.    The inventorship of the '213 patent should be corrected under 35 U.S.C. § 256 to include Mr. Ragner as a named inventor to the patent.

200.    Tristar further seeks a declaration that Tristar is a licensee of the '213 patent by virtue of Mr. Ragner's rights in the '213 patent and his agreement to assign.

201.    Tristar has a concrete financial interest in the '213 patent and has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

---

[5] *See supra* note 1.  Upon information and belief, Telebrands purports to be an exclusive licensee of the '213 patent, by way of an agreement between Telebrands and National Express, and Telebrands may thus qualify as an interested party for this correction of inventorship claim.

## TWENTY-THIRD CLAIM FOR RELIEF
## Correction of Inventorship under 35 U.S.C. § 256
### ('681 Patent)

202.    Tristar realleges and incorporates the allegations set forth in Paragraphs 1 through 201 herein.

203.    This Counterclaim arises out of the improper identification of the inventors of the '681 patent.

204.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder and nonjoinder of inventors.

205.    At minimum, Mr. Ragner contributed to the conception of one claim of the '681 patent.  Therefore Mr. Ragner is, at minimum, a joint inventor of the '681 patent.

206.    As parties involved in the omission of Mr. Ragner as a named inventor of the '681 patent, and/or as parties with a purported ownership interest in the '681 patent, Blue Gentian, and National Express[6] are interested parties for a correction of inventorship claim.  Therefore, this Counterclaim is asserted against all of the aforementioned parties.

207.    The inventorship of the '681 patent should be corrected under 35 U.S.C. § 256 to include Mr. Ragner as a named inventor to the patent.

208.    Tristar further seeks a declaration that Tristar is a licensee of the '681 patent by virtue of Mr. Ragner's rights in the '681 patent and his agreement to assign.

209.    Tristar has a concrete financial interest in the '681 patent and has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

---

[6] *See supra* note 1.  Upon information and belief, Telebrands purports to be an exclusive licensee of the '681 patent, by way of an agreement between Telebrands and National Express, and Telebrands may thus qualify as an interested party for this correction of inventorship claim.

## TWENTY-FOURTH CLAIM FOR RELIEF
### Correction of Inventorship under 35 U.S.C. § 256
#### ('186 Patent)

210.    Tristar realleges and incorporates the allegations set forth in Paragraphs 1 through 209 herein.

211.    This Counterclaim arises out of the improper identification of the inventors of the '186 patent.

212.    Under 35 U.S.C. § 256, this Court can correct the inventorship of an issued U.S. Patent, including correction of misjoinder and nonjoinder of inventors.

213.    At minimum, Mr. Ragner contributed to the conception of one claim of the '186 patent.  Therefore Mr. Ragner is, at minimum, a joint inventor of the '186 patent.

214.    As parties involved in the omission of Mr. Ragner as a named inventor of the '186 patent, and/or as parties with a purported ownership interest in the '186 patent, Blue Gentian, and National Express[7] are interested parties for a correction of inventorship claim.  Therefore, this Counterclaim is asserted against all of the aforementioned parties.

215.    The inventorship of the '186 patent should be corrected under 35 U.S.C. § 256 to include Mr. Ragner as a named inventor to the patent.

216.    Tristar further seeks a declaration that Tristar is a licensee of the '186 patent by virtue of Mr. Ragner's rights in the '186 patent and his agreement to assign.

217.    Tristar has a concrete financial interest in the '186 patent and has standing to assert a correction of inventorship claim under 35 U.S.C. § 256.

---

[7] *See supra* note 1.  Upon information and belief, Telebrands purports to be an exclusive licensee of the '186 patent, by way of an agreement between Telebrands and National Express, and Telebrands may thus qualify as an interested party for this correction of inventorship claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Tristar prays that the Court enter judgment against Counterclaim Defendants Blue Gentian and National Express as follows:

A.      A declaration that Tristar has not infringed, induced infringement of, or contributorily infringed, and does not infringe, induce infringement of, and/or contributorily infringe, any valid or enforceable claim of Berardi U.S. Patent No. 8,291,941;

B.      A declaration that Berardi U.S. Patent No. 8,291,941 is unenforceable and/or invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102,103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56;

C.      To the extent the '941 patent is not declared invalid, an order directed to the United States Patent and Trademark Office to issue a certificate pursuant to 35 U.S.C. § 256 correcting inventorship of the '941 patent by adding Mr. Ragner as a named inventor;

D.      A declaration that Tristar is a licensee of the '941 patent;

E.      A declaration that Tristar has not infringed, induced infringement of, or contributorily infringed, and does not infringe, induce infringement of, and/or contributorily infringe, any valid or enforceable claim of Berardi U.S. Patent No. 8,291,942;

F.      A declaration that Berardi U.S. Patent No. 8,291,942 is unenforceable and/or invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102,103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56;

G. To the extent the '942 patent is not declared invalid, an order directed to the United States Patent and Trademark Office to issue a certificate pursuant to 35 U.S.C. § 256 correcting inventorship of the '942 patent by adding Mr. Ragner as a named inventor;

H. A declaration that Tristar is a licensee of the '942 patent;

I. A declaration that Tristar has not infringed, induced infringement of, or contributorily infringed, and does not infringe, induce infringement of, and/or contributorily infringe, any valid or enforceable claim of Berardi U.S. Patent No. 8,479,776;

J. A declaration that Berardi U.S. Patent No. 8,479,776 is unenforceable and/or invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102,103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56;

K. To the extent the '776 patent is not declared invalid, an order directed to the United States Patent and Trademark Office to issue a certificate pursuant to 35 U.S.C. § 256 correcting inventorship of the '776 patent by adding Mr. Ragner as a named inventor;

L. A declaration that Tristar is a licensee of the '776 patent;

M. A declaration that Tristar has not infringed, induced infringement of, or contributorily infringed, and does not infringe, induce infringement of, and/or contributorily infringe, any valid or enforceable claim of Berardi U.S. Patent No. 8,757,213;

N. A declaration that Berardi U.S. Patent No. 8,757,213 is unenforceable and/or invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102,103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56;

O.      To the extent the '213 patent is not declared invalid, an order directed to the United States Patent and Trademark Office to issue a certificate pursuant to 35 U.S.C. § 256 correcting inventorship of the '213 patent by adding Mr. Ragner as a named inventor;

P.      A declaration that Tristar is a licensee of the '213 patent;

Q.      A declaration that Tristar has not infringed, induced infringement of, or contributorily infringed, and does not infringe, induce infringement of, and/or contributorily infringe, any valid or enforceable claim of Berardi U.S. Design Patent D722,681;

R.      A declaration that Berardi U.S. Design Patent D722,681 is unenforceable and/or invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102,103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56;

S.      To the extent the '681 patent is not declared invalid, an order directed to the United States Patent and Trademark Office to issue a certificate pursuant to 35 U.S.C. § 256 correcting inventorship of the '681 patent by adding Mr. Ragner as a named inventor;

T.      A declaration that Tristar is a licensee of the '681 patent;

U.      A declaration that Tristar has not infringed, induced infringement of, or contributorily infringed, and does not infringe, induce infringement of, and/or contributorily infringe, any valid or enforceable claim of Berardi U.S. Design Patent D724,186;

V.      A declaration that Berardi U.S. Design Patent D724,186 is unenforceable and/or invalid and void for failure to comply with one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102,103, and/or 112, and/or for failure to comply with 37 C.F.R. § 1.56;

W.      To the extent the '186 patent is not declared invalid, an order directed to the United States Patent and Trademark Office to issue a certificate pursuant to 35 U.S.C. § 256 correcting inventorship of the '186 patent by adding Mr. Ragner as a named inventor;

X.      A declaration that Tristar is a licensee of the '186 patent;

Y.      A declaration that this case is "exceptional" within the meaning of 35 U.S.C. § 285;

Z.      An award to Tristar of its costs, attorney fees, and expenses pursuant to 35 U.S.C. § 285; and

AA.     That Tristar be awarded such other and further relief as this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Tristar demands a trial by jury of all issues properly triable to a jury in this case.

Dated: March 1, 2018                    Respectfully submitted,

_____

Edward P. Bakos (ebakos@bakoskritzer.com)
Noam J. Kritzer (nkritzer@bakoskritzer.com)
**Bakos & Kritzer**
147 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone: 908-273-0770
Facsimile: 973-520-8260

Counsel for Defendants:
*Tristar Products, Inc. and*
*Walmart Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2018, a copy of the foregoing was duly served by notice of electronic filing upon counsel of record.

I certify that the foregoing statement made by me is true.  I am aware that if any of the foregoing statement is willfully false, I am subject to punishment

Dated: March 1, 2018

Edward P. Bakos (ebakos@bakoskritzer.com)
**Bakos & Kritzer**
147 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone: 908-273-0770
Facsimile: 973-520-8260

Counsel for Defendants:
*Tristar Products, Inc. and*
*Walmart Inc.*

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BLUE GENTIAN, et al.,

        Plaintiffs,

v.

TRISTAR PRODUCTS, INC., et al.,

        Defendants.

CIVIL NO. 13-1758 (NLH/AMD)

**ORDER**

For the reasons expressed in the Court's Opinion filed today,

IT IS on this  15th  day of  January , 2020

ORDERED that JUDGMENT be, and hereby is, entered in favor of Defendants as to Defendants' claims for Correction of Inventorship of United States Patent Numbers: 8,291,941, 8,291,942, 8,479,776, 8,757,213, D722,681, and D724,186; and it is further

ORDERED that the Director of the United States Patent and Trademark Office add Gary Ragner as an inventor of the above-listed patents and to issue a Certificate of Correction accordingly.

 

           s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

BLUE GENTIAN, et al.,

           Plaintiffs,

v.

TRISTAR PRODUCTS, INC., et al.,

           Defendants.

_____

CIVIL NO. 13-1758 (NLH/AMD)

**OPINION**

**APPEARANCES:**

DAVID S. STONE
BRADFORD W. MULLER
STONE & MAGNANINI LLP
100 CONNELL DRIVE, SUITE 2200
BERKELEY HEIGHTS, NJ 07922

    _Attorneys for Plaintiff Telebrands Corp._

GEORGE C. JONES
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 MOUNT KEMBLE AVENUE
PO BOX 2075
MORRISTOWN, NJ 07962-2075

and

EDWARD F. MCHALE
KENNETH W. COHEN
ANDREW D. LOCKTON
MCHALE & SLAVIN, P.A.
2855 PGA BOULEVARD
PALM BEACH GARDENS, FL 33410

    _Attorneys for Blue Gentian, LLC and National Express, Inc._

EDWARD PAUL BAKOS
NOAM JOSEPH KRITZER
BAKOS & KRITZER
147 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932

     *Attorneys for Defendant Tristar Products, Inc., Wal-Mart
Stores, Inc. d/b/a Sam's Club, and Sam's Wholesale Club.*

J. STEVEN BRAUGHMAN
MEGAN RAYMOND
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
2001 K STREET, NW
WASHINGTON, DC 20006-1047

     *Attorneys for Defendant Tristar Products, Inc.*


**HILLMAN**, **District Judge**

     Presently before the Court is the issue of whether Gary
Ragner, a non-party, should be deemed a co-inventor, pursuant to
35 U.S.C. § 256, of certain patents-in-suit held by Michael
Berardi.  The Court held a multi-day hearing taking testimony
and admitting certain documents and exhibits into evidence.  All
parties have been well-represented and the Court has benefitted
from both the oral advocacy and tutorials at the hearing and the
thoughtful and extensive pre- and post-hearing submissions.  For
the reasons stated below, this Court finds Gary Ragner is a co-
inventor of the Michael Berardi patents-in-suit.

**BACKGROUND**

     This case has a lengthy and complicated factual and
procedural history.  At one time, three different judges

2

presided over suits related to the contested patents and matters
are still pending before the undersigned and a district judge in
the Newark vicinage.  In lieu of recounting those details, which
have been penned by this Court and others numerous times over
the years of this litigation, this Court will focus on only the
details relevant to the consideration of the matter disposed of
in this Opinion.

On July 28, 2017, Defendants moved under Federal Rule of
Civil Procedure 42(b) for a hearing on correction of
inventorship for the Berardi patents-in-suit pursuant to 35
U.S.C. § 256.  On January 30, 2018, this Court granted
Defendants' request to hold a hearing to determine whether Gary
Ragner should be added as a co-inventor on the Berardi patents-
in-suit.  Discovery for the hearing ensued and all other pending
matters have been staying pending resolution of Defendant's
motion.[1]

---

[1] On July 19, 2019, the parties designated several matters,
including this case, for mediation: Telebrands Products, Inc.,
et al. v. National Express, Inc., et al., 1:13-cv-7752;
Telebrands Corp. v. Ragner Tech. Corp., et al., 1:15-cv-3163;
Ragner Tech. Corp., et al., v. Telebrands Corp., 1:15-cv-8185;
Telebrands Corp. v. Ragner Technology Corp. et al., 1:16-cv-
3474; Telebrands Corp. v. Ragner Tech. Corp., et al., 1:16-cv-
3594; Blue Gentian, LLC v. Tristar Prods., Inc., 1:13-1758; Blue
Gentian, LCC, et al. v. Tristar Prods., Inc., 1:13-cv-7099; and
Ragner Tech. Corp., et al. v. Berardi, et al., 1:15-cv-7752.  In
light of the resolution of the pending motion, the parties will
be directed to file on the docket a letter within 20 days
setting forth their position regarding a possible global
resolution of all pending matters through private mediation.

On September 5-7, 2018, January 29 and 30, 2019, and April 30, 2019, this Court commenced a hearing on correction of inventorship (the "Inventorship Hearing").  At the Inventorship Hearing, the Court received the live testimony of Gary Ragner, Robert de Rochemont, Jr., Margaret Combs, Keith Mirchandani, Ajit Khubani, Bala Iyer, Manish Israni, Cheryl Berardi, and Michael Berardi.

On May 29, 2019, the parties submitted post-hearing briefs. On June 12, 2019, the parties submitted responsive post-hearing briefs.  On June 26, 2019, the parties presented closing arguments to the Court.  The issues have been fully briefed and are ripe for adjudication.[2]

As noted, the issue currently before the Court stems from a larger dispute between the Plaintiffs, Blue Gentian, National Express, and Telebrands Corp., and the Defendants, Tristar Products, and Wal-Mart Stores.  Plaintiffs market, promote, distribute, and sell a garden hose known as the "XHose."  Blue Gentian owns several patents related to the XHose.  Defendants also produce and promote a garden hose known as the "Flex~Able Hose."  In a matter not currently before the Court, Plaintiffs

---

[2] There are two motions pending before the Court: a motion to disregard Plaintiffs' unauthorized June 12, 2019 filing, and a motion for expedited consideration of motion to disregard Plaintiffs' unauthorized June 12, 2019 filing.  Through this Opinion and accompanying Order, the Court will deny those motions.

4

allege that Defendants have infringed on Plaintiffs' patents for
the XHose.

    In this proceeding, Defendants allege that Gary Ragner, a
non-party to this case, co-invented the XHose with Blue
Gentian's principal, Michael Berardi.  Defendants therefore
argue that six of Blue Gentian's patents should be corrected to
reflect Gary Ragner's inventorship.[3]

    The bulk of the evidence relevant to determining
inventorship comes from a single three to four-hour meeting held
on August 23, 2011.  The relevant facts before, after, and
including this meeting are discussed below.

### A. The Expandable Garden Hoses in Question

#### a. The XHose

    The XHose is a lightweight, expandable garden hose.  The
length and width of the XHose changes depending on the amount of
water running through it.  The XHose features an elastic inner
tube that acts as both a water conduit and a retracting force.

    Blue Gentian owns all intellectual property rights in and
related to the XHose, including U.S. Patent No. 8,291,941 and
U.S. Patent No. 8,291,942.  Michael Berardi is listed as the

---

[3] The six patents belonging to Michael Berardi and Blue Gentian
are discussed in this opinion.  Four of these patents are
utility patents: U.S. Patent No. 8,291,941, U.S. Patent No.
8,291,942, U.S. Patent No. 8,479,776, and U.S. Patent No.
8,757,213.  Two of these patents are design patents: U.S. Patent
No. D722,681, and U.S. Patent No. D724,186.

inventor of the XHose on these patents.  Blue Gentian granted
National Express and exclusive license to use, sell, import,
market, promote and distribute the XHose.

### b. The Flex~Able Hose and Pocket Hose

Though not relevant to this opinion, the Court notes that
the Flex~Able Hose and Pocket Hose are also lightweight,
retractable hoses available for consumer distribution and use.

### c. The MicroHose

Gary Ragner and Robert de Rochemont created an expandable
hose called the "MicroHose."  When the Ragner Technologies team
and Michael Berardi met, Ragner and de Rochemont used a
prototype of the MicroHose to demonstrate their product.  Ragner
described this prototype is a "cutdown version" of the
MicroHose, featuring a small diameter, elastic vinyl hose, wire
coil for biasing, and a nylon or polyester valley cord[4] epoxied
to each end for reinforcement.  According to Ragner, the valley

---

[4] The MicroHose is similar to the flexible hose found on a common
household vacuum cleaner.  When collapsed, the circumference of
the hose appears uniform.  When expanded, the hose forms a
three-dimensional wave-like pattern of peaks and valleys.  The
valley cord winds around the hose through the "valleys,"
reinforcing the outer strength of the hose to prevent bursting,
something all developers known to the Court and many users have
experienced with the water pressure typically used with garden
hoses.  Importantly, Ragner testified that he told Berardi at
the August 23 meeting, testimony the Court credits as both
credible and consistent with other evidence in the case, that
the valley cord was only one way to prevent bursting.  Another
way was the use of a full outer cover made of fabric.

cord's purpose was both to double the amount of pressure the hose could handle and to help the hose hold its shape. Ragner testified that this prototype did not expand radially, nor did the internal surgical tube in the MicroHose prototype serve as a conduit for water. To date, no version of the MicroHose has been manufactured or sold commercially.

As will be elaborated below, Ragner testified that at the August 23 meeting the attendees discussed "prototype 2" of the MicroHose. The parties agree that this prototype was not physically present at this meeting. According to Ragner, prototype 2 is a vacuum hose with a surgical tube inside. As Ragner described, the internal surgical tube is epoxied to each end of the MicroHose prototype to act as a retracting force.

### B. Michael Berardi's Background and Knowledge Prior to the August 23 Meeting

Michael Berardi is an accomplished songwriter and video producer. During his time at CBS Records and Born Music, he copyrighted over 150 songs. Michael Berardi also has significant experience with the direct marketing industry and co-owns Berardi Productions with his wife, Cheryl. Together, Cheryl and Michael Berardi have produced hundreds of television commercials.

Despite having no technical background, prior to patenting the XHose, Michael Berardi had applied for two patents and

taught himself how to edit and produce commercials.  Michael
Berardi credits his creative thinking and experience working in
his father's hardware store for his success inventing new
products.  During his eleven years as an employee and three
years as a manager at his father's hardware store, Michael
Berardi testified that he sold and repaired various products,
including garden hoses.

In either late July or early August 2011, an acquaintance,
Thomas Moran, told Michael Berardi about a potential investment
opportunity in a product called the MicroHose.  Based on this
conversation, Michael Berardi testified that he searched the
Internet to learn more about the MicroHose and Ragner
Technologies.  Through this search, Michael Berardi found a news
article about Ragner Technologies that contained a video
demonstration of a MicroHose prototype.  Michael Berardi
testified that after watching the video, he thought the
MicroHose was "a very neat product" that "could be a fantastic
Direct Response TV product."  Michael Berardi watched the video
three to four times, zooming in to see parts of the hose
demonstration more closely.

Michael Berardi testified that right after watching the
video demonstration of the MicroHose, he experienced a "eureka
moment" in his community gym.  After looking at certain gym
equipment, Michael Berardi was struck by the idea of running

water through a tube similar to the ones used in the resistance
bands at the gym.  Michael Berardi testified that "it kind of
reminded me I guess maybe of the expanding hose that Ragner had
invented" and that he wondered "what would happen if I put water
through this?"

Michael Berardi told Cheryl Berardi about his idea for a
new hose.  Cheryl Berardi responded that they should "not put
any energy there" because they already planned to meet with
Ragner Technologies.  Michael Berardi agreed with Cheryl
Berardi's assessment that it would be easier to work with a
completed product.  Michael Berardi also stated that he was in
the middle of pursuing two other large projects during this time
period.  Ultimately, Michael Berardi did not take any steps to
create the hose he imagined following his eureka moment but
retained a "nebulous concept" for his hose.

Soon after Berardi watched the online video demonstration
of the MicroHose, an agent from Ragner Technologies, Margaret
Combs, contacted him about setting up an investment meeting on
August 23, 2011.  On August 16, 2011, Ragner Technologies sent
Michael Berardi and other meeting attendees a username and
password to access a website containing a business plan and
three-year cash flow analysis.

## C. Gary Ragner's Background and Knowledge Prior to the August 23 Meeting

Gary Ragner is an engineer and co-founder of Ragner Technologies.  He holds a Bachelor of Science in physics and a master's degree in mechanical and aerospace engineering.  Ragner also completed coursework in fluid dynamics and has seventeen years of experience designing hoses, for both vacuums and outdoor use.  Ragner holds several dozen patents for various inventions in the energy, aerospace, and electronic fields, among others.

Since the mid-1990s, Ragner has co-invented with his current business partner, Robert de Rochemont.  Together Ragner and de Rochemont approached Combs, a retired business executive, about taking on various administrative, advisory, and management responsibilities within Ragner Technologies.  Eventually, Margaret Combs became the CEO and a 10% equity partner in Ragner Technologies.

Beginning in 2004, Ragner and de Rochemont began buying supplies and experimenting with hose designs.  Since September 2005, Ragner and de Rochemont have held U.S. Patent No. 6,948,527 for a "pressure-actuated linearly retractable and extendible hose."  On January 30, 2006, Ragner and de Rochemont applied for U.S. Patent No. 8,776,836 for a "linearly retractable pressure hose structure."  This patent was granted

on July 15, 2014, after being published in 2013.  After working

on a similar design for a retractable vacuum hose, Ragner

testified that he thought this design could apply to garden

hoses as well.  By August 2011, de Rochemont and Ragner had

created between eighteen and twenty prototypes of the MicroHose.

### D. The August 23 Meeting

This meeting is particularly important to the determination

of co-inventorship.  This meeting was the sole interaction

between Michael Berardi and Gary Ragner.  The Court draws its

facts regarding this meeting from the hearing record and

documents before it.  The parties contest certain details of

this meeting.  These disputed details will be acknowledged and

discussed below.

Michael and Cheryl Berardi hosted this meeting at their

home in Palm Beach Gardens, Florida starting around 10:00 AM on

August 23, 2011.  The attendees were:

(1)  Michael Berardi, principal of Blue Gentian and co-
owner of Berardi Productions;

(2)  Cheryl Berardi, co-owner of Berardi Productions and
wife of Michael Berardi;

(3)  Ed Kelly, owner of National Express;

(4)  Gary Ragner, CEO and founder of Ragner Technologies;

(5)  Robert de Rochemont, former Executive Vice President
of Quality Assurance and current CEO of Ragner Technologies;

(6)  Margaret Combs, former CEO and current equity partner
of Ragner Technologies;

(7)  Greg Jansen, a "money finder" for Ragner Technologies; and

(8)  Vince Simonelli, a "money finder" for Ragner Technologies.

The parties agree that the primary purpose of this three to four-hour meeting was to secure a $3 million investment for Ragner Technologies to build machines that could manufacture the MicroHose.  Earlier in the week, Combs, de Rochemont, and Ragner had concluded a similar meeting with a different investor in Boca Raton, Florida.  Combs testified that the Ragner Technologies team expected that Ed Kelly would be the primary investor.

However, as both parties testified, Kelly, who has since passed away, seemed more interested in pursuing a licensing agreement rather than an investment arrangement.  During this meeting, Kelly proposed manufacturing the MicroHose in Taiwan or China to reduce production costs.  Ragner opposed this idea and expressed concerns about protecting his intellectual property. After the discussion of licensing, both parties testified that Kelly seemed disinterested in the remainder of the meeting and stayed relatively silent.

The attendees next discussed Ragner Technologies' finances. As Combs presented and explained Ragner Technologies' business plan and cash flow, Michael Berardi testified that he realized

the MicroHose would not make a successful direct response TV
product ("DRTV product").  Because Ragner Technologies estimated
that the cost of manufacturing a single MicroHose would be
between ten and twenty dollars, the MicroHose would likely be
priced at approximately eighty dollars.  Ragner Technologies'
manufacturing plan and cost structure made the MicroHouse
unattractive in the DRTV market.  According to Michael Berardi,
a DRTV product would ideally be priced at around thirty dollars.

The attendees then had lunch and turned their discussion to
the machinery involved in producing the MicroHose.  The Ragner
Technologies team used large posters with graphics and photos to
illustrate the process for manufacturing the MicroHose, or
"Process 17."  According to the Ragner Technologies team, these
visual aids were meant to explain both the manufacturing process
and the internal structure of the MicroHose.  Michael Berardi
testified that during this portion of the meeting his "eyes
started spinning" and Ragner lectured "like a professor" for a
half-hour about the production process.

Here, the parties disagree on the other topics the
attendees discussed.  Ragner testified that he remembers one
question being asked: "[Michael Berardi] asked whether we could
replace the spring with elastic."  Ragner stated he remembers
thinking "that was kind of astute of him to realize that you
could replace the retracting means with something else."

13

According to Ragner, he told Michael Berardi that it was possible to use elastic and that the first two prototypes of the MicroHose relied on internal elastic surgical tubes.  Ragner also testified that he told Michael Berardi that Ragner Technologies had opted not to continue with this design for the MicroHose because it was not durable enough.  Ragner further explained to Michael Berardi that the prototypes with elastic had burst during some of their demonstrations.  As Ragner described, this conversation was brief, and Michael Berardi seemed satisfied with Ragner's answers.

Combs testified that she did not hear this conversation, as she was not close enough to Ragner and Michael Berardi.  De Rochemont testified that he also did not hear any of this conversation between Ragner and Michael Berardi.  De Rochemont has severe hearing loss and "miss[es] most of what people are talking about."  Usually, de Rochemont relies on lip reading to understand conversations.

In contrast, Michael Berardi testified that he did not discuss elastic with Ragner, but that Ragner may have mentioned the term "elastomer" during his explanation of the manufacturing process.  Michael Berardi testified that he "remember[s] questions being asked but doesn't remember specific questions."  Cheryl Berardi similarly testified that Michael Berardi did not ask about replacing the spring with elastic and that there was

14

no discussion of earlier prototypes of the MicroHose.  Cheryl Berardi also said that she would sometimes leave the meeting to get food or drinks.  According to Cheryl Berardi, she remained able to hear the conversation thanks to her home's open concept floor plan.

Near the end of the meeting, the attendees moved outdoors for a live demonstration of the MicroHose prototype.  Ragner described this prototype as "a cutdown version of the MicroHose."  This version "only had a valley cord in the valley of the hose for reinforcement, and essentially a small diameter vacuum hose, stretch hose, with two ends on it that had fittings for a garden hose."

Michael Berardi testified that he held the hose and used it briefly.  Michael Berardi further testified that he asked to keep the prototype.  Ragner declined to let Michael Berardi keep the model, saying that it "wasn't really a working prototype because the materials were not strong enough to hold the PSI of the water."  During the demonstration, Michael Berardi asked a question about the materials used in the prototype and whether this prototype was a final version of the MicroHose.

The attendees disagree about how well the prototype performed during this demonstration.  Ragner testified that it performed "very well" and expanded to about five times its original length before retracting back to its original size.

15

Combs testified that the prototype performed "exactly the way it was supposed to."  In contrast, Michael Berardi described the prototype's performance as "disappointing" because "[i]t didn't expand much and it didn't contract much."  Cheryl Berardi testified that the hose "didn't move a lot" and "when the water turned off, it did not contract well."

The meeting attendees also dispute the extent to which a non-disclosure agreement (NDA) was discussed and agreed upon. The Ragner Technologies team does not contend that Michael Berardi or Ed Kelly signed an NDA agreement before, during, or after the August 23 meeting.  Combs testified that Ragner Technologies typically asked parties to sign an NDA in advance of meetings.  However, she testified that because this meeting was scheduled at the last minute, she had not sent an NDA in advance of the August 23 meeting.  Combs also testified she did not bring her computer, which contained the up-to-date version of Ragner Technologies' NDA.  Instead, Combs asserts that she broached the topic of an NDA at the outset of the meeting. According to Combs, after a tour of the Berardis' home, she asked if the Berardis and Kelly would agree to keep the meeting confidential and sign an NDA.  Combs testified that Michael Berardi and Ed Kelly nodded, and the meeting continued.

Michael Berardi testified that the Ragner Technologies team knew of the meeting time and location in advance of August 23,

16

2011.  According to Michael Berardi, Combs informed them as they
were walking out the door that she would send an NDA.  Michael
Berardi testified he only shrugged in response because he "knew
that there was no way [he] was going to deal with these people."
On August 25, 2011, Combs emailed an NDA to Michael Berardi and
Ed Kelly.  Neither responded to her email nor signed an NDA.

### E. Events Following the August 23 Meeting

Michael Berardi testified that he left the August 23
meeting feeling "surprised and disappointed."  Michael Berardi
testified that he had retained his "nebulous idea" about his own
hose and quickly started experimenting to make a cost effective,
expandable hose.  To build on the "little idea [he] had
germinating in [his] head," Michael Berardi purchased supplies
for his new hose at Home Depot, Wal-Mart, and Sports Authority
and started experimenting a day after meeting with Ragner
Technologies.

During his first attempt at making an expandable garden
hose, Michael Berardi testified he "didn't really know . . .
what [he] was doing" but had "some concept, some idea of maybe
what would happen."  For his first attempt at creating his
retractable hose, Michael Berardi purchased a two-and-a-half-
inch drainage pipe for pools to serve as the outer layer of his
hose.  Within a day or two, Michael Berardi had developed his
first prototype: a flat vinyl hose with an internal elastic

tube.  In this version of Michael Berardi's hose, the internal elastic tube was connected to the external vinyl hose at each end and did not expand radially.  According to Michael Berardi, "the water in that first one didn't go through the hose . . . it was outside the inner tube."  According to Michael Berardi, this prototype ultimately burst during testing.

This failed prototype was "not [Michael Berardi's] final thought process as to how the final product would be made."  As Michael Berardi continued to experiment between August 24 and early November 2011, he adjusted the materials used in his hose.  As he was unable to find webbing at the hardware and sporting goods stores he initially visited, Michael Berardi ordered it off the Internet and used both PVC pipe and clamps to insert an inner tube into the webbing.

Michael Berardi, with the help of Cheryl Berardi, documented his attempts to build on his "seed idea" for an expandable garden hose suitable for direct TV response marketing.  Together, the Berardis created dozens of videos documenting the inventive process of the XHose.  Later, when they made a commercial for the XHose, Michael Berardi testified he "might have subconsciously remembered some of the things that [Gary Ragner] said" in his video for the MicroHose.  Michael Berardi continued by explaining that "there are things on mine that are new and things on his [Gary Ragner's] that, you know,

were similar."  As he testified, many of these experiments

failed.  However, on November 2, or 3, 2011, Michael Berardi

succeeded in making a fifty-foot prototype of what would

eventually become the XHose.  On November 4, 2011, Michael

Berardi and Blue Gentian filed for a patent, which eventually

became Patent '941.

When asked about the invention, Cheryl Berardi testified

that "nothing that was used to create the XHose was used

discussed at that [the August 23] meeting."  During the

inventorship hearing before the Court, Michael Berardi testified

that he did not use anything that Gary Ragner told or showed him

when inventing his hose.  Ragner testified that Michael

Berardi's first prototype was "almost identical to what [he]

described to him, minus the wire biasing spring."  Ragner was

struck by the fact that Michael Berardi used "the same diameter

I kind of conveyed to him in prototype 2."

## ANALYSIS

**A. Subject Matter Jurisdiction and Standing**

This Court has subject matter jurisdiction over this matter

pursuant to 28 U.S.C. § 1338(a) ("The district courts shall have

original jurisdiction of any civil action arising under any Act

of Congress relating to patents, plant variety protection,

copyrights and trademarks.").  Under 35 U.S.C. § 116, patent

applications must include the names of all inventors.  If a

patent names persons who are not inventors (misjoinder) or omits persons who are inventors (nonjoiner), 35 U.S.C. § 256 "provides two methods for correction: (1) the Director of the United States Patent and Trademark Office may correct the patent upon application of all parties and assignees; or (2) '[t]he court before which such matter is called in question may order correction of the patent on notice and hearing of all the parties concerned.'" Polyzen, Inc. v. RadiaDyne, L.L.C., 2012 WL 4049841 at *2 (E.D.N.C. 2012).

For the Court to have jurisdiction over an action for correction, § 256 requires notice and an opportunity for all parties to be heard. Stark v. Advanced Magnetics, Inc., 119 F.3d 1551, 1553 (Fed. Cir. 1997). In contrast to proceedings before the Director of the United States Patent and Trademark Office, § 256 does not require that all inventors and assignees agree for a district court to have subject matter jurisdiction. In this case, all parties were given notice and an opportunity to be heard.

**B. Motion Opinion Standard**

"Rule 52(a)(3) provides that the court is not required to state findings or conclusions when ruling on a motion unless the rules provide otherwise." Ambrose v. Krause Publications, Inc., 354 Fed.Appx. 711, 713 (3d Cir. 2009). Nevertheless, when "the district court is presented with conflicting positions of

substance as to how it should exercise its discretion . . . it is salutary practice to give the litigants, either orally or in writing, at least a minimum articulation for the reasons of its decision." State Farm Mut. Auto. Ins. Co. v. Midtown Medical Center, Inc., 388 Fed.Appx. 125, 129 (3d Cir. 2010) (quoting Interpace Corp. v. City of Phila., 438 F.2d 401, 404 (3d Cir. 1971)).

This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(3). See Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980) (holding that to be in compliance with Rule 52(a), findings of fact and conclusions of law do not need to be stated separately in a court's memorandum opinion); see also Ciolino v. Ameriquest Transp. Services, Inc., 751 F. Supp. 2d 776, 778 (D.N.J. 2010) (issuing an opinion which constituted the court's findings of fact and conclusions of law).

**C. Correction of Inventorship Standard and Burden of Proof**

In a § 256 proceeding to correct inventorship, "the inventors as named in an issued patent are presumed to be correct." Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997) (citations and internal quotation marks omitted). In addition to this presumption, courts have also recognized the "temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what

their state of mind may have been years earlier." Id. (citing Amax Fly Ash Corp. v. United States, 514 F.2d 1041, 1047 (1975)). In recognition of this temptation, the claimed inventor must "meet a heavy burden of proving his case by clear and convincing evidence." Au New Haven, LLC v. YKK Corp., 2019 WL 2996473 at *5 (S.D.N.Y. 2019) (citing Finkelstein v. Mardkha, 495 F. Supp. 2d 329, 337 (S.D.N.Y. 2007)).

To satisfy this standard, a claimed inventor must provide evidence corroborating his testimony concerning conception of the invention. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1358 (Fed. Cir. 2004); Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1461 (Fed. Cir. 1998). Finally, "[t]he determination of whether a person is a joint inventor is fact specific and no bright-line standard will suffice in every case." Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997).

### D. Correction of Inventorship

#### a. Conception

Conception is a term of art in patent law and "the touchstone of inventorship." Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994) (citing Sewall v. Walters, 21 F.3d 411, 415 (Fed. Cir. 1994)); Finkelstein, 495 F.Supp.2d at 337. A person can be a joint inventor only if he or she contributes to the conception of the claimed invention. See Eli Lilly, 376 F.3d at 1359.

Courts have recognized that "the line between actual contributions to conception and the remaining, more prosaic contributions to the inventive process that do not render the contributor a co-inventor is sometimes a difficult one to draw." Id. However, the Court is not entirely without guidance as to a working definition of "conception." Conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." Burroughs, 40 F.3d at 1228 (quoting Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.3d 1367, 1376 (Fed. Cir. 1986)). Conception has also been defined as "the complete performance of the mental part of the inventive act." Coleman v. Dines, 754 F.2d 353, 359 (Fed. Cir. 1985).

The mental act of conception is complete when "the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice without extensive research or experimentation." Burroughs, 40 F.3d at 1228; see Sewall, 21 F.3d at 415 ("Conception is complete when one of ordinary skill in the art could construct the apparatus without unduly extensive research or experimentation."). An idea is sufficiently defined when an inventor has a "specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he

23

hopes to pursue." Burroughs, 40 F.3d at 1228 (citing Fiers v. Revel, 984 F.2d 1164, 1169 (Fed. Cir. 1993)). Conception of an invention, therefore, must include every feature of a claimed invention. See Coleman, 754 F.2d at 359. This analysis requires that an inventor can describe his or her invention with particularity. Burroughs, 40 F.3d at 1228.

Plaintiffs argue that Gary Ragner could not have contributed to the conception of the XHose because Michael Berardi had already conceived of a hose with an elastic tube inside a fabric cover during his "eureka moment" in his community gym. However, by his own admission, at the time that Michael Berardi and Gary Ragner met, Michael Berardi did not have a definite and permanent idea of the complete and operative XHose. Instead, he had a "nebulous concept" or "seed idea" for an expandable garden hose derived simply from his exposure to the Ragner Technologies video.

On August 23, 2011, Michael Berardi had not completed the mental part of the inventive act. Moreover, his idea was not so clearly defined that it only took ordinary skill to produce the XHose. Developing the XHose required extensive experimentation. Michael Berardi testified that it took almost two and a half months of experimentation to create a fifty-foot prototype of the XHose. Michael Berardi did not have a specific, settled idea, but rather a general goal of creating an expandable garden

hose that could succeed as a DRTV product.  Similarly, Michael Berardi did not yet have solution to a problem, or even a research plan to follow for the creation of the XHose.  In fact, he testified that while making his first prototype, he "didn't really know what [he] was doing" and had not settled on a "final thought process" for how to produce his hose.

At the time that Michael Berardi and Gary Ragner met, Michael Berardi's idea for a hose did not yet include every feature of his invention.  Michael Berardi's inventive process demonstrates that his idea for the XHose was indeed "nebulous," as he described it.  Michael Berardi testified he "didn't really know . . . if [he] was going to put the water through the hose" when he made the first prototype of the XHose.  During the two and a half months following his meeting with Ragner, Michael Berardi changed both the materials and the design for the XHose.  Furthermore, even if one credits it, Michael Berardi's conversation with his wife following his "eureka moment" does not illustrate that Michael Berardi could describe his invention with particularity, but rather that he was enthusiastic about the idea.

The Court finds that because Michael Berardi did not have a conception of the XHose prior to the August 23 meeting, it is possible that Gary Ragner contributed to the conception of the XHose.

### b. Collaboration

Title 35, United States Code, Section 116 allows for a patented invention to be the work of two or more joint inventors. Ethicon, 135 F.3d at 1461 (citing 35 U.S.C. § 116). "Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs." Eli Lilly, 376 F.3d at 1359. To be added to a patent, an alleged inventor must show that his or her labor were "conjoined with the efforts" of the listed inventors. Id.

While it is difficult to precisely define collaboration for the purpose of joint inventorship, the Federal Circuit in Kimberly-Clark Corp. provides a helpful explanation:

> For persons to be joint inventors under Section 116, there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting.

973 F.2d 911, 918 (Fed. Cir. 1992). In other words, "joint inventorship arises only 'when collaboration or concerted effort occurs - that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts.'" Falana v. Kent State Univ., 669 F.3d 1349, 1358 (Fed. Cir. 2012) (quoting Eli Lilly, 376 F.3d at 1359). On the other hand, the Federal Circuit in Kimberly-Clark Corp. further articulated that:

26

> Individuals cannot be joint inventors if they are
> completely ignorant of what each other has done until
> years after their individual independent efforts. They
> cannot be totally independent of each other and be joint
> inventors.

973 F.2d at 918.

Though joint inventors must have knowledge of his or her
co-inventor's efforts, these cases stop short of requiring an
intent to invent. In <u>CODA Dev. S.R.O. v. Goodyear Tire & Rubber
Co.</u>, the Federal Circuit considered whether dismissal of a
correction of inventorship claim at the motion to dismiss stage
was appropriate. 916 F.3d 1350, 1353 (Fed. Cir. 2019). In that
matter, the defendant, through General Motors Corp., expressed
an interest in plaintiff's self-inflating tire ("SIT")
technology. <u>Id.</u> The plaintiff met with the defendant and
allegedly "shared novel, proprietary, and confidential
information concerning its SIT technology." <u>Id.</u> at 1354.

At a second meeting a few months later, the plaintiff
allowed the defendant to examine a working prototype, which the
defendant photographed without the plaintiff's permission. <u>Id.</u>
A few months later, the defendant applied for a patent "entitled
'Self-Inflating Tire Assembly.'" <u>Id.</u> The plaintiff claimed
this invention was at least in part what the plaintiff had shown
the defendant during their meetings. <u>Id.</u> Eleven other patents
were issued to the defendant on similar technology thereafter.
<u>Id.</u> at 1355. The Federal Circuit opined that this set of

allegations was sufficient to support a correction of
inventorship claim, and specifically was enough to show
collaboration.  Id. at 1359-60.  In reaching this decision, the
Federal Circuit took into account the defendant's prior
failures, eagerness to meet with the plaintiff, unauthorized
photography of a functional prototype, the timing of a more
distance relationship with the plaintiff, and an accusation from
a former employee as evidence that the plaintiff's correction of
inventorship claim was plausible.  Id. at 1359.

    While there may be slight factual differences between the
situation described in CODA Dev. S.R.O. and the current facts,
the Court finds that the facts are sufficiently similar to
support a finding of collaboration in this matter.  Michael
Berardi saw relevant and excruciatingly detailed graphics and
photographs at his meeting with Ragner Technologies.  These
disclosures encompassed Ragner's novel, proprietary, and
confidential information concerning Ragner Technologies'
MicroHose most, if not all, of which had been set forth in
Ragner's pending patent applications.

    Though Michael Berardi did not photograph the prototype he
was shown, he did hold and use it, even asking to keep it.
Berardi clearly relied upon the prototype and Ragner's oral
suggestions about alternative methods for building an expandable
hose in building his own.  After Michael Berardi applied for his

patent for the XHose in November 2011, Ragner recognized these inventions as being related to what he had shown Michael Berardi in the August 23 meeting.  Moreover, Michael Berardi had neither attempted nor failed to make an expandable hose prior to meeting with Ragner Technologies and he admitted he was eager to meet with Ragner Technologies about its expandable hose.

After the meeting, neither Ed Kelly nor Michael Berardi responded to Margaret Combs' email regarding an NDA, and the parties never communicated again, suggesting a more distant relationship.  These facts are not are favorable to Plaintiff. The Court credits the testimony of Combs that she had secured an oral commitment from those at the meeting, including Berardi, for the post-meeting signing of an NDA.  Her post-meeting conduct corroborates that testimony.

An NDA was never signed not because the parties had not agreed to it but rather because the investor part of the group was not interested in investing in a machine to build a product that could be built more cheaply overseas.  And Michael Berardi had no reason to sign an NDA after the fact.  Despite the oral agreement that had been reached, the Court is convinced Berardi left the meeting intent on using what he had learned in it to flesh out his nebulous idea and build a flexible hose for himself.

Plaintiffs argue that because Gary Ragner did not intend to invent a garden hose when he met with Michael Berardi, he could not have collaborated in creating the XHose.  Plaintiffs further point to the fact that Ragner did not think that he had invented a new garden hose when he left the August 23 meeting as evidence that he did not collaborate with Michael Berardi.  The Court rejects Plaintiff's argument that there must be an intent to invent or expectation of having invented for collaboration, as a legal matter to occur.  The issue is not Ragner's intent but Berardi's and his level of knowledge before and after the meeting.

The Court finds on the evidence presented that as a matter of law Gary Ragner collaborated with Michael Berardi to invent the patents in question.

### c. Contribution

A person can be listed as an inventor only if he or she contributes to the conception of the claimed invention.  <u>Fina Oil & Chem. Co.</u>, 123 F.3d at 1473.  However, the statute providing for joint inventorship does not set an explicit lower limit on "the quantum or quality of the inventive contribution required for a person to qualify as a joint inventor."  <u>Id.</u>; see 35 U.S.C. § 116.  Title 35, United States Code, Section 116 allows for inventors to apply for a patent jointly event though "(1) they did not physically work together or at the same time;

30

(2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent."  35 U.S.C. § 116.  A joint inventor does not need to make a contribution of the same type or amount of the named inventor, nor does a joint inventor need to make a claim to every claim of a patent.  See Finkelstein, 495 F.Supp.2d at 337-38 (quoting Ethicon Inc., 135 F.3d at 1460).  A contribution to one claim is enough.  See id.

To qualify as a joint inventor, a person's contribution must be "not insignificant in quality, when that contribution is measured against the dimension of the full invention."  Fina Oil & Chem. Co., 123 F.3d at 1473.  Merely "explaining to the inventors what the state of the art was and supplying a product to them for use in their invention" is not a sufficient contribution to establish joint inventorship.  Hess, 106 F.3d at 980 (holding that a person who did "no more than a skilled salesman would do" and did not conduct any research and development work had not contributed to an invention).  Similarly, "exercising ordinary skill in the art to reduce an idea to practice" does not constitution a contribution.  See Finkelstein, 495 F.Supp.2d at 416.  A person who provides "well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as

31

a whole" cannot be named a joint inventor.  <u>Ethicon</u>, 135 F.3d at
1460 (quoting <u>Hess</u>, 106 F.3d at 981).

Defendants do not contend that Ragner physically worked
with Michael Berardi in creating the XHose.  Defendants
similarly do not contend that Ragner and Michael Berardi did
their work at the same time.  Defendants also do not argue that
Ragner and Michael Berardi made the same amount or type of
contribution.  Defendants instead argue that Michael Berardi
contributed nothing to the invention of the XHose.  According to
Defendants, Ragner contributed at least one of the following
concepts to the conception of the XHose: "(1) inner and outer
tubes attached only at the ends; (2) a fabric outer tube, and
(3) an elastic inner tube that can provide force to retract the
hose, including without a metal spring."

Plaintiffs counter that Ragner did not contribute to
Michael Berardi's invention.[5]  Plaintiffs highlight that all the
MicroHose prototypes Ragner and de Rochemont had created before
August 23 relied on a wire or some type spring for biasing.
Plaintiffs deny that the conversation between Ragner and Michael
Berardi about replacing the spring component with elastic ever

---

[5] Plaintiffs also assert that the Court is required to engage in
claim construction prior to determining inventorship.  The Court
has declined to do so and need not do so in order to determine
that Defendants have met the standard to show that Ragner is a
co-inventor of the Berardi patents-in-suit.

occurred.  Plaintiffs emphasize that Michael Berardi never saw,
held, or used prototype 2 of the MicroHose, but instead saw a
prototype that differs greatly from the XHose.  At most,
Plaintiffs allege that Ragner contributed valuable information
that was already part of the prior art in hose manufacturing.

Plaintiffs argue that the novel information that Ragner
claims to have disclosed during the meeting was covered by his
previous patent, U.S. Patent No. 6,948,527.  Therefore,
according to Plaintiffs, everything Ragner described to Michael
Berardi was already part of the art.  Ragner testified that in
lay terms, patent '527 discloses several elements that are also
found in the XHose: (1) hoses with inner and outer layers; (2)
hoses that include an inner layer wrapped in an outer layer; and
(3) hoses with an inner layer wrapped in an outer layer that is
not attached to the inner layer except at the end of the hose.

The Court finds that Ragner made a significant contribution
to the invention of the XHose.  In the course of his meeting
with Michael Berardi, Cheryl Berardi, and Ed Kelly, Ragner did
more than merely explain the state of the art and supply a
product for their use.  According to Michael Berardi's
testimony, Ragner acted more "like a professor" than a skilled
salesman during his explanation of the MicroHose production
process.  Ragner shared the fruits of his own research and
development work on expandable garden hoses for over a half-hour

during this investment meeting.  He created and presented visual aids to explain both the manufacturing process and internal structure of the MicroHose, exercising more than ordinary skill in the art.

Given his years of experience working on hoses and his eighteen to twenty prototypes of the MicroHose, the Court finds that Ragner had a clear and definite picture of the expandable, retractable garden hose he described as prototype 2.  Ragner's decision not to pursue this design further does not reflect a lack of a clear or definite idea.  Rather, Ragner's continued innovation reflects a rejection of a design that, in Ragner's view, exhibited an unacceptable propensity to burst under high water pressure.

Without engaging in claim construction, the Court does not find that everything Ragner disclosed was covered by Patent '527.  Ragner testified that he told Michael Berardi it was possible to make an expandable garden hose without using a spring to bias the hose, testimony the Court credits.  Patent '527 relies on a spring for biasing, whereas Michael Berardi's patents do not.  Berardi Patent '941 uses the absence of a spring as a means of distinguishing itself from Ragner Patent '527.  If the presence of a biasing spring is what distinguishes Michael Berardi's patents from Ragner's patent, then by

disclosing that a biasing spring was not necessary, Ragner could
not have been disclosing information already in the art.

The Court finds that Ragner contributed to the invention of
the XHose by sharing information that was not previously
available to Michael Berardi about designs for a retractable
hose.

### d. Corroboration

When considering whether an alleged inventor's testimony is
corroborated, a Court must "bear in mind the purpose of
corroboration, which is to prevent fraud, by providing
independent confirmation of the inventor's testimony." Kridl v.
McCormick, 105 F.3d 1446, 1450 (Fed Cir. 1997); see Mycogen
Plant Sci., Inc. v. Monsanto Co., 61 F.Supp.2d 199, 240 (Fed.
Cir. 1999).  "There is no single formula that must be followed
in proving corroboration." Berry v. Webb, 412 F.2d 261, 266
(CCPA 1969).  By the same token, there is no single type of
corroborating evidence.  Finkelstein, 495 F.Supp.2d at 337
(citing Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1303
(Fed Cir. 2002)).

Typically, courts have allowed for "proof by circumstantial
evidence" and have not required "an over-the-shoulder observer
or corroboration of every factual issue." Cooper v. Goldfarb,
154 F.3d 1321, 1330 (Fed. Cir. 1998).  Corroborating evidence
includes contemporaneous documentary evidence, oral testimony of

35

others, and circumstantial evidence.  Finkelstein, 495 F.Supp.2d at 337.

Of these types of relevant evidence, only the inventor's testimony must be corroborated before it can be considered. Price v. Symsek, 998 F.2d 1187, 1196 (Fed. Cir. 1993).  In contrast, physical exhibits do not require corroboration.  Id. The Federal Circuit has referred to documentary or physical evidence as "the most reliable proof that the inventor's testimony has been corroborated."  Martek Biosciences Corp. v. Nutrinova Inc., 579 F.3d 1363, 1375 (Fed. Cir. 2009) (citing Sandt Tech. Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350-51 (Fed. Cir. 2001)).  This evidence is particularly reliable because physical evidence is usually "created at the time of conception or reduction to practice," eliminating the "risk of litigation-inspired fabrication or exaggeration." Sandt Tech. Ltd., 264 F.3d at 1351.

The Federal Circuit applies a "rule of reason" test to determine whether the inventor's testimony has been corroborated.  Id.  The Court will therefore "examine, analyze, and evaluate reasonably all pertinent evidence when weighing the credibility of an inventor's story."  Holmwood v. Sugavanam, 948 F.2d 1236, 1239 (Fed. Cir. 1991).  In Price v. Symsek, the Federal Circuit listed several factors bearing on the inventor's credibility and whether the inventor's testimony is adequately

36

corroborated: "(1) the delay between the event and the trial, (2) interest of corroborating witnesses, (3) contradiction or impeachment, (4) corroboration, (5) the corroborating witnesses' familiarity with details of alleged prior structure, (6) improbability of prior use considering state of the art, (7) impact of the invention on the industry, and (8) relationship between witness and alleged prior user." 998 F.2d at 1195 n. 3.

Defendants offer several physical exhibits to corroborate Ragner's testimony. These exhibits include: Ragner Technologies' business plan, a version of the MicroHose prototype similar to the one used for demonstration at the meeting, a color drawing of Process 17,[6] instructions for potential investors written by Ragner, and U.S. Patent No. 8,776,836. The business plan, drawing, and instructions all discuss "knitted reinforcement" or "fiber reinforcement" on the outside of the hose. Ragner's Process 17 drawing also references an expandable hose with an elastic tube that provides

---

[6] Michael Berardi testified that he was not sure if the process 17 drawing he was shown during his deposition or during this hearing was the exact document he saw during the August 23 meeting. Michael and Cheryl Berardi both testified that the drawing they saw during the meeting at their house was in color. Michael Berardi contests that the document at the meeting did not have pictures or graphics. The exhibit was entered into evidence with both parties' acquiescence. The Court finds on the evidence presented at the hearing that the document entered into evidence is either the graphic shown at the meeting or is not materially different.

retracting force.  The prototype Ragner used to demonstrate the MicroHose features an inner and outer tube attached only at the ends.

The Court agrees with Defendants that U.S. Patent No. 8,776,836 corroborates Ragner's testimony.  Patent '836, which was filed in 2006, but not published until 2013, memorializes Ragner's knowledge about retractable garden hoses when he attended the August 23, 2011 meeting.  However, because this patent was not published until 2013, this information was not publicly known at the time Ragner and Berardi met and discussed the MicroHose.

Again, without engaging in claim construction, the Court finds that Patent '836 corroborates Ragner's testimony that he had previously designed a hose with these three features: (1) inner and outer tubes connected only at the ends; (2) a fabric outer tube made of nylon or polyester; and (3) an elastic inner tube to provide biasing force without the need for a spring. This prior knowledge corroborates Ragner's testimony that he was prepared to, and did in fact, discuss these features with Michael Berardi at the August 23 meeting.  The fact that Patent '836 later entered the public domain does not bar a finding of co-inventorship, especially given that this information was "not contemporaneously available to an ordinary skilled artisan" during the meeting in question.  Cf., CardiAQ Valve Techs. v.

38

Neovasc Inc., 708 Fed. Appx. 654, 660 (Fed. Cir. 2017)
(unpublished).

Furthermore, Michael Berardi's first prototype also
corroborates Ragner's testimony.  Ragner testified that he was
struck by the similarity between what he had described to
Michael Berardi as prototype 2 and Michael Berardi's first
prototype.  Both prototypes featured elastic running through the
middle of a larger, a two-and-a-half-inch diameter hose.  In
both prototypes, water could not run through the internal
elastic element.

Perhaps even more telling is that this initial prototype
did not seem to match Michael Berardi's own alleged conception
of his hose.  Michael Berardi's first version appears to more
closely match Ragner's description of prototype 2 than his
original idea for a hose.  During his "eureka moment," Michael
Berardi contemplated running water through an elastic tube like
the ones he saw in his community gym.  However, this was not the
idea he first implemented.  Instead, Michael Berardi started his
inventive process with the design that Ragner testified he
shared with Michael Berardi just days before.

Because these exhibits are physical evidence created at the
time of conception or reduction to practice, there is no risk of
litigation-inspired fabrication or exaggeration.  The Court
finds that these exhibits corroborate Gary Ragner's testimony.

39

Next, the Court will take into account all the pertinent
evidence when weighing the credibility of Ragner's story.  Using
the factors from Price, the Court will examine whether each
witness's testimony corroborates Ragner's invention story.

A long delay between the events in question and testimony
may undermine the reliability of an alleged inventor's
testimony.  See Woodland Trust v. Flowertree Nursery, Inc., 148
F.3d 1368, 1371-72 (Fed. Cir. 1998).  However, when an alleged
inventor relies on contemporaneous documents and demonstrates a
strong recollection of the subject matter, his or her testimony
is bolstered.  Ceats, Inc. v. Continental Airlines, 2012 WL
12886830 at *7 (E.D. Tex. 2012).  In this case, all the
corroborating and contradictory witnesses are testifying about
events that occurred in 2011 or earlier.  It has been several
years since this meeting has occurred but, in some cases, the
witnesses have had access to contemporaneous documents.

An interested witness is a "named party, an employee of or
assignor to a named party, or [a person who] otherwise is in a
position where he or she stands to directly and substantially
gain by his or her invention being found to have priority over
the patent claims at issue."  Id. (citing Thomson S.A. v.
Quixote Corp., 116 F.3d 1172, 1176 (Fed. Cir. 1999)); see
Netscape Comms. Corp. v. ValueClick, Inc., 704 F.Supp.2d 544,
555-56 (E.D. Va. 2010) (discussing the requirements for

corroborating interested and disinterested witnesses'
testimony).  As will be discussed below, several of the
witnesses offering corroborating or contradicting testimony are
interested witnesses.

### 1. Margaret Combs' Testimony

Though Ragner Technologies no longer employs Combs, she has
retained a 10% equity in the company.  Combs is an interested
witness for purposes of corroborating Ragner's testimony.

Combs testified that she was not close enough to Ragner and
Michael Berardi to overhear a conversation about prototype 2 or
any alternative designs for an expandable hose.  Combs'
testimony neither contradicts nor corroborates Ragner's
testimony.

### 2. Robert de Rochemont's Testimony

De Rochemont is currently the CEO of Ragner Technologies.
De Rochemont is an interested witness for the purposes of
corroborating Ragner's testimony.

De Rochemont testified that due to his hearing loss, he,
like Combs, was not able to hear Ragner and Michael Berardi's
conversation.  De Rochemont's testimony neither contradicts nor
corroborates Ragner's testimony.

### 3. Keith Mirchandani's Testimony

As an owner of Telebrands, Keith Mirchandani is an employee
of a named party.  Because Telebrands also produces an

41

expandable hose, Mirchandani likely has an interest in the outcome of this inventorship hearing. Mirchandani is an interested witness for the purposes of corroborating Ragner's testimony.

Mirchandani testified that Ragner relayed his conversation with Michael Berardi to him later. Mirchandani testified that Ragner told him that Ragner had shared with Michael Berardi that a spring may not be necessary for a retractable hose. However, Mirchandani was not present at the meeting to witness this conversation himself. Furthermore, Mirchandani did not learn of the MicroHose until September 2012 when he began pursuing licensing agreements for an expandable hose. It is therefore unlikely that Mirchandani is familiar with the details of the MicroHose structure or prototype 2.

The Court finds that Mirchandani's corroboration is weak at best.

### 4. Cheryl Berardi's Testimony

Cheryl Berardi is an employee of a named party, Blue Gentian. Cheryl Berardi does not stand to gain if Ragner is named as a co-inventor of these patents. Cheryl Berardi is therefore an interested witness. Though Cheryl Berardi may not stand to gain if Ragner is named as a co-inventor, she is not without an incentive to reconstruct the events of August 23 in a manner favorable to her position. Cheryl Berardi and Blue

Gentian stand to benefit from Michael Berardi remaining the sole inventor of the XHose.

Cheryl Berardi's testimony partially contradicts Ragner's testimony.  Cheryl Berardi testified that the meeting attendees did not discuss elastic or any previous models of the MicroHose during the August 23 meeting at her home.  Cheryl Berardi also testified that she was not paying attention to all parts of the meeting and would at times leave the room.  The Court finds Cheryl Berardi's contradictory testimony unpersuasive.

### 5. **Michael Berardi's Testimony**

Michael Berardi is an employee of a named party, Blue Gentian.  However, Michael Berardi does not stand to gain if Ragner is named as a co-inventor of these patents.  Michael Berardi is therefore an interested witness as defined above. Like Cheryl Berardi, Michael Berardi also has an interest in reconstructing the events of the August 23 meeting in a manner more favorable to himself.  Michael Berardi and Blue Gentian have an interest in remaining the sole owners of the six patents in question.

Michael Berardi's testimony both contradicts and corroborates Ragner's testimony.  Michael Berardi contradicted Ragner's testimony by claiming that while they may have discussed "elastomers," at the August 23 meeting, they did not discuss "elastic."  However, Michael Berardi also testified that

43

he did ask Ragner about the materials used in the MicroHose
prototype during the demonstration portion of the meeting.
Michael Berardi stated that while he did remember some questions
being asked during the Ragner Technologies team's explanation of
Process 17, he could not remember any specific questions.  This
account does not preclude the possibility that Ragner's
testimony about his conversation with Michael Berardi was
accurate.  To the extent their testimony conflicts, after
observing their demeanor and after reviewing all the evidence as
a whole, the Court views Ragner's testimony on this issue the
most credible.

Furthermore, while Ragner maintains that Michael Berardi
took most, if not all, of his idea for the XHose from Ragner
Technologies, Michael Berardi partially concedes that he "may
have subconsciously remembered" some elements of Ragner's video
for the MicroHose during his inventive process.  Michael Berardi
also admitted that his original idea for the XHose "kind of
reminded me I guess maybe of the expanding hose that Ragner had
invented."

Michael Berardi's testimony is particularly relevant for
corroboration.  As the only inventor currently listed on the six
patents in suit, Michael Berardi is very familiar with the
details of the technology used in the XHose.  Michael Berardi
also held and used a prototype of the MicroHose at the August 23

44

meeting.  During the three to four-hour meeting at his house,
Michael Berardi listened to Ragner lecture "like a professor"
about manufacturing the MicroHose.  Michael Berardi is therefore
familiar with the details of both inventions.

Ragner Technologies attempted to establish an ongoing
business relationship with Ed Kelly and Michael Berardi.
Following the August 23 meeting, it became clear, at least to
Michael Berardi, that this business relationship would not move
forward.  As mentioned above, the prospect of a business
relationship lasted from late July 2011, to August 23, 2011.
When Margaret Combs emailed Ed Kelly and Michael Berardi about a
non-disclosure agreement on August 25, 2011, she did not receive
a response.  Ragner Technologies and Michael Berardi never met
again.

After considering all pertinent evidence, the Court finds
that Ragner's testimony is adequately corroborated both by
physical and circumstantial evidence.  Although he was seeking
investors not a collaborator, when Gary Ragner made his
elaborate and thorough presentation at the August 23 meeting, he
conveyed to Michael Berardi key elements of the eventual product
known as the XHose, more specifically, as Defendants contend:
(1) inner and outer tubes attached only at the ends; (2) a
fabric outer tube, and (3) an elastic inner tube that can

45

provide force to retract the hose, including without a metal
spring.

When, as here, "inventors have some open line of
communication during or in temporal proximity to their inventive
efforts" co-inventorship can occur.  <u>Falana</u>, 669 F.3d at 1358.
Michael Berardi may be a resourceful and inventive person, but
here his creation of the XHose occurred only because of the
immediately preceding insight, inventiveness, prior detailed
experimentation, design, help, and guidance, albeit short-lived,
of Gary Ragner.

### Conclusion

Gary Ragner came to the August 2011 meeting well-prepared
as an experienced engineer and inventor of flexible and
expandable hoses.  Ragner had not only experimented with various
designs, he had built several prototypes (including one he
brought and demonstrated at the meeting) and had taken the
further step of designing a machine to build them.  To explain
the machine is to explain the product.  His expertise and years
of work were on full display.

In a practical sense, however, Ragner was ill-prepared for
the hastily arranged version of "Shark Tank" he encountered in
Michael Berardi's home.  Berardi, as creative in other milieus
as he may have been, hosted the meeting not as an experienced
engineer but because of his understandable eagerness to learn

46

about and exploit commercially the product he had seen in the
Ragner Technology online video.  He left the meeting having been
taught something he did not know before the meeting - the key
design principles of an expandable and flexible hose as outlined
about.  He simply went on, in short time, to build, using the
information he had learned, a cheaper and simpler version of the
invention Ragner disclosed at the meeting and one, importantly,
containing each of its key components.

Accordingly, for the reasons discussed above, Defendants
have shown through clear and convincing evidence that Gary
Ragner contributed to the conception of the XHose and should be
named an co-inventor.  The Court will grant Defendants' motion
for a correction of inventorship.

An accompanying Order will be entered directing a
correction of inventorship for the patents in suit.  Orders
denying Defendants' motion to disregard Plaintiffs' unauthorized
June 12, 2019 filing, and motion for expedited consideration of
motion to disregard Plaintiffs' unauthorized June 12, 2019
filing will also be entered.


                                           s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.


Dated: January 15, 2019

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BLUE GENTIAN, LLC, NATIONAL
EXPRESS, INC., and TELEBRANDS CORP.,

               Plaintiffs,

      v.

TRISTAR PRODUCTS, INC. and WAL-
MART STORES, INC. d/b/a SAM'S CLUB
AND SAM'S WHOLESALE CLUB,

              Defendants.

**NOTICE OF APPEAL**

Case No.: 13-1758

      Notice is given that Plaintiffs, Blue Gentian, LLC, National Express, Inc. and Telebrands

Corporation, appeal to the United States Court of Appeals for the Federal Circuit from the

Judgment and Opinion (Docket Nos. 545 & 548) entered in this action on January 16, 2020,

entered in favor of Defendants as to Defendants' claims for Correction of Inventorship of U.S.

Patent Numbers: 8,291,941, 8,291,942, 8,479,776, 8,757,213, D772,681, and D724,186.

      Dated and signed this 14th day of February, 2020.

 

STONE & MAGNANINI LLP
By: /s/ David S. Stone
David S. Stone
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Telephone: (973) 218-1111
dstone@stonemagnalaw.com
*Attorneys for Plaintiff Telebrands*
*Corporation*

MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
By: /s/ George C. Jones
George C. Jones
1300 Mount Kemble Avenue
P.O. Bo 2075

Morristown, NJ 07962-2075
Telephone: (973) 993-8100
gjones@mdmc-law.com

McHALE & SLAVIN, P.A.
By: /s/ Edward F. McHale
Edward F. McHale
2855 PGA Boulevard
Palm Beach Gardens, FL 3341
Telephone (561) 625-6575
litigation@mchaleslavin.com
*Attorneys for Blue Gentian, LLC and
National Express, Inc. and Michael
Berardi.*

# EXHIBIT G

David S. Stone
Bradford W. Muller
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
973-218.1111 (P)
973-218-1106 (F)
dstone@stonemagnalaw.com
bmuller@stonemagnalaw.com
*Attorneys for Plaintiff Telebrands Corporation*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BLUE GENTIAN, LLC, NATIONAL EXPRESS, INC., and TELEBRANDS CORP., | : : : : | Civil Action No. 13-1758 (NLH) (AMD) |
| Plaintiffs, | : : | |
| v. | : : | |
| TRISTAR PRODUCTS, INC. and WAL-MART STORES, INC., d/b/a SAM'S CLUB and SAM'S WHOLESALE CLUB, | : : : : : | |
| Defendants. | : : | |

### NOTICE OF MOTION REQUESTING CERTIFICATION OF JUDGMENT UNDER RULE 54(B) AND MOTION FOR STAY OF ORDER AND JUDGMENT (DOCKET NOS. 545 & 548) AND OF CERTAIN PROCEEDINGS PENDING APPEAL

**PLEASE TAKE NOTICE** that on March 2, 2020, Plaintiff Telebrands

Corp. ("Telebrands") shall move before the Honorable Noel L. Hillman, U.S.D.J.,

1

at the Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Room 3A Camden, NJ 08101, for entry of an Order certifying the January 21, 2020 judgment under Rule 54(b) and for a stay of the Order and Judgement (Docket Nos. 545 & 548) and of certain proceedings pending appeal.

**PLEASE TAKE FURTHER NOTICE** that in support of this motion, Telebrands will rely on the Memorandum submitted herewith. Also submitted herewith is a proposed Order, and a Certification of Service.

Dated: January 31, 2020                    Respectfully submitted,

*s/ David S. Stone*
David S. Stone
Bradford W. Muller
STONE & MAGNANINI LLP
100 Connell Drive, Suit 2200
Berkeley Heights, NJ 07922
973-218.1111 (P)
973-218-1106 (F)
dstone@stonemagnalaw.com
bmuller@stonemagnalaw.com
*Attorneys for Plaintiff Telebrands Corporation*

# EXHIBIT H

David S. Stone
Bradford W. Muller
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Telephone: (973) 218.1111
Facsimile: (973) 218-1106
dstone@stonemagnalaw.com
bmuller@stonemagnalaw.com

*Attorneys for Plaintiff Telebrands Corp.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BLUE GENTIAN, LLC, NATIONAL EXPRESS, INC., and TELEBRANDS CORP., | : : : : | Civil Action No. 13-1758 |
|  | : | District Judge Noel L. Hillman |
| Plaintiffs, | : | Magistrate Judge Ann Marie Donio |
|  | : |  |
| v. | : : |  |
| TRISTAR PRODUCTS, INC. and WAL-MART STORES, INC. d/b/a SAM'S CLUB and SAM'S WHOLESALE CLUB, | : : : : | **ORAL ARGUMENT REQUESTED** |
|  | : |  |
| Defendants. | : |  |

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION REQUESTING CERTIFICATION OF JUDGMENT UNDER RULE 54(B) AND MOTION FOR STAY OF ORDER AND JUDGMENT (DOCKET NOS. 545 & 548) AND OF CERTAIN PROCEEDINGS PENDING APPEAL

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

REPLY ARGUMENT ........................................................................................1

CONCLUSION...................................................................................................3

# TABLE OF AUTHORITIES

*Budinich v. Becton Dickinson & Co.,*
   486 U.S. 196 (1988) ............................................................................... 2

*Ray Haluch Gravel Co. v. Central Pension Fund,*
   134 S. Ct. 2205 (2014) ......................................................................... 2

**Statues**

35 U.S.C. § 285 .......................................................................................... 2

**Rules**

Fed. R. Civ. Pro. R. 58(e) .......................................................................... 2

Fed. R. Civ. Pro. R. 54(b) .......................................................................... 3

L. Civ. R. 7.1(d)(3) ..................................................................................... 4

L. Civ. R. 7.1(i) ........................................................................................... 4

## REPLY ARGUMENT

After the Court ignores Defendants' rhetoric in their opposition brief, what emerges is (a) Defendants agree that the Court should certify its inventorship opinion and order (Dkt. Nos. 545 & 548) as final for purposes of an immediate appeal to the Federal Circuit and (b) Defendants do not oppose a stay pending that appeal. The only difference in the parties' respective positions is that Defendants believe the certification and stay should await completion of the parties' mediation. As set forth below, while Plaintiffs agree that the Court can and should decide Defendants' pending motion for clarification/reconsideration (Dkt. 549), which is improper on its face, before it certifies the matter for appeal so that there can be no dispute as to the finality of the order and opinion that the Federal Circuit will consider, Plaintiffs disagree that the Court should wait to enter the certification and stay pending mediation. No further delay is necessary.[1]

---

[1] While in the process of drafting this reply brief, Judge Salas entered an Order in the related Newark cases staying the parties' mediation before Retired Judge Brown (currently scheduled for March 24, 2020), pending Your Honor's decision regarding the disqualification of Telebrands' former counsel in the present matter, the Pryor Cashman law firm (and its partner, Jeffery Snow, Esq.). However, on February 21, 2020, via telephonic hearing, Magistrate Judge Donio dismissed the Defendants' motion to disqualify Pryor Cashman, finding that it was not properly before the Court. Accordingly, we expect that Judge Salas will vacate her order and allow the parties' mediation to proceed on March 24, 2020, unless the Defendants seek to disqualify Mr. Snow from appearing at the mediation itself. Defendants' critical concern raised at the telephonic hearing was that Mr. Snow/Pryor Cashman would be indirectly involved in Telebrands' appeal of the inventorship decision. That issue has been resolved because Plaintiffs have agreed

Regarding certification, the parties agree that clarity and finality is important for the marketplace, which is why Defendants do not dispute the need for certification of the Court's inventorship decision for appellate review once the pending clarification/reconsideration motion before the Court is decided. In addition, Defendants appear not to disagree that third-party retailers could be placed in legal jeopardy if they rely on an interlocutory opinion that may be overturned by the Federal Circuit when making their business decisions.[2] Certification is, without question, a necessary next step in this dispute.

Regarding the stay request, Plaintiffs are seeking to stay (a) all proceedings in the current action pending appeal, (b) proceedings in the related anti-trust

---

not to involve Mr. Snow or Pryor Cashman in the appeal, and if for any reason that were to change, Plaintiffs' counsel agreed to alert the Court and opposing counsel to any plans to seek Mr. Snow's or Pryor Cashman's assistance on the appeal. To be clear, by way of the present motion Plaintiffs are not requesting a stay of the pending March 24, 2020 mediation.

[2] Defendants do argue that, theoretically, the Camden case is not rendered moot by the Court's inventorship decision because Defendants may, among other things, seek costs and attorneys fees' pursuant to 35 U.S.C. § 285. This argument is irrelevant because Defendants agree that a certification to the Federal Circuit is appropriate, thus finality is not truly in dispute. Even so, Defendants' argument ignores clear case-law which states that a District Court is empowered to decide a fee application even while an appeal of the underlying decision is pending. This is because an unresolved motion for attorneys' fees is a collateral matter that does not preclude a merits judgment from becoming final. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988); *Ray Haluch Gravel Co. v. Central Pension Fund*, 134 S. Ct. 2205 (2014); *see also* Fed. R. Civ. Pro. 58(e) (giving a district court discretion, but not requiring it, to delay entry of final judgment to resolve a pending claim for attorneys' fees in certain situations).

dispute between the parties currently before the Court as No. 1:15-cv-7752-NLH-AMD, and (c) the Court's Order (Dkt. No. 548) that "the Director of the United States Patent and Trademark Office add Gary Ragner as an inventor of the above-listed patents and to issue a Certificate of Correction accordingly."  Thus, a major reason that Plaintiffs' request for a stay is time sensitive is that the Court's order directs immediate administrative action be taken to formally change inventorship of the Berardi Patents.  (Dkt. 548).  It is of vital importance that this administrative process be halted, pending appeal, as the issuance of such a Certificate of Correction while the parties' further litigate inventorship before the Federal Circuit would cause more confusion within the marketplace, and it would eliminate the Court's ability to preserve the status quo pending appeal.  There is no reason to delay entry of this stay as a result of a pending mediation.

## **CONCLUSION**

For the aforementioned reasons, the Plaintiffs request that the Court grant their Motion and certify the Court's Opinion and Judgment (Dkt. Nos. 545 & 548) as final for appellate purposes pursuant to Rule 54(b), and further issue a stay pending appeal (a) of all proceedings in the current matter, (b) of all proceedings in the related anti-trust dispute between the parties currently before the Court as No.

1:15-cv-7752-NLH-AMD, and (c) of the Court's Order on inventorship (Dkt. No.

548).[3]

Dated: February 24, 2020

                         Respectfully submitted,

                         STONE & MAGNANINI LLP

                         s/ David Stone
                         David S. Stone
                         *Counsel for Plaintiff Telebrands Corp.*

                         McELROY, DEUTSCH, MULVANEY
                         & CARPENTER

                         George C. Jones
                         *Counsel for Blue Gentian, LLC*
                         *and National Express, Inc.*

                         McHALE & SLAVIN, P.A.

                         Edward F. McHale
                         *Counsel for Blue Gentian, LLC*
                         *and National Express, Inc.*

---

[3] Finally, we note that under the guise of arguing their opposition to Plaintiffs' brief, Defendants re-argued their separate motion for clarification/reconsideration. Pursuant to L. Civ. R. 7.1(d)(3), Defendants are not entitled to a reply brief in further support of their motion made under L. Civ. R. 7.1(i). Such argument was inappropriately included in their briefing on this separate motion and should be ignored by the Court.

# EXHIBIT I

David S. Stone, Esq.
Bradford W. Muller, Esq.
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Telephone: (973) 218-1111
Facsimile: (973) 218-1106
dstone@stonemagnalaw.com
bmuller@stonemagnalaw.com
*Attorneys for Plaintiff Telebrands Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BLUE GENTIAN, LLC, NATIONAL EXPRESS, INC., and TELEBRANDS CORP., | : : : : | Civil Action No. 13-1758 (NLH) (AMD) |
| Plaintiffs, | : : |  |
| v. | : : |  |
| TRISTAR PRODUCTS, INC. and WAL-MART STORES, INC., d/b/a SAM'S CLUB and SAM'S WHOLESALE CLUB, | : : : : |  |
| Defendants. | : : |  |

## STIPULATION OF VOLUNTARY DISMISSAL
## PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii)

IT IS HEREBY STIPULATED AND AGREED by and between the Parties

and/or their respective counsel that the above-captioned action is voluntarily

dismissed, with prejudice and without costs, against Defendant WAL-MART

STORES, INC. (now operating as Walmart Inc.), d/b/a SAM'S CLUB and SAM'S

WHOLESALE CLUB, pursuant to Federal Rules of Civil Procedure

41(a)(1)(A)(ii).

Dated: May 13, 2020

| | |
|---|---|
| */s/ David S. Stone* | */s/ George C. Jones* |
| David S. Stone, Esq. | George C. Jones, Esq. |
| STONE & MAGNANINI LLP | MCELROY, DEUTSCH, MULVANEY |
| 100 Connell Drive, Suite 2200 | & CARPENTER, LLP |
| Berkeley Heights, NJ 07922 | 1300 Mt. Kemble Avenue |
| Telephone: (973) 218-1111 | P.O. Box 2075 |
| Facsimile: (973) 218-1106 | Morristown, New Jersey 07962-2075 |
| dstone@stonemagnalaw.com | GJones@mdmc-law.com |
| | |
| *Attorneys for Plaintiff Telebrands Corporation* | *Attorneys for Plaintiffs Blue Gentian, LLC and National Express, Inc.* |
| | |
| */s/ Edward F. McHale* | */s/ Edward P. Bakos* |
| Edward F. McHale, Esq. | Edward P. Bakos, Esq. |
| MCHALE & SLAVIN, P.A. | BAKOS & KRITZER |
| 2855 PGA Boulevard | 147 Columbia Turnpike |
| Palm Beach Gardens, Florida 33410 | Florham Park, New Jersey 07932 |
| litigation@mchaleslavin.com | ebakos@bakoskritzer.com |
| | |
| *Attorneys for Plaintiffs Blue Gentian, LLC and National Express, Inc.* | *Attorneys for Defendant Wal-Mart Stores, Inc.* |

# CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2020, I caused to be served on all counsel of record, electronically via the Court's electronic filing system, a true and correct copy of the Stipulation of Voluntary Dismissal.

*/s/ David S. Stone*
David S. Stone, Esq.

**EXHIBIT J**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN DIVISION**

| | |
|---|---|
| **BLUE GENTIAN, LLC,** **NATIONAL EXPRESS, INC., and TELE-** **BRANDS CORP.,** ) ) ) | **CIVIL ACTION FILE NUMBER:** |
| ) | |
| Plaintiffs, ) | **1:13-CV-1758-NLH-AMD** |
| ) | |
| v. ) | |
| ) | |
| **TRISTAR PRODUCTS, INC. and** ) | |
| **WALMART INC.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

**DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFFS' MOTION TO CERTIFY FOR**
**APPEAL UNDER RULE 54(b) AND FOR RELATED STAY**

# TABLE OF CONTENTS

I.  **Defendants Would Not Oppose Rule 54(b) Certification *After* Defendants' Motions for Limited Clarification and Renewal of Defendants' Motion to Disqualify Are Resolved, and *After* the Parties Complete Mediation** .......................... 3

    A.  **Defendants' Motion for Limited Clarification of the Opinion Plaintiffs Wish to Appeal Should Be Resolved Before Any Certification** ....................... 3

    B.  **Defendants' Motion to Renew Their Earlier Motion to Disqualify Telebrands' Counsel Should Be Resolved Before Any Certification** .............. 6

    C.  **The Parties Mediation Efforts Should Be Completed Before Certification** ................................................................................................. 7

II.  **Final Judgment on the Entire Case Cannot Be Entered Because Defendants Have Pending Counterclaims that Have Not Yet Been Adjudicated** .......................... 8

III.  **No Stay Should Be Entered Until These Same Motions Have Been Addressed and the Agreed Mediation Is Completed** ....................................................... 9

IV.  **CONCLUSION** ............................................................................................. 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Avenue Innovations Inc. v. Telebrands Corp.*,
    No. 5:15-cv-00174-RWS, DE 1 (E.D. Tex. Oct. 29, 2015)....................................................10

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,03163
    446 U.S. 1 (1980)..............................................................................................................5, 7, 8

*Nystrom v. Trex Co.*,
    339 F.3d 1347 (Fed. Cir. 2003)...................................................................................................9

*Ragner Technology Corp. v. Berardi*,
    No. 1:15-cv-07752-NLH-AMD.....................................................................................................3

*Telebrands Corp. v. Ragner Tech. Corp.*,
    No. 2:15-cv-03163-ES-MAH, DE 162 (D.N.J. July 18, 2019) ...............................................8

**Statutes**

35 U.S.C. § 285...................................................................................................................................9

**Rules**

Fed. R. Civ. P. 54(b) ................................................................................................................ passim

L. Civ. R. 7.1(i).............................................................................................................................4, 5

**Other Authorities**

Ruth Simon, *Four-Year Water Balloon Fight Ends With $31 Million Truce*, Wall
    Street Journal, May 20, 2019 (*available at* https://www.wsj.com/articles/four-
    year-water-balloon-fight-ends-with-31-million-truce-11558388873)....................................10

Defendants Tristar Products, Inc. and Walmart Inc. respectfully respond to Plaintiffs' motion (DE 550 *et seq*., "Motion") requesting the Court to "certify" its January 16 Opinion and Order concerning correction of inventorship (DE 545 & 548) as final under Fed. R. Civ. P. 54(b) for purposes of immediate appeal (or, alternatively, enter "final judgment"), and to issue various related stays. While Plaintiffs' current request to certify is premature and their request to enter "final judgment" on the entire case must be rejected, Defendants would not oppose Rule 54(b) certification of the Opinion and Order once the Court has had an opportunity to address the merits of two pending motions directly relevant to the appeal for which Plaintiffs request certification, and once the parties complete the agreed mediation provided for by this Court and Judge Salas in Newark.

Plaintiffs' Motion for Rule 54(b) certification is, to begin with, at odds with Plaintiffs' own actions. On February 14, without explanation, Plaintiffs filed a premature appeal from the Court's inventorship Opinion and Order (DE 545 & 548) *without waiting for the very certification for appeal this Motion requests*. *See* DE 555. Defendants nonetheless agree with Plaintiffs that the Court's ruling on inventorship fully disposes of all of *Plaintiffs'* (but not Defendants') claims in this litigation,[1] making Plaintiffs' claims untenable and enabling the Court's entry of judgment against Plaintiffs on all of them. Thus, while "final judgment" on the entire action cannot be entered in light of *Defendants'* pending claims (including their claims for costs, attorney fees, and expenses in this exceptional case), and while Plaintiffs' Motion to certify and stay is now premature, Defendants would not oppose certification under Rule 54(b) for appeal of the Court's inventorship ruling *after* all three of the following events are complete:

- **First**, the Court has had the opportunity to address the merits of Defendants' motion for

---

[1] *See, e.g.*, DE 550-1 ("Br." or "Brief") at 3-5, 22 ("Plaintiffs' claims… will not stand").

limited clarification of *the same Opinion Plaintiffs now wish to appeal* (DE 549 *et seq.*);

• **Second***, the Court has ruled on Defendants' motion to renew their prior motion to dis-
qualify Telebrands' counsel, Jeffrey Snow and Pryor Cashman LLP (DE 552 *et seq.*) and
the underlying motion (DE 329 *et seq.*) based on these lawyers *switching sides* in this liti-
gation to sue (a) their former client, Walmart, on the same subject matter, and (b) their
former co-defendants, Walmart and Tristar, to whom they owe fiduciary obligations of
confidentiality.  Mr. Snow and Pryor Cashman formally withdrew in lieu of litigating the
merits of the original disqualification motion (which was dismissed as moot), but now re-
fuse to provide clear confirmation they will not be involved in Plaintiffs' appeal against
their former client/co-defendants.  In fact, Mr. Snow and Pryor Cashman have affirma-
tively *involved themselves* in this dispute,



arguing in correspondence about

and

• **Third**, the parties have completed their agreed, Court-sanctioned efforts to mediate.

Plaintiffs' hyperbolic attempts to denigrate Defendants' motion for clarification in hopes
the Court might ignore it in granting Rule 54(b) certification (*see, e.g.*, Br. 17 n.5) highlight
Plaintiffs' intent to exploit any argued ambiguities in the Court's Opinion on appeal, and the
value of addressing them before further resources are wasted on Plaintiffs' meritless claims.
Once these have occurred, if the Court certifies the Opinion and Order under Rule 54(b), then a
stay of other proceedings in this matter and in *Ragner Technology Corp. v. Berardi*, No. 1:15-cv-

07752-NLH-AMD (the "'7752 matter") would be appropriate pending that appeal.[2]

## I.   Defendants Would Not Oppose Rule 54(b) Certification *After* Defendants' Motions for Limited Clarification and Renewal of Defendants' Motion to Disqualify Are Resolved, and *After* the Parties Complete Mediation

Plaintiffs' Motion correctly concedes that the Court's determination that Gary Ragner should be named as an inventor on each of the asserted Berardi patents (*see* DE 545 & 548) means Plaintiffs' affirmative claims in this action are no longer viable, and that judgment can be entered against Plaintiffs on all of their claims: "Plaintiffs' remaining claims in the… matter rise or fall based on whether Mr. Ragner is a co-inventor of the Berardi Patents; they cannot be sustained if Mr. Ragner is a co-inventor."  Br. 4-5; *id*. at 22 ("Plaintiffs' claims in the present matter will not stand if Mr. Ragner is deemed a co-inventor of the Berardi Patents"); *id.* at 3-4; *see also id*. at 1 n.1, 3, 7.  On this basis, Defendants would not oppose Rule 54(b)[3] certification for appeal of the Court's interlocutory inventorship Opinion and Order (DE 545 & 548) *at the appropriate time*.  But Rule 54(b) permits certification "only if the court expressly determines that there is no just reason for delay," and Plaintiffs' request is clearly premature.

### A.   Defendants' Motion for Limited Clarification of the Opinion Plaintiffs Wish to Appeal Should Be Resolved Before Any Certification

Defendants filed (a day before Plaintiffs' Motion) a motion for limited clarification of *the very Opinion Plaintiffs now ask to appeal*.  *See* DE 549 *et seq*.  There is no basis (Plaintiffs offer

---

[2] Defendants respectfully submit there is no reason for delay in the Newark cases, which Plaintiffs confirm "are not the subject of [their] application" for a stay (Br. 7 n.2), and those cases should proceed notwithstanding any discussion herein about this case or the '7752 matter.

[3] Plaintiffs acknowledge this is necessary to appeal an interlocutory order—like the Order at issue here— "adjudicating only a portion of the matters pending" (Br. 1-2), but inexplicably appealed the Order *without* the required Rule 54(b) certification.  *See* DE 555.  Unless the appeal is promptly withdrawn, Defendants will be forced to waste more resources seeking dismissal.

none) to ask the Court to exercise its discretion not only to alter the normal litigation timeline to permit appeal of the Court's interlocutory ruling, but to do so on an Opinion the Court might yet decide to amend based on a pending motion for clarification, and *before* the Court has even had an opportunity to consider that motion. While Plaintiffs acknowledge (in a footnote on page 17 of their Brief) that Defendants' motion for limited clarification has been filed, they offer no basis for proceeding with certifying the Court's Opinion and related Order for appeal before that motion is briefed and resolved "in due course" (Br. 17 n.5)—and, indeed, on a motion schedule *identical to Plaintiffs' present Motion to certify*. Defendants' motion for limited clarification (like Plaintiffs' Motion to certify) was noticed for the Court's March 2, 2020 motion day, and Defendants expect briefing to be completed by the end of this month (with any opposition from Plaintiffs due today (February 18)). Despite having the motion and these facts in hand, Plaintiffs offer no basis for rushing their request for discretionary certification so that it occurs *before* resolution of Defendants' motion and the Court's determination of whether there are any revisions it wishes to make to the very Opinion Plaintiffs seek to appeal.

While Plaintiffs offer no justification for this literal "rush to judgment," their Motion papers reveal Plaintiffs' clear motivation for seeking an appeal before the Court can consider Defendants' motion: Plaintiffs intend to use purported ambiguities in the Court's Opinion to argue on appeal that the Court approached the question of inventorship in ways it clearly did *not*. *See* Br. 17 n.5 (arguing "this Court's findings – *as written* – do not support the ultimate conclusion") (emphasis added); *id*. at 10 ("Plaintiffs… do not seek reconsideration"). As set forth in Defendants' papers, Defendants' motion seeks only "limited clarification of the Court's January 16, 2020 Opinion (DE 545 []) pursuant to the Court's inherent authority and consistent with L. Civ. R. 7.1(i), to conform the Opinion to the record and further confirm certain aspects of the Court's

4

underlying analysis." *See*, *e.g.*, DE 549-1 at 1-2.  Contrary to Plaintiffs' unsupported complaints

(Br. 17 n.5), such requests to clarify are entirely proper, and may be considered under the rubric

provided by L.Civ.R. 7.1(i).  *See, e.g.*, DE 549-1 at 1-2 & n.2 (citing *Lynch v. Tropicana Prods.*,

No. 2:11-cv-07382, 2013 U.S. Dist. LEXIS 128410 (D.N.J. Sept. 9, 2013)); *id.* at *3-5.  Defend-

ants' proposed clarifications include, *inter alia*, findings that are "at minimum implicit in the

Court's determination that Gary Ragner should be named as an inventor on each of the asserted

Berardi patents." *See*, *e.g.*, *id*. at 5.  But Plaintiffs' Motion (filed one day later) suggests the

Court has no power to make *any* changes to its January 16 Opinion (Br. 17 n.5), while simultane-

ously claiming purported ambiguities in that Opinion indicate the Court did not actually draw the

conclusions it clearly did and should be reversed for this reason.  Plaintiffs suggest, *e.g.*, that the

Court reached its conclusions "by only analyzing Mr. Berardi's XHose product in general, and

Mr. Berardi's inventive process" rather than "the Berardi Patents" or their claims, when in fact

the Court did no such thing.  *Contrast, e.g.*, Br. 11, 17 n.5, *with, e.g.,* Opinion at 2, 4, 5 & n.3.

Plaintiffs' attempts to play "gotcha" by denying the Court an opportunity to clarify any purported

ambiguities in the Opinion, while simultaneously asserting Plaintiffs should be permitted to ex-

ploit them on appeal, are indefensible, and (even in Plaintiffs' wished-for world) simply waste-

ful: they would set up, at most, a situation in which the Court could be asked to clarify *the same*

*points* on any remand.  *See* Br. 17 n.5.  Defendants respectfully submit the Court should not cer-

tify its Opinion for appeal until it has had an opportunity to consider on the merits Defendants'

pending motion for limited clarification of that Opinion.  Indeed, this is the only sensible result

in light of the "judicial administrative interests as well as the equities involved" here.  *See, e.g.,*

Br. 2 (Plaintiffs quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980));

*Curtiss-Wright*, 446 U.S. at 8.

## B. Defendants' Motion to Renew Their Earlier Motion to Disqualify Tele-brands' Counsel Should Be Resolved Before Any Certification

On February 7, Defendants moved to renew their prior request to disqualify Telebrands'

counsel Jeffrey L. Snow and Pryor Cashman LLP (DE 552 *et seq.*).  That earlier motion (DE 329

*et seq.*) was based on Mr. Snow's and Pryor Cashman's switching sides in this litigation to be-

come adverse to (and to actively sue) their former client, Walmart, and two former co-defend-

ants, Walmart and Tristar, to whom they owe confidentiality obligations.  The motion was previ-

ously denied as *moot* because (rather than contest the motion on the merits) Mr. Snow and Pryor

Cashman formally withdrew the day their brief in opposition was due.  DE 339.  But, as detailed

in Defendants' papers, that motion is *no longer moot*.  Mr. Snow and Pryor Cashman have re-

fused to give clear confirmation they will not be involved in Plaintiffs' threatened appeal from

the Court's decision on inventorship.  *See, e.g.*, DE 552-3 & -4; DE 553.  Mr. Snow, a Pryor

Cashman partner, has further demonstrated their intent to *continue* their improper work against

Walmart and Tristar in this dispute (despite their formal withdrawal) by



*See, e.g.*, DE 553-1; DE 552-3 & -4; DE 553.  In a February 4 email

*See* DE 553-1 at 5 (emphasis added).  When Tristar's

6

counsel objected, Telebrands' substituted counsel in this matter at Stone & Magnanini, LLP—far
from denying Mr. Snow's or Pryor Cashman's ongoing participation and activity in connection
with this matter (despite their formal withdrawal)—merely asserted his firm was *in charge* and
had, *inter alia*, ██████████████████████████  *See* DE 553-2.  As Defendants make
clear in their motion, Mr. Snow and Pryor Cashman continue to violate their obligations to
Walmart and Tristar; they cannot, consistent with those obligations, be behind-the-scenes attor-
neys working with substitute counsel, or spokesmen for matters that include this litigation.  De-
fendants' motion to disqualify should be renewed and decided on the merits, and Mr. Snow and
Pryor Cashman should be formally disqualified and ordered to cease their improper activity.

Defendants respectfully submit that the Court's inventorship determination should not be
certified for appeal until Defendants' motion to renew their prior motion to disqualify and the
original, underlying question of disqualification are resolved, so it is confirmed Mr. Snow and
Pryor Cashman will not, *inter alia*, be involved in any way in such an appeal.  This is certainly a
"just reason to delay" certification in light of the judicial interests and "equities" here, including
the professional obligations owed by Telebrands' counsel.  *See* Fed.R.Civ.P. 54(b); Br. 2;
*Curtiss-Wright*, 446 U.S. at 7-8 ("It is left to the sound judicial discretion of the district court to
determine the 'appropriate time' when each final decision in a multiple claims action is ready for
appeal"); DE 553.  Like Plaintiffs' Motion, Defendants' motion to renew was noticed for the
Court's March 2 motion day, and Defendants have thus expected it to be briefed by the end of
February, with Plaintiffs' opposition (if any) due today (February 18).[4]

### C.     The Parties Mediation Efforts Should Be Completed Before Certification

---

[4]  Mr. Snow and Pryor Cashman filed an informal letter seeking an extension on February 14, but
no extension request has been filed by Telebrands' counsel of record or discussed with Plaintiffs.

Plaintiffs acknowledge the parties have agreed to mediation (here and elsewhere), and that Judge Salas (like this Court) has entered related orders.[5]  *See* Br. 7; DE 542; DE 547; DE 551; *Telebrands Corp. v. Ragner Tech. Corp.*, No. 2:15-cv-03163-ES-MAH, DE 162 (D.N.J. July 18, 2019) (Judge Salas).  Indeed, Plaintiffs argue this mediation is "an additional reason for granting the[ir] requested stay (other than to pursue an appeal on the issue of correction of inventorship)."  Br. 7.  But there is no reason (and Plaintiffs offer none) for Plaintiffs' requested Rule 54(b) certification and appeal to proceed despite mediation, while all other activity is stayed.  Rather, making completion of mediation a precursor to certification enables the Court and parties to ensure further costs and activity associated with any appeal can be postponed until the parties determine whether, as a result of mediation, they might be avoided altogether.  While Plaintiffs apparently prefer to mediate with the threat of an appeal in hand, that threat has already been made.  And if Plaintiffs simply wish to leverage ongoing activity in an appeal as part of their mediation strategy, this is no different from other activity that could be pursued *against* Plaintiffs during mediation, but that Plaintiffs wish to stay.  Plaintiffs' appeal—rather than being accelerated while all other litigation is halted—should wait, like that other activity, until the agreed mediation is completed.  Holding any certification until the completion of mediation is the simplest way to effect this result (without, *e.g.*, unnecessary Federal Circuit stay motions), and is certainly within the "sound judicial discretion of this court" given the interests and equities here.  *See Curtiss-Wright*, 446 U.S. at 8; Br. 2.

## II.    Final Judgment on the Entire Case Cannot Be Entered Because Defendants Have Pending Counterclaims that Have Not Yet Been Adjudicated

---

[5] While Mr. Snow recently asked Judge Salas to suspend mediation in light of Defendants' disqualification motion, Defendants oppose that request.

Case 21-2346    Document 17    Page 276    Filed 12/14/2021

Although Plaintiffs suggest *no* claims remain in light of the Court's inventorship determination (*e.g.*, Br. 8 ("the only claims remaining are those of Plaintiffs"), 1 n.1 ("the Court.. dispatched… remainder of the present case")), this is not true.  While Plaintiffs' affirmative claims have all been disposed of and made untenable, final judgment on the entire case cannot yet be entered because Defendants have remaining unadjudicated counterclaims.  *See, e.g.*, DE 352 at 81-120; DE 353 at 83-124.  While a Federal Circuit affirmance of the Court's inventorship ruling will mean Defendants have no need to pursue most of these counterclaims, at present Plaintiffs' efforts to reverse the Court's decision mean those counterclaims remain pertinent now.  Further, Defendants—who maintain this case is exceptional—expect to seek an award of appropriate relief from Plaintiffs (including their costs, attorney fees, and expenses) under 35 U.S.C. § 285.  *Plaintiffs* certainly do not have the power to surrender Defendants' claims in their efforts to gin up an imagined "final judgment" on the entire case, *see, e.g.*, *Nystrom v. Trex Co.*, 339 F.3d 1347 (Fed. Cir. 2003) (dismissing appeal for lack of jurisdiction in light of unresolved counterclaims for declarations of invalidity and unenforceability), and no such judgment can properly be entered now.  *Cf.* Br. 1 n.1 (incorrectly claiming Court may "simply recast[]" Order "as a final judgment").

### III.    No Stay Should Be Entered Until These Same Motions Have Been Addressed and the Agreed Mediation Is Completed

While Defendants would not oppose an eventual stay subject to a Rule 54(b) certification and a proper appeal, no such stay should be entered until the three key events identified above have occurred and certification has taken place.  Defendants agree that, at that point, a stay of other proceedings here and in the '7752 matter would be appropriate pending such an appeal.

For clarity of the record, however, Defendants do *not* agree with the various unsupported

and erroneous assertions Plaintiffs make concerning the Court's Opinion and Order, the rights
and interests of Defendants, or the other circumstances of this case.  By way of example only,
and without limitation:

- Defendants do not undertake to correct Plaintiffs' rehashed (and rejected) arguments,
  such as a supposed need for claim construction when Plaintiffs identified no dispute re-
  quiring resolution for inventorship, or the imagined requirement that a co-inventor must
  invent the entirety of a claim.  *See, e.g.*, Br. 8-17, 21; *cf., e.g.*, Opinion at 22, 32 n.5, 30-
  35;

- Defendants do not acquiesce in Plaintiffs' assertions regarding Plaintiffs' financial viabil-
  ity or public interest arguments.  *See* Br. 8-9; *compare* Br. 8, *with, e.g.*, *Avenue Innova-
  tions Inc. v. Telebrands Corp.*, No. 5:15-cv-00174-RWS (E.D. Tex. Oct. 29, 2015), DE 1
  (Complaint) at 5 (¶20) ("[O]n information and belief, …Telebrands has declared bank-
  ruptcy to escape its debts… including… for patent infringement")[6]); and

- Defendants do not undertake to correct, here, Plaintiffs' warping of the Court's analysis,
  including about aspects of the Opinion that are the subject of Defendants' pending mo-
  tion for limited clarification (DE 549 *et seq.*).

Finally, Defendants note there is no reason for delay in the Newark cases pending before
Judge Salas, which should proceed notwithstanding any discussion herein about a stay of this
case or the '7752 matter.  *See also* Br. 7 n.2 (Plaintiffs not seeking stay of Newark cases).

## IV.    CONCLUSION

---

[6] Telebrands apparently recently resolved another patent suit through payment of a significant
financial settlement.  *See* Ruth Simon, *Four-Year Water Balloon Fight Ends With $31 Million
Truce*,  Wall Street Journal, May 20, 2019 (*available at* https://www.wsj.com/articles/four-year-water-
balloon-fight-ends-with-31-million-truce-11558388873 (last accessed February 17, 2020)).

Defendants respectfully submit Plaintiffs' Motion should be denied and they should be granted no relief, except Defendants would not oppose Rule 54(b) certification for purposes of appeal of the Court's interlocutory Opinion and Order concerning inventorship *after* (1) Defendants' motion for limited clarification of the Opinion concerning inventorship has been resolved on the merits, (2) Defendants' motion to renew their earlier motion to disqualify Telebrands' counsel has been resolved, together with the underlying motion, and (3) the parties' current efforts to mediate are completed.  Once these three events occur, and if the Court certifies the Opinion and Order under Rule 54(b) for purposes of appeal, then Defendants would not oppose a stay of further proceedings in this litigation and in the '7752 matter pending such appeal.

Dated: February 18, 2020                        Respectfully submitted,

                                                */s/ Edward P. Bakos*
                                                Edward P. Bakos (ebakos@bakoskritzer.com)
                                                Noam J. Kritzer (nkritzer@bakoskritzer.com)
                                                **Bakos & Kritzer**
                                                147 Columbia Turnpike, Suite 102
                                                Florham Park, New Jersey 07932
                                                Tel: 908-273-0770
                                                Fax: 973-520-8260
                                                Counsel for Defendants:
                                                *Tristar Products, Inc. and Walmart Inc.*
                                                J. Steven Baughman (sbaughman@paulweiss.com)
                                                (*pro hac vice*)
                                                **Paul, Weiss, Rifkind, Wharton & Garrison, LLP**
                                                2001 K Street, NW
                                                Washington, DC 20006-1047
                                                Tel: 202-223-7300
                                                Fax: 202-223-7420
                                                Counsel for Defendant *Tristar Products, Inc.*

# EXHIBIT K

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

BLUE GENTIAN, et al.,                    1:13-cv-1758

               Plaintiffs,          **OPINION**

     v.

   TRISTAR PRODUCTS, INC., et
al.,
               Defendants.

_____

<u>**APPEARANCES**</u>:

DAVID S. STONE
BRADFORD W. MULLER
STONE & MAGNANINI LLP
100 CONNELL DRIVE, SUITE 2200
BERKELEY HEIGHTS, NJ 07922
    *Attorneys for Plaintiff Telebrands Corp.*

GEORGE C. JONES
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 MOUNT KEMBLE AVENUE
PO BOX 2075
MORRISTOWN, NJ 07962-2075

and

EDWARD F. MCHALE
KENNETH W. COHEN
ANDREW D. LOCKTON
MCHALE & SLAVIN, P.A.
2855 PGA BOULEVARD
PALM BEACH GARDENS, FL 33410
    *Attorneys for Blue Gentian, LLC and National Express, Inc.*

EDWARD PAUL BAKOS
NOAM JOSEPH KRITZER
BAKOS & KRITZER
147 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932

> *Attorneys for Defendant Tristar Products, Inc., Wal-Mart*
> *Stores, Inc. d/b/a/ Sam's Club, and Sam's Wholesale Club.*

J. STEVEN BRAUGHMAN
MEGAN RAYMOND
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
2001 K STREET, NW
WASHINGTON, DC 20006-1047
> *Attorneys for Defendant Tristar Products, Inc.*

**HILLMAN**, District Judge,

This matter comes before the Court upon motion for clarification by Defendants and Plaintiffs' motion to certify judgment under Rule 54(b) and motion to stay an order and judgment and certain proceedings pending appeal. After considering the submissions of the parties,[1] and based upon the following, this Court will grant Defendants' motion for clarification pursuant to L.Civ.R. 7.1(i) and will deny Plaintiffs' motion to certify judgment and motion to stay pending appeal without prejudice. Finally, the Court will issue a temporary stay for ninety days to allow the parties additional time to complete mediation efforts.

---

[1] On February 24, 2020, Defendants filed a motion for leave to file a reply to their motion for clarification. On March 23, 2020, Plaintiffs objected to this motion for leave based on Local Civil Rule 7.1(d)(3), which prohibits a party from filing reply papers in support of a motion for reconsideration under Rule 7.1(i) without first obtaining leave of the court. See ECF No. 564 (citing Treusch v. Center Square Supermarket, LLC, No. 11-4874, 2013 U.S. Dist. LEXIS 49349, at *4 n.1 (D.N.J. Apr. 5, 2014)). The Court has considered all submissions and will grant Defendants' motion for leave.

## BACKGROUND

This case has a lengthy and complicated factual and procedural history.  In lieu of recounting all the details of this matter, this Court will focus on only the details relevant to the consideration of the matters disposed of in this Opinion.

The issue currently before the Court stems from a larger dispute between the Plaintiffs, Blue Gentian, National Express, and Telebrands Corp., and the Defendants, Tristar Products, and Wal-Mart Stores.[2]  Plaintiffs market, promote, distribute, and sell a garden hose known as the "XHose."  Blue Gentian owns several patents related to the XHose.  Defendants also produce and promote a garden hose known as the "Flex~Able Hose."  In a matter not currently before the Court, Plaintiffs allege that Defendants have infringed on Plaintiffs' patents for the XHose.

In July 2017, Defendants moved under Federal Rule of Civil Procedure 42(b) for a hearing on correction of inventorship for the Berardi patents-in-suit pursuant to 25 U.S.C. 256.  On January 21, 2020, this Court issued an opinion granting Defendants' motion for correction of inventorship.  In

---

[2] As of May 13, 2020, Walmart Inc. has been dismissed as a party to this case.  See ECF No. 565.

accordance with this Opinion, the Court ordered that Gary Ragner be added to six patents-in-suit as a co-inventor.[3]

On January 30, 2020, Defendants filed a motion for clarification.  On January 31, 2020, Plaintiffs filed a motion requesting a certification of judgment under Rule 54(b) and a motion for stay of order, judgment, and certain proceedings pending appeal. These matters have been fully briefed and are ripe for adjudication.

**DISCUSSION**

**A. Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a). ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection copyrights and trademarks.").

**B. Standard of Review for a Motion for Clarification**

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend."  Resolution Trust Corp. v. KPMG Peat Marwick, No. 92-1373, 1993 U.S. Dist. LEXIS 16546, at *5 (D.N.J. June 8, 1998). In contrast, the purpose of a motion for reconsideration is to

---

[3] Four of these patents are utility patents: U.S. Patent No. 8,291,941, U.S. Patent No. 8,291,942, U.S. Patent No. 8,479,776, and U.S. Patent No. 8,757,213.  Two of these patents are design patents: U.S. Patent No. D722,681, and U.S. Patent No. D724,186.

"correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171, (1986) (citation omitted). In this district, motions for clarification are "often evaluated under the standard for a motion for reconsideration." Asirifi v. Omni Asset Management, LLC, No. 11-4039, 2013 U.S. Dist. LEXIS 129584, at * 4 (D.N.J. Sept. 11, 2013) (citing Fastware, LLC v. Gold Type Bus. Machines, Inc., No. 09-1530, 2009 U.S. Dist. LEXIS 59866 (D.N.J. July 14, 2009) and Nye v. Ingersoll Rand Co., No. 08-3481, 2011 U.S. Dist. LEXIS 7383 (D.N.J. Jan. 25, 2011)).

Under Local Rule 7.1(i), the moving party must demonstrate either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Andreyko v. Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (alteration in original)(citations omitted); see also Spyer v. Navient Solutions, Inc., No. 15-3814, 2016 U.S. Dist. LEXIS 137329, at *1 (D.N.J. Oct. 4, 2016) ("A judgment may be altered or amended only if the party seeking reconsideration shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear

error of law or fact or to prevent manifest injustice.") (citing
Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d
669, 677 (3d Cir. 1999)).

### C. Defendants' Motion for Clarification

Defendants made a motion for limited clarification on
January 30, 2020.[4]  In its motion, Defendants ask the Court to
make a "limited clarification" of the Court's January 2020
Opinion, ECF No. 545.  Defendants allege that this limited
clarification will "conform the Opinion to the record and
further confirm certain aspects of the Court's underlying
analysis."  ECF No. 549-1 at 1.

Defendants request that several sections of the Court's
January 2020 Opinion be revised.  Defendants assert that the
sections they identified should be clarified to better reflect
the record, the patents in question, the technology used in the
various hoses and prototypes.[5]  See ECF No. 549-2 (showing

---

[4] Defendants note that they believe this motion is appropriately
styled as one for clarification but maintains that this motion
should be granted if considered a motion for reconsideration.
ECF No. 549-1, at 2 n.2.

[5] Defendants take issue with the following sections discussing
correction of inventorship:

- The Court's description of MicroHose prototype Ragner
  demonstrated and discussed with Berardi. (ECF No. 545, at
  7);

Defendants' proposed revisions to the Court's January Opinion).
Defendants also helpfully highlights several typographical
errors, and one instance in which the Opinion incorrectly
identifies Keith Mirchandani as the owner of Telebrands, rather
than Tristar.  See id.

Plaintiffs argue that this motion should be denied because
Defendants' motion attempts to "recast[] the Court's opinion to
go beyond the Court's original findings and in some cases
reverse them."  ECF No. 556 at 1 (emphasis in original).
Plaintiffs argue that this motion is procedurally improper as it
does not cite any overlooked legal matters or controlling
decisions and there has been no intervening change in the
controlling law and no introduction of new evidence.  Plaintiffs

---

- The Court's description of Ragner's testimony about his
  patent, U.S. Patent No. 6,948,527 ("Patent '527") (ECF No.
  545, at 33);
- The wording of the Court's finding that Ragner made a
  significant contribution to the invention of the XHose (ECF
  No. 545, at 33);
- The Court's phrasing in its comparison of Ragner's Patent
  '527 with Berardi's U.S Patent No. 8,291,941 ("Patent
  '941") (ECF No. 545, at 34);
- The Court's phrasing in its finding that Ragner contributed
  to the invention of the XHose by sharing information with
  Berardi (ECF No. 545, at 35);
- The Court's description of Ragner's demonstrated prototype
  as circumstantial evidence to corroborate Ragner's
  testimony (ECF No. 545, at 38); and
- Part of the Court's conclusion that Gary Ragner contributed
  to the conception of the XHose and should be named as a co-
  inventor (ECF No. 545, at 47).

argue that whether this Court's findings of fact and its conclusions are sufficient is not a matter this Court should revisit, but rather an issue for the Federal Circuit to decide.

The Court will grant Defendants' motion for clarification in its entirety and adopt each of Defendants' proposed changes. The Court finds its appropriate to conform the Opinion to the record and clarify the meaning of the Court's original Opinion. The Court agrees with Defendants that each proposed change clarifies ambiguities in the Court's previous Opinion, does not constitute a reversal of the Court's previous Opinion, and makes clear the scope and limits of the Court's previous Opinion. Regarding the prior art issue, the Court highlights that the Court never made a finding regarding the scope of the prior art and the Defendants' proposed change clarifies this ambiguity in the previous Opinion. The Court finds the grant of Defendants' motion is consistent with the purpose of such motions, which is "to explain or clarify something ambiguous or vague, not to alter or amend." Resolution Trust Corp., 1993 U.S. Dist. LEXIS 16546, at *2. Accordingly, Defendants' motion for clarification will be granted.

### D. Standard for Certifying Judgment

Courts of Appeal have jurisdiction to review "final" decisions of District Courts. 28 U.S.C. § 1291. "Generally, an order which terminates fewer than all claims pending in an

action or claims against fewer than all the parties to an action does not constitute a 'final' order for purposes of 28 U.S.C. § 1291." Elliot v. Archdiocese of New York, 682 F.3d 213, 219 (3d Cir. 2012). However, under Rule 54(b), a District Court may convert an order adjudicating less than an entire action into a "final" decision over which a Court of Appeals may exercise jurisdiction under 28 U.S.C. § 1291. See id.

There is a strong federal policy against piecemeal litigation and appeals. Merrill Lynch Bus. Fin. Serv., Inc. v. Kupperman, No. 06-4802, 2007 U.S. Dist. LEXIS 57640, at *13 (D.N.J. Aug. 8, 2007) (describing this policy as "one of longstanding validity and continuing vitality") (citing Gerardi v. Pellulo, F.3d 1362, 1368 (3d Cir. 1994)); see also Elliott, 682 F.3d at 220 ("Certification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court"). Rule 54(b) offers a means of mitigating the potentially harsh effects that this federal policy can create in certain limited circumstances. Kupperman, 2007 U.S. Dist. LEXIS 57640, at *13; see also Seidman v. American Mobile Sys., 965 F. Supp. 612, 617-18 (E.D. Pa. 1997) ("Rule 54(b) . . . attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties") (internal quotations and citations omitted).

9

In order to certify a final decision under Rule 54(b), certain requirements must be met: (1) "there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief" and (2) there is "no just reason for delay." Berckeley Inv. Grp., Ltd. V. Colkitt, 455 F.3d 195, 202 (3d Cir. 2006) (quoting Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7-8 (1980)).

The Third Circuit[6] has held that a District Court should consider the following factors when determining if there is a just reason for delay:

---

[6] The parties cite both Third Circuit and Federal Circuit law in arguing the motion to certify judgment and stay proceedings. See ECF No. 550-1, at ii-iii; ECF No. 557, at ii; ECF No. 558, at ii, and ECF No. 562, at ii. In Snellman v. Ricoh, 836 F.2d 528, 533 (Fed. Cir. 1987), the Federal Circuit held that "[b]ecause construction of the Federal Rules of Civil Procedure is a matter not unique to patent law, we would normally apply the law of the regional circuit in which the district court sits." In this case, the regional circuit is the Third Circuit.

In W.L. Gore & Associates, Inc. v. Int'l Medical Prosthetics Research Associates, Inc., 975 F.2d 858, 861 (Fed. Cir. 1992), the Federal Circuit commented that it was "faced with the difficult question of which circuit's law governs when our jurisdiction turns on the construction of 'final.'" The Federal Circuit in Gore further noted that the "Supreme Court case law governs no matter which circuit's law we would otherwise apply." Next, the Federal Circuit held that it would look to Supreme Court precedent and Ninth Circuit and Federal Circuit case law first before looking "to the law of all circuits equally for persuasive reasoning." This Court will adopt the same methodology, looking to Supreme Court precedent, Federal Circuit and Third Circuit case law before examining the law of all circuits for persuasive reasoning.

    (1)   the presence or absence of a claim or
          counterclaim which could result in a set-off
          against the judgment sought to be made final

    (2)   the relationship between the adjudicated and non-
          adjudicated claims;

    (3)   the possibility that the need for review might or
          might not be mooted by future developments in the
          district court;

    (4)   the possibility that the reviewing court might be
          obliged to consider the same issue a second time;

    (5)   miscellaneous factors such as delay, economic and
          solvency considerations, shortening the time of
          trial, frivolity of competing claims, expense,
          and the like . . . .

Waldorf v. Shuta, 142 F.3d 601, 609 (3d Cir. 1998) (citing

Allis-Chalmers Corp. v. Phila. Electric Co., 521 F.2d 360,

364 (3d Cir. 1975)).  The burden to demonstrate that the

present case should be certified as final is on the party

seeking certification to convince the Court that its case

is the "infrequent, harsh case meriting favorable exercise

of discretion" to certify judgment as final under Rule

54(b).  See Anthuis v. Cold Indus. Operating Corp., 971

F.2d 999, 1003-04 (3d Cir. 1992) (discussing the standard

set in Allis-Chalmers Corp., 521 F.2d at 364-65).

**E. Standard for a Motion to Stay Pending Appeal**

     Faced with a decision to stay a civil order pending appeal,

the Court considers: (1) whether the applicant has made a strong

showing that he or she is likely to succeed on the merits; (2)

whether the applicant will be irreparably injured absent a stay;
(3) whether issuance of a stay will substantially injure other
parties interested in the proceeding; and (4) where the public
interest lies.  See Hilton v. Braunskill, 481 U.S. 770, 776
(1987); see also Standard Haven Products, Inc. v. Gencor Indus.,
Inc., 897 F.2d 511, 512 (Fed Cir. 1990).  These four factors can
effectively merge into a single consideration: assessing whether
the movant's chances for success on appeal and weighing the
equities as they effect the parties and the public.  See E.I.
DuPont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277,
278 (Fed. Cir. 1987); see also In re Revel AC, Inc., 802 F.3d
558, 569-70 (3d Cir. 2015) (discussing the "sliding scale"
approach to assessing a motion to stay).

The Third Circuit has recognized that "[t]he 'formulations
used to describe the degree of likelihood of success that must
be shown' vary widely."  E.I. DuPont de Nemours & Co., 802 F.3d
at 568 (quoting Mohammed v. Reno, 309 F.3d 95, 100 (2d Cir.
2002)) (emphasis in original).  In other courts, these
formulations range from "more likely to succeed than fail,"
Abdul Wali v. Coughlin, 754 F.2d 1015, 1026 (2d Cir. 1985), to
"a substantial possibility, although less than a likelihood of
success."  Dubose v. Pierce, 761 F.2d 913, 920 (2d Cir. 1985).
The Third Circuit has held that "a sufficient degree of success
for a strong showing exists if there is 'a reasonable chance, or

probability, of winning.'" In re Revel AC, Inc., 802 F.3d at
569 (quoting Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d
223, 229 (3d Cir. 2011) (en banc)).  The Third Circuit has
further clarified that under this standard it "is not enough
that the chance of success be better than negligible," but the
likelihood of winning does not need to be "more likely than
not."  Id. (internal quotations and citations omitted).

For the second factor, the party applying for the stay must
"demonstrate that irreparable injury is likely [not merely
possible] in the absence of [a] [stay]." Winter v. Natural Res.
Def. Council, Inc.,, 555 U.S. 7, 22 (2008) (emphasis in
original); see also In re Revel AC, Inc., 802 F.3d at 571 ("To
establish irreparable harm, a stay movant 'must demonstrate an
injury that is neither remote nor speculative, but actual and
imminent.'") (quoting Tucker Anthony Realty Corp. v.
Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).  In this
context, the Third Circuit has held that it "understand[s] the
Supreme Court's use of the 'likely' to mean more apt to occur
than not." In re Revel AC, Inc., 802 F.3d at 569 (citing
Michigan v. U.S. Army Corps of Engineers, 667 F.3d 765, 788 (7th
Cir. 2011)).

If an applicant satisfies the first two factors, the court
will "weigh the likely harm to the movant (absent a stay)
(factor two) against the likely irreparable harm to the stay

13

opponent(s) if the stay is granted (factor three)." Id.  This
is knowns as balancing of harms or balancing equities.  The
Court will also take into account where the public interest
lies, "in effect, how a stay decision has 'consequences beyond
the immediate parties.'"  Id. (quoting Roland Mach. Co. v.
Dresser Indus., 749 F.2d 380, 388 (7th Cir. 1984)).

**F. Plaintiffs' Motion to Certify Judgment and Stay Proceedings**

Plaintiffs request that the Court certify the January 2020
Opinion under Rule 54(b) or enter final judgment.  Assuming that
the Court grants Plaintiffs' motion, Plaintiffs ask that the
Court to grant a stay pending appeal.  Specifically, Plaintiffs
request that the stay's scope include a stay of all proceedings
in this case, a stay in the antitrust dispute currently before
this Court, and a stay of the Court's order directing that Gary
Ragner be added as an inventor to the patents.

Defendants state that they would not oppose a Plaintiffs'
motion to certify judgment and stay proceedings so long as
several matters are addressed first.  Specifically, Defendants
argue that Plaintiffs' motion is premature until (1) Defendants'
motion for clarification is resolved; (2) Defendants' motion to
disqualify counsel is resolved; and (3) the parties complete
mediation.

The Court will first address certification of judgment.

**1. Certification of Judgment**

14

a. Ultimate Disposition of a Cognizable Claim

Plaintiffs allege that in similar disputes, a decision on inventorship has been considered final under Rule 54(b). ECF No. 550-1, at 2-3 (citing cases). Plaintiffs also maintain that the decision to certify a judgment "hinges, in large part, on the individual case's facts and procedural posture rather than on a bright line rule." Id. at 3. Plaintiffs point to language from Defendants' briefs in which Defendants assert that the correction of inventorship issue is dispositive. Plaintiffs allege that Plaintiffs' remaining claims "rise or fall based on whether Mr. Ragner is a co-inventor of the Berardi patents" and cannot move forward if Ragner is a co-inventor. Id. at 4. As will be discussed below, Defendants contest whether the decision on inventorship resolves all claims in this case.

The Court finds that the January 2020 decision on the motion for correction of inventorship is the ultimate disposition of a cognizable claim. Plaintiffs' Fifth Amended Complaint alleges twenty-four counts of patent infringement on the patents in suit. ECF No. 166. The parties do not dispute that inventorship is a dispositive issue in these twenty-four counts. See ECF No. 301, at § II (discussing "The Case-Dispositive Issue of Inventorship").

The Court finds that Plaintiffs have satisfied this prong in seeking certification of final judgment.

15

### b. Just Reason for Delay

Plaintiffs assert that there does not appear to be a just reason for further delay. Plaintiffs argue that there are no pending counterclaims that should delay certification of final judgment because this Court would have the discretion to delay entry of final judgment to resolve a pending claim of attorneys' fees.

In contrast, Defendants assert that there is a just reason for delay in this case for several reasons. First, Defendants have pending counterclaims that have not yet been adjudicated. Defendants acknowledge that the Court's ruling on inventorship will mean that Defendants need not pursue a number of their counterclaims but maintain that because this is an exceptional case, they will seek relief from Plaintiffs. The Court finds that though Defendants may have an outstanding claim for relief in the form of attorneys' fees and costs, this does not prevent certification of final judgment. See Ray Haluch Gravel Co. v. Central Pension Fund, 571 U.S. 177, 177 (2014) (upholding the First Circuit's determination that an unresolved attorneys' fees issue generally does not prevent judgment on the merits from being final).

Second, Defendants argue their Motion for Limited Clarification of the Opinion Plaintiffs wish to appeal should be resolved before any certification. Plaintiffs agree that the

Court can and should decide Defendants' Motion for Clarification
before the Court certified the matter for appeal.  As detailed
above, the Court granted Defendants' Motion for Clarification
and therefore the pending motion does not prevent the
certification of final judgment.  Third, Defendants argue their
Motion to Renew their earlier motion to disqualify Telebrands'
Counsel should be resolved before any certification.  In
response, Plaintiffs highlight that Magistrate Judge Donio
dismissed the Defendants' renewed motion and "Plaintiffs have
agreed not to involve Mr. Snow or Pryor Cashman in the appeal,
and if for any reason that were to change, Plaintiffs' counsel
agreed to alert the Court and opposing counsel to any plans to
seek Mr. Snow's or Pryor Cashman's assistance on the appeal."
See 562 at 1-2 n.1.  In light of Judge Donio's denial of
Defendants' renewed motion and Plaintiffs' agreement to not
involve Mr. Snow or Pryor Cashan in the appeal, the Court agrees
this additional argument does not prevent the certification of
final judgment.  ECF No. 560.

Finally, Defendants argue the parties' mediation efforts
should be completed before certification.  Defendants focus on
the fact Plaintiffs even acknowledge the parties have agreed to
mediation and that Judge Salas and this Court have entered
related orders and argue mediation is actually "an additional
reason for granting the[ir] requested stay (other than to pursue

17

an appeal on the issue of correction of investorship." ECF No. 557 at 8; ECF No. 542, 547, 551; <u>Telebrands Corp. v. Ragner Tech. Corp.</u>, No. 2:15--03163, DE 162 (D.N.J. July 18, 2019). Defendants argue "making completion of mediation a precursor to certification enables the Court and parties to ensure further costs and activity associated with any appeal can be postponed until the parties determine whether, as a result of mediation, they might be avoided altogether." ECF No. 557 at 8.

Defendants further argue "any certification until the completion of mediation is the simplest way to effect this result (without, e.g., unnecessary Federal Circuit stay motions), and is certainly within the 'sound judicial discretion of this court' given the interests and equities here." ECF No. 557 at 8 (quoting <u>Curtiss-Wright Corp. v. Gen. Elec. Comp.</u>, 446 U.S. 1, 8 (1980)). In response, Plaintiffs argue the Court should not wait to enter the certification and stay pending mediation because "no further delay is necessary." ECF No. 562 at 3. The Court agrees with Defendants that the pending mediation is a just reason for delay because this ensures that costs and activity associated with any appeal can be postponed until the parties determine whether the need for an appeal may be avoided all together as a result of mediation. In deciding whether there is any just reason for delay, "it is left to the sound discretion of the district court to determine . . . when

each final decision in a multiple claims action is ready for appeal." Curtiss-Wright, 446 U.S. at 8.  Requiring the parties to continue mediation efforts prior to the Court's certification of the Opinion for appeal conserves both judicial and the parties' resources and potentially resolves the matter altogether, which might moot the need for the Third Circuit to review the Court's previous Opinion.  Accordingly, this Court will deny Plaintiffs' motion to certify judgment under Rule 54(b) at this time.

**2. Motion to Stay Pending Appeal**

For the foregoing reasons, the Court is unable to grant Plaintiffs' Motion to Stay Pending Appeal.  However, in the event mediation efforts are unsuccessful within the next ninety days, the Court will still address the factors for a motion to stay pending appeal.

**a. Success on the Merits**

Plaintiffs allege that there are legitimate reasons to believe that the Federal Circuit would not uphold this Court's January 2020 decision on inventorship.  Firstly, Plaintiffs argue that there is a significant legal issue for appeal as to whether the Court erred in failing to construe the claims in the Berardi patents before deciding the correction of inventorship issue.  Secondly, Plaintiffs argue that there is a significant issue for appeal as to whether the Court properly applied the

19

law concerning collaboration, conception and contribution. Defendants do not weigh in on Plaintiffs' alleged success on the merits.

The Court finds that Plaintiffs have shown that they have a reasonable chance or probability of winning on appeal. Plaintiffs have highlighted two specific issues that they believe could lead the Federal Circuit to disagree with this Court's ruling. While Plaintiffs may not have shown that they are more likely than not to win on appeal, they have shown that their chances of success on the merits are better than negligible.

Plaintiffs have satisfied this prong.

### b. Balancing the Equities

Irreparable Harm to Plaintiffs

Plaintiffs argue that they will be irreparably harmed without a stay because their only remaining claims will be foreclosed by adding Ragner to the patents-in-suit. Plaintiffs further assert that they need clarity regarding the patents-in-suit in order to effectively participate in the marketplace. Plaintiffs highlight that Telebrands is in the process of securing contracts to distribute its "Pocket Hose" and that the lack of clarity has negatively impacted these negotiations. Defendants do not contest Plaintiffs' description of the likely harm in the absence of a stay.

Injury to Defendants

        Plaintiffs further allege that a stay will not burden the

Defendants because no monetary damages are sought by the

Defendants.  Defendants do not speak to possible injury if a

stay is granted.  Defendants do argue that requiring that the

parties complete mediation before granting a stay would enable

the Court and the parties to "ensure further costs and activity

associated with any appeal can be postponed until the parties

determine whether, as a result of mediation, they might be

avoided all together."  ECF No. 558 at 8.

Public Interest

        Plaintiffs claim that the public interest supports a stay

because allowing the Federal Circuit to address Plaintiffs'

appeal will create a clear path forward for the parties and

their customers.  Plaintiffs allege that they are financially

viable companies capable of paying any incremental damages that

would be caused by a stay.

        The Court finds that after weighing the likely harm to

Plaintiffs against the likely harm to Defendants and assessing

in the public interest, the factors would weigh in favor of

granting a stay pending an appeal.

        However, as explained above, a stay pending appeal at this

time would not be appropriate.  Nevertheless, a district court

enjoys "broad discretion to stay proceedings as an incident to

its power to control its own docket." <u>Clinton v. Jones</u>, 520 U.S. 681, 706 (1997).

"District courts possess inherent discretion to stay a proceeding whenever 'the interests of justice' mandate 'such action.'" <u>Akishev v. Kapustin</u>, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (quoting <u>U.S. v. Kordel</u>, 397 U.S. 1, 12 n.27 (1970). "To determine the appropriateness of a stay, courts consider 'whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the [] stay.'" <u>Owlpoint, LLC v. Spencer Thomas Grp.</u>, No. 20-4495, 2021 U.S. Dist. LEXIS 17988, *4 (D.N.J. Jan. 29, 2021) (quoting <u>Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC</u>, No. 11-0011, 2011 U.S. Dist. LEXIS 102743 (D.N.J. Sept. 12, 2011) (citation omitted)(alteration in original). Here, the Court exercises its inherent judicial discretion and will issue a temporary stay for ninety days to allow the parties additional time to complete mediation efforts.

The scope of the Court's stay shall include a stay of all proceedings in this case, a stay in the antitrust dispute currently before this Court, and a stay of the Court's order directing that Ragner be added as an inventor to the patents. As other district courts have already found, this Court finds "[a]llowing the [p]arties to mediate this dispute may conserve both judicial and the [p]arties' resources and potentially

resolve the matter altogether." World of Beer Franchising, Inc.
v. MWB Dev. I, LLC, No. 17-1171, 2017 U.S. Dist. LEXIS 200830,
*1-2 (M.D. Fla. June 21, 2017); see Advanced Bodycare Sols., LLC
v. Thione Int'l, Inc., 524 F.3d 1235, 1241 (11th Cir. 2008)
("[D]istrict courts have inherent, discretionary authority to
issue stays in many circumstances, and granting a stay to permit
mediation (or to require it) will often be appropriate.");
Lacroix v. Lejeune Auto Wholesale, Inc., No. 20-21469, No. 20-
21469, 2020 U.S. Dist. LEXIS 189772, at *5 (S.D. Fl. Oct. 14,
2020)(" One additional circumstance that has occasionally
satisfied the aforementioned factors is the possibility of
avoiding unnecessary expenses while the parties engage in
mediation or settlement discussions that might conserve the
parties' resources and promote judicial economy."); Pac. Rim
Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC, No. 19-16,
2020 U.S. Dist. LEXIS 74812, at *4-5 (D.N. Mar. Is., Apr. 23,
2020) ("[A] court may opt to stay the case to allow for
mediation."); ArrivalStar, S.A. v. Blue Sky Network, LLC, No.
11-4479, 2012 U.S. Dist. LEXIS 22316, at *4 (N.D. Cal. Feb. 22,
2012) ("The Court concludes that Blue Sky has shown good cause
to justify a stay of discovery pending mediation. The Court
finds that staying discovery pending mediation will conserve the
resources of the parties and will not impose an inequity on any
party."). If the mediation is unsuccessful within ninety days,

then the Court finds a longer stay for certification may be
appropriate.

**CONCLUSION**

For the reasons stated above, the Court will grant
Defendants' motion for clarification.  The Court will deny
without prejudice Plaintiffs' motion to certify judgment and
stay the proceedings pending appeal.  The Court will issue a
temporary stay for ninety days to allow the parties additional
time to complete mediation efforts.


Date: <u>August 12, 2021</u>   <u>  s/ Noel L. Hillman  </u>
At Camden, New Jersey   NOEL L. HILLMAN, U.S.D.J.

# EXHIBIT L

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BLUE GENTIAN, et al., | 1:13-cv-1758 |
| Plaintiffs, | **ORDER** |
| v. | |
| TRISTAR PRODUCTS, INC., et al., | |
| Defendants. | |

For the reasons expressed in the Court's Opinion filed today,

ITS IS on this 12th day of August, 2021,

ORDERED that Defendants' Motion for Limited Clarification [ECF No. 549] be, and the same hereby is, GRANTED, and the Court will enter an Amended Opinion regarding the Court's earlier Opinion [ECF No. 545] reflecting the changes outlined in its Opinion entered today; and it is further

ORDERED that Defendants' Motion for Leave to File a Reply [ECF No. 563] be, and the same hereby, is GRANTED; and it is further

ORDERED that Plaintiffs' Motion for Certification and Stay Pending Appeal [ECF No. 550] be, and the same hereby is, DENIED WITHOUT PREJUDICE; and it is further

ORDERED that this matter shall be stayed for ninety (90) days to allow the parties additional time to complete mediation

efforts.  The scope of the Court's stay shall include a stay of
all proceedings in this case, a stay in the antitrust dispute
currently before this Court, and a stay of the Court's order
directing that Gary Ragner be added as an inventor to the
patents.


                              ___s/ Noel L. Hillman_____
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

# EXHIBIT M

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

BLUE GENTIAN, et al.,

          Plaintiffs,      CIVIL NO. 13-1758 (NLH/AMD)

v.                      **AMENDED OPINION**

TRISTAR PRODUCTS, INC., et
al.,

          Defendants.

_____

**APPEARANCES**:

DAVID S. STONE
BRADFORD W. MULLER
STONE & MAGNANINI LLP
100 CONNELL DRIVE, SUITE 2200
BERKELEY HEIGHTS, NJ 07922

    *Attorneys for Plaintiff Telebrands Corp.*

GEORGE C. JONES
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 MOUNT KEMBLE AVENUE
PO BOX 2075
MORRISTOWN, NJ 07962-2075

and

EDWARD F. MCHALE
KENNETH W. COHEN
ANDREW D. LOCKTON
MCHALE & SLAVIN, P.A.
2855 PGA BOULEVARD
PALM BEACH GARDENS, FL 33410

    *Attorneys for Blue Gentian, LLC and National Express, Inc.*

EDWARD PAUL BAKOS
NOAM JOSEPH KRITZER
BAKOS & KRITZER
147 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932

*Attorneys for Defendant Tristar Products, Inc., Wal-Mart Stores, Inc. d/b/a Sam's Club, and Sam's Wholesale Club.*

J. STEVEN BRAUGHMAN
MEGAN RAYMOND
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
2001 K STREET, NW
WASHINGTON, DC 20006-1047

*Attorneys for Defendant Tristar Products, Inc.*

**HILLMAN**, **District Judge**

Presently before the Court is the issue of whether Gary Ragner, a non-party, should be deemed a co-inventor, pursuant to 35 U.S.C. § 256, of certain patents-in-suit held by Michael Berardi.  The Court held a multi-day hearing taking testimony and admitting certain documents and exhibits into evidence.  All parties have been well-represented and the Court has benefitted from both the oral advocacy and tutorials at the hearing and the thoughtful and extensive pre- and post-hearing submissions.  For the reasons stated below, this Court finds Gary Ragner is a co-inventor of the Michael Berardi patents-in-suit.

**BACKGROUND**

This case has a lengthy and complicated factual and procedural history.  At one time, three different judges presided over suits related to the contested patents and matters

are still pending before the undersigned and a district judge in the Newark vicinage.  In lieu of recounting those details, which have been penned by this Court and others numerous times over the years of this litigation, this Court will focus on only the details relevant to the consideration of the matter disposed of in this Opinion.

On July 28, 2017, Defendants moved under Federal Rule of Civil Procedure 42(b) for a hearing on correction of inventorship for the Berardi patents-in-suit pursuant to 35 U.S.C. § 256.  On January 30, 2018, this Court granted Defendants' request to hold a hearing to determine whether Gary Ragner should be added as a co-inventor on the Berardi patents-in-suit.  Discovery for the hearing ensued and all other pending matters have been staying pending resolution of Defendant's motion.[1]

---

[1] On July 19, 2019, the parties designated several matters, including this case, for mediation: Telebrands Products, Inc., et al. v. National Express, Inc., et al., 1:13-cv-7752; Telebrands Corp. v. Ragner Tech. Corp., et al., 1:15-cv-3163; Ragner Tech. Corp., et al., v. Telebrands Corp., 1:15-cv-8185; Telebrands Corp. v. Ragner Technology Corp. et al., 1:16-cv-3474; Telebrands Corp. v. Ragner Tech. Corp., et al., 1:16-cv-3594; Blue Gentian, LLC v. Tristar Prods., Inc., 1:13-1758; Blue Gentian, LCC, et al. v. Tristar Prods., Inc., 1:13-cv-7099; and Ragner Tech. Corp., et al. v. Berardi, et al., 1:15-cv-7752.  In light of the resolution of the pending motion, the parties will be directed to file on the docket a letter within 20 days confirming their intent to proceed to settlement discussions through private mediation.

On September 5-7, 2018, January 29 and 30, 2019, and April 30, 2019, this Court commenced a hearing on correction of inventorship (the "Inventorship Hearing"). At the Inventorship Hearing, the Court received the live testimony of Gary Ragner, Robert de Rochemont, Jr., Margaret Combs, Keith Mirchandani, Ajit Khubani, Bala Iyer, Manish Israni, Cheryl Berardi, and Michael Berardi.

On May 29, 2019, the parties submitted post-hearing briefs. On June 12, 2019, the parties submitted responsive post-hearing briefs. On June 26, 2019, the parties presented closing arguments to the Court. The issues have been fully briefed and are ripe for adjudication.[2]

As noted, the issue currently before the Court stems from a larger dispute between the Plaintiffs, Blue Gentian, National Express, and Telebrands Corp., and the Defendants, Tristar Products, and Wal-Mart Stores. Plaintiffs market, promote, distribute, and sell a garden hose known as the "XHose." Blue Gentian owns several patents related to the XHose. Defendants also produce and promote a garden hose known as the "Flex~Able Hose." In a matter not currently before the Court, Plaintiffs

---

[2] There are two motions pending before the Court: a motion to disregard Plaintiffs' unauthorized June 12, 2019 filing, and a motion for expedited consideration of motion to disregard Plaintiffs' unauthorized June 12, 2019 filing. Through this Opinion and accompanying Order, the Court will deny those motions.

allege that Defendants have infringed on Plaintiffs' patents for the XHose.

In this proceeding, Defendants allege that Gary Ragner, a non-party to this case, co-invented the XHose with Blue Gentian's principal, Michael Berardi. Defendants therefore argue that six of Blue Gentian's patents should be corrected to reflect Gary Ragner's inventorship.[3]

The bulk of the evidence relevant to determining inventorship comes from a single three to four-hour meeting held on August 23, 2011. The relevant facts before, after, and including this meeting are discussed below.

## A. The Expandable Garden Hoses in Question

### a. The XHose

The XHose is a lightweight, expandable garden hose. The length and width of the XHose changes depending on the amount of water running through it. The XHose features an elastic inner tube that acts as both a water conduit and a retracting force.

Blue Gentian owns all intellectual property rights in and related to the XHose, including U.S. Patent No. 8,291,941 and U.S. Patent No. 8,291,942. Michael Berardi is listed as the

---

[3] The six patents belonging to Michael Berardi and Blue Gentian are discussed in this opinion. Four of these patents are utility patents: U.S. Patent No. 8,291,941, U.S. Patent No. 8,291,942, U.S. Patent No. 8,479,776, and U.S. Patent No. 8,757,213. Two of these patents are design patents: U.S. Patent No. D722,681, and U.S. Patent No. D724,186.

inventor of the XHose on these patents.  Blue Gentian granted
National Express an exclusive license to use, sell, import,
market, promote and distribute the XHose.

### b. The Flex~Able Hose and Pocket Hose

Though not relevant to this opinion, the Court notes that
the Flex~Able Hose and Pocket Hose are also lightweight,
retractable hoses available for consumer distribution and use.

### c. The MicroHose

Gary Ragner and Robert de Rochemont created an expandable
hose called the "MicroHose."  When the Ragner Technologies team
and Michael Berardi met, Ragner and de Rochemont used a
prototype of the MicroHose to demonstrate their product.  Ragner
described this prototype is a "cutdown version" of the
MicroHose, featuring a small diameter, elastic vinyl hose, wire
coil for biasing, and a nylon or polyester valley cord[4] epoxied
to each end for reinforcement.  According to Ragner, the valley

---

[4] The MicroHose is similar to the flexible hose found on a common
household vacuum cleaner.  When collapsed, the circumference of
the hose appears uniform.  When expanded, the hose forms a
three-dimensional wave-like pattern of peaks and valleys.  The
valley cord winds around the hose through the "valleys,"
reinforcing the outer strength of the hose to prevent bursting,
something all developers known to the Court and many users have
experienced with the water pressure typically used with garden
hoses.  Importantly, Ragner testified that he told Berardi at
the August 23 meeting, testimony the Court credits as both
credible and consistent with other evidence in the case, that
the valley cord was only one way to prevent bursting.  Another
way was the use of a full outer cover made of fabric.

cord's purpose was both to double the amount of pressure the hose could handle and to help the hose hold its shape. Ragner testified that this demonstrated prototype did not have a separate surgical tube inside it that expanded radially like a balloon (rather, the demonstrated prototype had an elastic tube for water whose radial expansion was constrained by a valley cord), nor did the internal surgical tube in another MicroHose prototype that he discussed with Berardi serve as a conduit for water. To date, no version of the wire-based MicroHose has been sold commercially.

As will be elaborated below, Ragner testified that at the August 23 meeting the attendees discussed "prototype 2" of the MicroHose. The parties agree that this prototype was not physically present at this meeting. According to Ragner, prototype 2 is a vacuum hose with a surgical tube inside. As Ragner described, the internal surgical tube is epoxied to each end of the MicroHose prototype to act as a retracting force.

### B. Michael Berardi's Background and Knowledge Prior to the August 23 Meeting

Michael Berardi is an accomplished songwriter and video producer. During his time at CBS Records and Born Music, he copyrighted over 150 songs. Michael Berardi also has significant experience with the direct marketing industry and co-owns Berardi Productions with his wife, Cheryl. Together,

Cheryl and Michael Berardi have produced hundreds of television commercials.

Despite having no technical background, prior to patenting the XHose, Michael Berardi had applied for two patents and taught himself how to edit and produce commercials. Michael Berardi credits his creative thinking and experience working in his father's hardware store for his success inventing new products. During his eleven years as an employee and three years as a manager at his father's hardware store, Michael Berardi testified that he sold and repaired various products, including garden hoses.

In either late July or early August 2011, an acquaintance, Thomas Moran, told Michael Berardi about a potential investment opportunity in a product called the MicroHose. Based on this conversation, Michael Berardi testified that he searched the Internet to learn more about the MicroHose and Ragner Technologies. Through this search, Michael Berardi found a news article about Ragner Technologies that contained a video demonstration of a MicroHose prototype. Michael Berardi testified that after watching the video, he thought the MicroHose was "a very neat product" that "could be a fantastic Direct Response TV product." Michael Berardi watched the video three to four times, zooming in to see parts of the hose demonstration more closely.

Michael Berardi testified that right after watching the video demonstration of the MicroHose, he experienced a "eureka moment" in his community gym. After looking at certain gym equipment, Michael Berardi was struck by the idea of running water through a tube similar to the ones used in the resistance bands at the gym. Michael Berardi testified that "it kind of reminded me I guess maybe of the expanding hose that Ragner had invented" and that he wondered "what would happen if I put water through this?"

Michael Berardi told Cheryl Berardi about his idea for a new hose. Cheryl Berardi responded that they should "not put any energy there" because they already planned to meet with Ragner Technologies. Michael Berardi agreed with Cheryl Berardi's assessment that it would be easier to work with a completed product. Michael Berardi also stated that he was in the middle of pursuing two other large projects during this time period. Ultimately, Michael Berardi did not take any steps to create the hose he imagined following his eureka moment but retained a "nebulous concept" for his hose.

Soon after Berardi watched the online video demonstration of the MicroHose, an agent from Ragner Technologies, Margaret Combs, contacted him about setting up an investment meeting on August 23, 2011. On August 16, 2011, Ragner Technologies sent Michael Berardi and other meeting attendees a username and

password to access a website containing a business plan and
three-year cash flow analysis.


### C. Gary Ragner's Background and Knowledge Prior to the August 23 Meeting

Gary Ragner is an engineer and co-founder of Ragner
Technologies.  He holds a Bachelor of Science in physics and a
master's degree in mechanical and aerospace engineering.  Ragner
also completed coursework in fluid dynamics and has seventeen
years of experience designing hoses, for both vacuums and
outdoor use.  Ragner holds several dozen patents for various
inventions in the energy, aerospace, and electronic fields,
among others.

Since the mid-1990s, Ragner has co-invented with his
current business partner, Robert de Rochemont.  Together Ragner
and de Rochemont approached Combs, a retired business executive,
about taking on various administrative, advisory, and management
responsibilities within Ragner Technologies.  Eventually,
Margaret Combs became the CEO and a 10% equity partner in Ragner
Technologies.

Beginning in 2004, Ragner and de Rochemont began buying
supplies and experimenting with hose designs.  Since September
2005, Ragner and de Rochemont have held U.S. Patent No.
6,948,527 for a "pressure-actuated linearly retractable and

extendible hose." On January 30, 2006, Ragner and de Rochemont applied for U.S. Patent No. 8,776,836 for a "linearly retractable pressure hose structure." This patent was granted on July 15, 2014, after being published in 2013. After working on a similar design for a retractable vacuum hose, Ragner testified that he thought this design could apply to garden hoses as well. By August 2011, de Rochemont and Ragner had created between eighteen and twenty prototypes of the MicroHose.

### D. The August 23 Meeting

This meeting is particularly important to the determination of co-inventorship. This meeting was the sole interaction between Michael Berardi and Gary Ragner. The Court draws its facts regarding this meeting from the hearing record and documents before it. The parties contest certain details of this meeting. These disputed details will be acknowledged and discussed below.

Michael and Cheryl Berardi hosted this meeting at their home in Palm Beach Gardens, Florida starting around 10:00 AM on August 23, 2011. The attendees were:

(1) Michael Berardi, principal of Blue Gentian and co-owner of Berardi Productions;

(2) Cheryl Berardi, co-owner of Berardi Productions and wife of Michael Berardi;

(3) Ed Kelly, owner of National Express;

(4) Gary Ragner, CEO and founder of Ragner Technologies;

11

(5)   Robert de Rochemont, former Executive Vice President of Quality Assurance and current CEO of Ragner Technologies;

(6)   Margaret Combs, former CEO and current equity partner of Ragner Technologies;

(7)   Greg Jansen, a "money finder" for Ragner Technologies; and

(8)   Vince Simonelli, a "money finder" for Ragner Technologies.

The parties agree that the primary purpose of this three to four-hour meeting was to secure a $3 million investment for Ragner Technologies to build machines that could manufacture the MicroHose.  Earlier in the week, Combs, de Rochemont, and Ragner had concluded a similar meeting with a different investor in Boca Raton, Florida.  Combs testified that the Ragner Technologies team expected that Ed Kelly would be the primary investor.

However, as both parties testified, Kelly, who has since passed away, seemed more interested in pursuing a licensing agreement rather than an investment arrangement.  During this meeting, Kelly proposed manufacturing the MicroHose in Taiwan or China to reduce production costs.  Ragner opposed this idea and expressed concerns about protecting his intellectual property. After the discussion of licensing, both parties testified that Kelly seemed disinterested in the remainder of the meeting and stayed relatively silent.

The attendees next discussed Ragner Technologies' finances. As Combs presented and explained Ragner Technologies' business plan and cash flow, Michael Berardi testified that he realized the MicroHose would not make a successful direct response TV product ("DRTV product"). Because Ragner Technologies estimated that the cost of manufacturing a single MicroHose would be between ten and twenty dollars, the MicroHose would likely be priced at approximately eighty dollars. Ragner Technologies' manufacturing plan and cost structure made the MicroHouse unattractive in the DRTV market. According to Michael Berardi, a DRTV product would ideally be priced at around thirty dollars.

The attendees then had lunch and turned their discussion to the machinery involved in producing the MicroHose. The Ragner Technologies team used large posters with graphics and photos to illustrate the process for manufacturing the MicroHose, or "Process 17." According to the Ragner Technologies team, these visual aids were meant to explain both the manufacturing process and the internal structure of the MicroHose. Michael Berardi testified that during this portion of the meeting his "eyes started spinning" and Ragner lectured "like a professor" for a half-hour about the production process.

Here, the parties disagree on the other topics the attendees discussed. Ragner testified that he remembers one question being asked: "[Michael Berardi] asked whether we could

13

replace the spring with elastic." Ragner stated he remembers thinking "that was kind of astute of him to realize that you could replace the retracting means with something else." According to Ragner, he told Michael Berardi that it was possible to use elastic and that the first two prototypes of the MicroHose relied on internal elastic surgical tubes. Ragner also testified that he told Michael Berardi that Ragner Technologies had opted not to continue with this design for the MicroHose because it was not durable enough. Ragner further explained to Michael Berardi that the prototypes with elastic had burst during some of their demonstrations. As Ragner described, this conversation was brief, and Michael Berardi seemed satisfied with Ragner's answers.

Combs testified that she did not hear this conversation, as she was not close enough to Ragner and Michael Berardi. De Rochemont testified that he also did not hear any of this conversation between Ragner and Michael Berardi. De Rochemont has severe hearing loss and "miss[es] most of what people are talking about." Usually, de Rochemont relies on lip reading to understand conversations.

In contrast, Michael Berardi testified that he did not discuss elastic with Ragner, but that Ragner may have mentioned the term "elastomer" during his explanation of the manufacturing process. Michael Berardi testified that he "remember[s]

questions being asked but doesn't remember specific questions."
Cheryl Berardi similarly testified that Michael Berardi did not
ask about replacing the spring with elastic and that there was
no discussion of earlier prototypes of the MicroHose.  Cheryl
Berardi also said that she would sometimes leave the meeting to
get food or drinks.  According to Cheryl Berardi, she remained
able to hear the conversation thanks to her home's open concept
floor plan.

Near the end of the meeting, the attendees moved outdoors
for a live demonstration of the MicroHose prototype.  Ragner
described this prototype as "a cutdown version of the
MicroHose."  This version "only had a valley cord in the valley
of the hose for reinforcement, and essentially a small diameter
vacuum hose, stretch hose, with two ends on it that had fittings
for a garden hose."

Michael Berardi testified that he held the hose and used it
briefly.  Michael Berardi further testified that he asked to
keep the prototype.  Ragner declined to let Michael Berardi keep
the model, saying that it "wasn't really a working prototype
because the materials were not strong enough to hold the PSI of
the water."  During the demonstration, Michael Berardi asked a
question about the materials used in the prototype and whether
this prototype was a final version of the MicroHose.

The attendees disagree about how well the prototype performed during this demonstration. Ragner testified that it performed "very well" and expanded to about five times its original length before retracting back to its original size. Combs testified that the prototype performed "exactly the way it was supposed to." In contrast, Michael Berardi described the prototype's performance as "disappointing" because "[i]t didn't expand much and it didn't contract much." Cheryl Berardi testified that the hose "didn't move a lot" and "when the water turned off, it did not contract well."

The meeting attendees also dispute the extent to which a non-disclosure agreement (NDA) was discussed and agreed upon. The Ragner Technologies team does not contend that Michael Berardi or Ed Kelly signed an NDA agreement before, during, or after the August 23 meeting. Combs testified that Ragner Technologies typically asked parties to sign an NDA in advance of meetings. However, she testified that because this meeting was scheduled at the last minute, she had not sent an NDA in advance of the August 23 meeting. Combs also testified she did not bring her computer, which contained the up-to-date version of Ragner Technologies' NDA. Instead, Combs asserts that she broached the topic of an NDA at the outset of the meeting. According to Combs, after a tour of the Berardis' home, she asked if the Berardis and Kelly would agree to keep the meeting

16

confidential and sign an NDA.  Combs testified that Michael
Berardi and Ed Kelly nodded, and the meeting continued.

Michael Berardi testified that the Ragner Technologies team
knew of the meeting time and location in advance of August 23,
2011.  According to Michael Berardi, Combs informed them as they
were walking out the door that she would send an NDA.  Michael
Berardi testified he only shrugged in response because he "knew
that there was no way [he] was going to deal with these people."
On August 25, 2011, Combs emailed an NDA to Michael Berardi and
Ed Kelly.  Neither responded to her email nor signed an NDA.

**E. Events Following the August 23 Meeting**

Michael Berardi testified that he left the August 23
meeting feeling "surprised and disappointed."  Michael Berardi
testified that he had retained his "nebulous idea" about his own
hose and quickly started experimenting to make a cost effective,
expandable hose.  To build on the "little idea [he] had
germinating in [his] head," Michael Berardi purchased supplies
for his new hose at Home Depot, Wal-Mart, and Sports Authority
and started experimenting a day after meeting with Ragner
Technologies.

During his first attempt at making an expandable garden
hose, Michael Berardi testified he "didn't really know . . .
what [he] was doing" but had "some concept, some idea of maybe
what would happen."  For his first attempt at creating his

17

retractable hose, Michael Berardi purchased a two-and-a-half-inch drainage pipe for pools to serve as the outer layer of his hose.  Within a day or two, Michael Berardi had developed his first prototype: a flat vinyl hose with an internal elastic tube.  In this version of Michael Berardi's hose, the internal elastic tube was connected to the external vinyl hose at each end and did not expand radially.  According to Michael Berardi, "the water in that first one didn't go through the hose . . . it was outside the inner tube."  According to Michael Berardi, this prototype ultimately burst during testing.

This failed prototype was "not [Michael Berardi's] final thought process as to how the final product would be made."  As Michael Berardi continued to experiment between August 24 and early November 2011, he adjusted the materials used in his hose.  As he was unable to find webbing at the hardware and sporting goods stores he initially visited, Michael Berardi ordered it off the Internet and used both PVC pipe and clamps to insert an inner tube into the webbing.

Michael Berardi, with the help of Cheryl Berardi, documented his attempts to build on his "seed idea" for an expandable garden hose suitable for direct TV response marketing.  Together, the Berardis created dozens of videos documenting the inventive process of the XHose.  Later, when they made a commercial for the XHose, Michael Berardi testified

18

he "might have subconsciously remembered some of the things that [Gary Ragner] said" in his video for the MicroHose. Michael Berardi continued by explaining that "there are things on mine that are new and things on his [Gary Ragner's] that, you know, were similar." As he testified, many of these experiments failed. However, on November 2, or 3, 2011, Michael Berardi succeeded in making a fifty-foot prototype of what would eventually become the XHose. On November 4, 2011, Michael Berardi and Blue Gentian filed for a patent, which eventually became Patent '941.

When asked about the invention, Cheryl Berardi testified that "nothing that was used to create the XHose was used discussed at that [the August 23] meeting." During the inventorship hearing before the Court, Michael Berardi testified that he did not use anything that Gary Ragner told or showed him when inventing his hose. Ragner testified that Michael Berardi's first prototype was "almost identical to what [he] described to him, minus the wire biasing spring." Ragner was struck by the fact that Michael Berardi used "the same diameter I kind of conveyed to him in prototype 2."

## ANALYSIS

### A. Subject Matter Jurisdiction and Standing

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) ("The district courts shall have

19

original jurisdiction of any civil action arising under any Act
of Congress relating to patents, plant variety protection,
copyrights and trademarks.").  Under 35 U.S.C. § 116, patent
applications must include the names of all inventors.  If a
patent names persons who are not inventors (misjoinder) or omits
persons who are inventors (nonjoiner), 35 U.S.C. § 256 "provides
two methods for correction: (1) the Director of the United
States Patent and Trademark Office may correct the patent upon
application of all parties and assignees; or (2) '[t]he court
before which such matter is called in question may order
correction of the patent on notice and hearing of all the
parties concerned.'" Polyzen, Inc. v. RadiaDyne, L.L.C., 2012 WL
4049841 at *2 (E.D.N.C. 2012).

For the Court to have jurisdiction over an action for
correction, § 256 requires notice and an opportunity for all
parties to be heard.  Stark v. Advanced Magnetics, Inc., 119
F.3d 1551, 1553 (Fed. Cir. 1997).  In contrast to proceedings
before the Director of the United States Patent and Trademark
Office, § 256 does not require that all inventors and assignees
agree for a district court to have subject matter jurisdiction.
In this case, all parties were given notice and an opportunity
to be heard.

**B. Motion Opinion Standard**

20

"Rule 52(a)(3) provides that the court is not required to state findings or conclusions when ruling on a motion unless the rules provide otherwise." Ambrose v. Krause Publications, Inc., 354 Fed.Appx. 711, 713 (3d Cir. 2009). Nevertheless, when "the district court is presented with conflicting positions of substance as to how it should exercise its discretion . . . it is salutary practice to give the litigants, either orally or in writing, at least a minimum articulation for the reasons of its decision." State Farm Mut. Auto. Ins. Co. v. Midtown Medical Center, Inc., 388 Fed.Appx. 125, 129 (3d Cir. 2010) (quoting Interpace Corp. v. City of Phila., 438 F.2d 401, 404 (3d Cir. 1971)).

This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(3). See Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980) (holding that to be in compliance with Rule 52(a), findings of fact and conclusions of law do not need to be stated separately in a court's memorandum opinion); see also Ciolino v. Ameriquest Transp. Services, Inc., 751 F. Supp. 2d 776, 778 (D.N.J. 2010) (issuing an opinion which constituted the court's findings of fact and conclusions of law).

## C. Correction of Inventorship Standard and Burden of Proof

In a § 256 proceeding to correct inventorship, "the inventors as named in an issued patent are presumed to be

21

correct." <u>Hess v. Advanced Cardiovascular Sys., Inc.</u>, 106 F.3d
976, 980 (Fed. Cir. 1997) (citations and internal quotation
marks omitted). In addition to this presumption, courts have
also recognized the "temptation for even honest witnesses to
reconstruct, in a manner favorable to their own position, what
their state of mind may have been years earlier." <u>Id.</u> (citing
<u>Amax Fly Ash Corp. v. United States</u>, 514 F.2d 1041, 1047
(1975)). In recognition of this temptation, the claimed
inventor must "meet a heavy burden of proving his case by clear
and convincing evidence." <u>Au New Haven, LLC v. YKK Corp.</u>, 2019
WL 2996473 at *5 (S.D.N.Y. 2019) (citing <u>Finkelstein v. Mardkha</u>,
495 F. Supp. 2d 329, 337 (S.D.N.Y. 2007)).

To satisfy this standard, a claimed inventor must provide
evidence corroborating his testimony concerning conception of
the invention. <u>Eli Lilly & Co. v. Aradigm Corp.</u>, 376 F.3d 1352,
1358 (Fed. Cir. 2004); <u>Ethicon, Inc. v. U.S. Surgical Corp.</u>, 135
F.3d 1456, 1461 (Fed. Cir. 1998). Finally, "[t]he determination
of whether a person is a joint inventor is fact specific and no
bright-line standard will suffice in every case." <u>Fina Oil &
Chem. Co. v. Ewen</u>, 123 F.3d 1466, 1473 (Fed. Cir. 1997).

**D. Correction of Inventorship**

    **a. Conception**

Conception is a term of art in patent law and "the
touchstone of inventorship." <u>Burroughs Wellcome Co. v. Barr</u>

Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994) (citing Sewall
v. Walters, 21 F.3d 411, 415 (Fed. Cir. 1994)); Finkelstein, 495
F.Supp.2d at 337.  A person can be a joint inventor only if he
or she contributes to the conception of the claimed invention.
See Eli Lilly, 376 F.3d at 1359.

Courts have recognized that "the line between actual
contributions to conception and the remaining, more prosaic
contributions to the inventive process that do not render the
contributor a co-inventor is sometimes a difficult one to draw."
Id.  However, the Court is not entirely without guidance as to a
working definition of "conception."  Conception is "the
formation in the mind of the inventor, of a definite and
permanent idea of the complete and operative invention, as it is
hereafter to be applied in practice."  Burroughs, 40 F.3d at
1228 (quoting Hybritech Inc. v. Monoclonal Antibodies, Inc., 802
F.3d 1367, 1376 (Fed. Cir. 1986)).  Conception has also been
defined as "the complete performance of the mental part of the
inventive act."  Coleman v. Dines, 754 F.2d 353, 359 (Fed. Cir.
1985).

The mental act of conception is complete when "the idea is
so clearly defined in the inventor's mind that only ordinary
skill would be necessary to reduce the invention to practice
without extensive research or experimentation."  Burroughs, 40
F.3d at 1228; see Sewall, 21 F.3d at 415 ("Conception is

23

complete when one of ordinary skill in the art could construct the apparatus without unduly extensive research or experimentation."). An idea is sufficiently defined when an inventor has a "specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." Burroughs, 40 F.3d at 1228 (citing Fiers v. Revel, 984 F.2d 1164, 1169 (Fed. Cir. 1993)). Conception of an invention, therefore, must include every feature of a claimed invention. See Coleman, 754 F.2d at 359. This analysis requires that an inventor can describe his or her invention with particularity. Burroughs, 40 F.3d at 1228.

Plaintiffs argue that Gary Ragner could not have contributed to the conception of the XHose because Michael Berardi had already conceived of a hose with an elastic tube inside a fabric cover during his "eureka moment" in his community gym. However, by his own admission, at the time that Michael Berardi and Gary Ragner met, Michael Berardi did not have a definite and permanent idea of the complete and operative XHose. Instead, he had a "nebulous concept" or "seed idea" for an expandable garden hose derived simply from his exposure to the Ragner Technologies video.

On August 23, 2011, Michael Berardi had not completed the mental part of the inventive act. Moreover, his idea was not so clearly defined that it only took ordinary skill to produce the

24

XHose.  Developing the XHose required extensive experimentation.
Michael Berardi testified that it took almost two and a half
months of experimentation to create a fifty-foot prototype of
the XHose.  Michael Berardi did not have a specific, settled
idea, but rather a general goal of creating an expandable garden
hose that could succeed as a DRTV product.  Similarly, Michael
Berardi did not yet have solution to a problem, or even a
research plan to follow for the creation of the XHose.  In fact,
he testified that while making his first prototype, he "didn't
really know what [he] was doing" and had not settled on a "final
thought process" for how to produce his hose.

     At the time that Michael Berardi and Gary Ragner met,
Michael Berardi's idea for a hose did not yet include every
feature of his invention.  Michael Berardi's inventive process
demonstrates that his idea for the XHose was indeed "nebulous,"
as he described it.  Michael Berardi testified he "didn't really
know . . . if [he] was going to put the water through the hose"
when he made the first prototype of the XHose.  During the two
and a half months following his meeting with Ragner, Michael
Berardi changed both the materials and the design for the XHose.
Furthermore, even if one credits it, Michael Berardi's
conversation with his wife following his "eureka moment" does
not illustrate that Michael Berardi could describe his invention

with particularity, but rather that he was enthusiastic about the idea.

The Court finds that because Michael Berardi did not have a conception of the XHose prior to the August 23 meeting, it is possible that Gary Ragner contributed to the conception of the XHose.

### b. Collaboration

Title 35, United States Code, Section 116 allows for a patented invention to be the work of two or more joint inventors. Ethicon, 135 F.3d at 1461 (citing 35 U.S.C. § 116). "Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs." Eli Lilly, 376 F.3d at 1359. To be added to a patent, an alleged inventor must show that his or her labor were "conjoined with the efforts" of the listed inventors. Id.

While it is difficult to precisely define collaboration for the purpose of joint inventorship, the Federal Circuit in Kimberly-Clark Corp. provides a helpful explanation:

> For persons to be joint inventors under Section 116, there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting.

973 F.2d 911, 918 (Fed. Cir. 1992). In other words, "joint inventorship arises only 'when collaboration or concerted effort occurs - that is, when the inventors have some open line of

26

communication during or in temporal proximity to their inventive efforts.'" Falana v. Kent State Univ., 669 F.3d 1349, 1358 (Fed. Cir. 2012) (quoting Eli Lilly, 376 F.3d at 1359). On the other hand, the Federal Circuit in Kimberly-Clark Corp. further articulated that:

> Individuals cannot be joint inventors if they are completely ignorant of what each other has done until years after their individual independent efforts. They cannot be totally independent of each other and be joint inventors.

973 F.2d at 918.

Though joint inventors must have knowledge of his or her co-inventor's efforts, these cases stop short of requiring an intent to invent. In CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co., the Federal Circuit considered whether dismissal of a correction of inventorship claim at the motion to dismiss stage was appropriate. 916 F.3d 1350, 1353 (Fed. Cir. 2019). In that matter, the defendant, through General Motors Corp., expressed an interest in plaintiff's self-inflating tire ("SIT") technology. Id. The plaintiff met with the defendant and allegedly "shared novel, proprietary, and confidential information concerning its SIT technology." Id. at 1354.

At a second meeting a few months later, the plaintiff allowed the defendant to examine a working prototype, which the defendant photographed without the plaintiff's permission. Id. A few months later, the defendant applied for a patent "entitled

'Self-Inflating Tire Assembly.'" Id.  The plaintiff claimed this invention was at least in part what the plaintiff had shown the defendant during their meetings.  Id.  Eleven other patents were issued to the defendant on similar technology thereafter. Id. at 1355.  The Federal Circuit opined that this set of allegations was sufficient to support a correction of inventorship claim, and specifically was enough to show collaboration.  Id. at 1359-60.  In reaching this decision, the Federal Circuit took into account the defendant's prior failures, eagerness to meet with the plaintiff, unauthorized photography of a functional prototype, the timing of a more distance relationship with the plaintiff, and an accusation from a former employee as evidence that the plaintiff's correction of inventorship claim was plausible.  Id. at 1359.

While there may be slight factual differences between the situation described in CODA Dev. S.R.O. and the current facts, the Court finds that the facts are sufficiently similar to support a finding of collaboration in this matter.  Michael Berardi saw relevant and excruciatingly detailed graphics and photographs at his meeting with Ragner Technologies.  These disclosures encompassed Ragner's novel, proprietary, and confidential information concerning Ragner Technologies' MicroHose most, if not all, of which had been set forth in Ragner's pending patent applications.

Though Michael Berardi did not photograph the prototype he was shown, he did hold and use it, even asking to keep it. Berardi clearly relied upon the prototype and Ragner's oral suggestions about alternative methods for building an expandable hose in building his own. After Michael Berardi applied for his patent for the XHose in November 2011, Ragner recognized these inventions as being related to what he had shown Michael Berardi in the August 23 meeting. Moreover, Michael Berardi had neither attempted nor failed to make an expandable hose prior to meeting with Ragner Technologies and he admitted he was eager to meet with Ragner Technologies about its expandable hose.

After the meeting, neither Ed Kelly nor Michael Berardi responded to Margaret Combs' email regarding an NDA, and the parties never communicated again, suggesting a more distant relationship. These facts are not favorable to Plaintiff. The Court credits the testimony of Combs that she had secured an oral commitment from those at the meeting, including Berardi, for the post-meeting signing of an NDA. Her post-meeting conduct corroborates that testimony.

An NDA was never signed not because the parties had not agreed to it but rather because the investor part of the group was not interested in investing in a machine to build a product that could be built more cheaply overseas. And Michael Berardi had no reason to sign an NDA after the fact. Despite the oral

agreement that had been reached, the Court is convinced Berardi left the meeting intent on using what he had learned in it to flesh out his nebulous idea and build a flexible hose for himself.

Plaintiffs argue that because Gary Ragner did not intend to invent a garden hose when he met with Michael Berardi, he could not have collaborated in creating the XHose.  Plaintiffs further point to the fact that Ragner did not think that he had invented a new garden hose when he left the August 23 meeting as evidence that he did not collaborate with Michael Berardi.  The Court rejects Plaintiff's argument that there must be an intent to invent or expectation of having invented for collaboration, as a legal matter to occur.  The issue is not Ragner's intent but Berardi's and his level of knowledge before and after the meeting.

The Court finds on the evidence presented that as a matter of law Gary Ragner collaborated with Michael Berardi to invent the patents in question.

### c. Contribution

A person can be listed as an inventor only if he or she contributes to the conception of the claimed invention.  <u>Fina Oil & Chem. Co.</u>, 123 F.3d at 1473.  However, the statute providing for joint inventorship does not set an explicit lower limit on "the quantum or quality of the inventive contribution

30

required for a person to qualify as a joint inventor." Id.; see 35 U.S.C. § 116. Title 35, United States Code, Section 116 allows for inventors to apply for a patent jointly event though "(1) they did not physically work together or at the same time; (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent." 35 U.S.C. § 116. A joint inventor does not need to make a contribution of the same type or amount of the named inventor, nor does a joint inventor need to make a claim to every claim of a patent. See Finkelstein, 495 F.Supp.2d at 337-38 (quoting Ethicon Inc., 135 F.3d at 1460). A contribution to one claim is enough. See id.

To qualify as a joint inventor, a person's contribution must be "not insignificant in quality, when that contribution is measured against the dimension of the full invention." Fina Oil & Chem. Co., 123 F.3d at 1473. Merely "explaining to the inventors what the state of the art was and supplying a product to them for use in their invention" is not a sufficient contribution to establish joint inventorship. Hess, 106 F.3d at 980 (holding that a person who did "no more than a skilled salesman would do" and did not conduct any research and development work had not contributed to an invention). Similarly, "exercising ordinary skill in the art to reduce an idea to practice" does not constitution a contribution. See

31

Finkelstein, 495 F.Supp.2d at 416.  A person who provides "well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole" cannot be named a joint inventor.  Ethicon, 135 F.3d at 1460 (quoting Hess, 106 F.3d at 981).

Defendants do not contend that Ragner physically worked with Michael Berardi in creating the XHose.  Defendants similarly do not contend that Ragner and Michael Berardi did their work at the same time.  Defendants also do not argue that Ragner and Michael Berardi made the same amount or type of contribution.  Defendants instead argue that Michael Berardi contributed nothing to the invention of the XHose.  According to Defendants, Ragner contributed at least one of the following concepts to the conception of the XHose: "(1) inner and outer tubes attached only at the ends; (2) a fabric outer tube, and (3) an elastic inner tube that can provide force to retract the hose, including without a metal spring."

Plaintiffs counter that Ragner did not contribute to Michael Berardi's invention.[5]  Plaintiffs highlight that all the MicroHose prototypes Ragner and de Rochemont had created before

---

[5] Plaintiffs also assert that the Court is required to engage in claim construction prior to determining inventorship.  The Court has declined to do so and need not do so in order to determine that Defendants have met the standard to show that Ragner is a co-inventor of the Berardi patents-in-suit.

August 23 relied on a wire or some type spring for biasing. Plaintiffs deny that the conversation between Ragner and Michael Berardi about replacing the spring component with elastic ever occurred.  Plaintiffs emphasize that Michael Berardi never saw, held, or used prototype 2 of the MicroHose, but instead saw a prototype that differs greatly from the XHose.  At most, Plaintiffs allege that Ragner contributed valuable information that was already part of the prior art in hose manufacturing.

Plaintiffs argue that the novel information that Ragner claims to have disclosed during the meeting was covered by his previous patent, U.S. Patent No. 6,948,527.  Therefore, according to Plaintiffs, everything Ragner described to Michael Berardi was already part of the art.  But Berardi and Plaintiffs have asserted that Berardi's patents are distinguished from Ragner Patent '527 by Berardi's inclusion of (1) inner and outer tubes attached only at the ends, (2) a fabric outer tube, and (3) an elastic inner tube that can provide force to retract the hose without a metal spring.

The Court finds that Ragner made a significant contribution to the invention of the XHose, and, in particular, to the conception of at least one claim in each of the six asserted Berardi patents, by conveying these three elements to Berardi in the context of the design for a garden hose. It was not disputed that each of Berardi's four asserted utility patents has one or

more claims that require at least these three elements. Further,
in disclosing these elements in the context of Ragner's hose
designs – including his disclosure that the spring in those
designs could be removed – Ragner (as he testified) conveyed to
Berardi a hose with the 'crumpled' aspect depicted in Berardi's
two design patent claims, which Berardi himself admitted is the
result of how the hose is made.  In the course of his meeting
with Michael Berardi, Cheryl Berardi, and Ed Kelly, Ragner did
more than merely explain the state of the art and supply a
product for their use.  According to Michael Berardi's
testimony, Ragner acted more "like a professor" than a skilled
salesman during his explanation of the MicroHose production
process.  Ragner shared the fruits of his own research and
development work on expandable garden hoses for over a half-hour
during this investment meeting.  He created and presented visual
aids to explain both the manufacturing process and internal
structure of the MicroHose, exercising more than ordinary skill
in the art.

Given his years of experience working on hoses and his
eighteen to twenty prototypes of the MicroHose, the Court finds
that Ragner had a clear and definite picture of the expandable,
retractable garden hose he described as prototype 2.  Ragner's
decision not to pursue this design further does not reflect a
lack of a clear or definite idea.  Rather, Ragner's continued

34

innovation reflects a rejection of a design that, in Ragner's view, exhibited an unacceptable propensity to burst under high water pressure.

Without engaging in claim construction, the Court does not find that everything Ragner disclosed was covered by Patent '527. Ragner testified that he told Michael Berardi it was possible to make an expandable garden hose without using a spring to bias the hose, testimony the Court credits. Michael Berardi (joined by Plaintiffs) interprets Patent '527 as relying on a spring for biasing, whereas Michael Berardi's patents do not. Berardi Patent '941 asserts the absence of a spring as a means of distinguishing itself from Ragner Patent '527. If the presence of a biasing spring is what distinguishes Michael Berardi's patents from Ragner's patent, then by disclosing that a biasing spring was not necessary, Ragner could not have been disclosing information already in the art.

The Court finds that Ragner contributed to the invention of the XHose by sharing information that, according to Michael Berardi's (and Plaintiffs') own understanding and assertions, was not previously available to Michael Berardi about designs for a retractable hose.

### d. Corroboration

When considering whether an alleged inventor's testimony is corroborated, a Court must "bear in mind the purpose of

corroboration, which is to prevent fraud, by providing independent confirmation of the inventor's testimony." <u>Kridl v. McCormick</u>, 105 F.3d 1446, 1450 (Fed Cir. 1997); see <u>Mycogen Plant Sci., Inc. v. Monsanto Co.</u>, 61 F.Supp.2d 199, 240 (Fed. Cir. 1999). "There is no single formula that must be followed in proving corroboration." <u>Berry v. Webb</u>, 412 F.2d 261, 266 (CCPA 1969). By the same token, there is no single type of corroborating evidence. <u>Finkelstein</u>, 495 F.Supp.2d at 337 (citing <u>Trovan, Ltd. v. Sokymat SA, Irori</u>, 299 F.3d 1292, 1303 (Fed Cir. 2002)).

Typically, courts have allowed for "proof by circumstantial evidence" and have not required "an over-the-shoulder observer or corroboration of every factual issue." <u>Cooper v. Goldfarb</u>, 154 F.3d 1321, 1330 (Fed. Cir. 1998). Corroborating evidence includes contemporaneous documentary evidence, oral testimony of others, and circumstantial evidence. <u>Finkelstein</u>, 495 F.Supp.2d at 337.

Of these types of relevant evidence, only the inventor's testimony must be corroborated before it can be considered. <u>Price v. Symsek</u>, 998 F.2d 1187, 1196 (Fed. Cir. 1993). In contrast, physical exhibits do not require corroboration. <u>Id.</u> The Federal Circuit has referred to documentary or physical evidence as "the most reliable proof that the inventor's testimony has been corroborated." <u>Martek Biosciences Corp. v.</u>

Nutrinova Inc., 579 F.3d 1363, 1375 (Fed. Cir. 2009) (citing Sandt Tech. Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350-51 (Fed. Cir. 2001)). This evidence is particularly reliable because physical evidence is usually "created at the time of conception or reduction to practice," eliminating the "risk of litigation-inspired fabrication or exaggeration." Sandt Tech. Ltd., 264 F.3d at 1351.

The Federal Circuit applies a "rule of reason" test to determine whether the inventor's testimony has been corroborated. Id. The Court will therefore "examine, analyze, and evaluate reasonably all pertinent evidence when weighing the credibility of an inventor's story." Holmwood v. Sugavanam, 948 F.2d 1236, 1239 (Fed. Cir. 1991). In Price v. Symsek, the Federal Circuit listed several factors bearing on the inventor's credibility and whether the inventor's testimony is adequately corroborated: "(1) the delay between the event and the trial, (2) interest of corroborating witnesses, (3) contradiction or impeachment, (4) corroboration, (5) the corroborating witnesses' familiarity with details of alleged prior structure, (6) improbability of prior use considering state of the art, (7) impact of the invention on the industry, and (8) relationship between witness and alleged prior user." 998 F.2d at 1195 n. 3.

Defendants offer several physical exhibits to corroborate Ragner's testimony. These exhibits include: Ragner

37

Technologies' business plan, a version of the MicroHose
prototype similar to the one used for demonstration at the
meeting, a color drawing of Process 17,[6] instructions for
potential investors written by Ragner, and U.S. Patent No.
8,776,836.  The business plan, drawing, and instructions all
discuss "knitted reinforcement" or "fiber reinforcement" on the
outside of the hose.  Ragner's Process 17 drawing also
references an expandable hose with an elastic tube that provides
retracting force.  The prototype Ragner actually used to
demonstrate the MicroHose was like another protype presented at
the hearing that features an inner and outer tube attached only
at the ends, except that in the demonstrated prototype the
elastic vinyl tube through which water flowed was surrounded by
a valley cord (rather than a full outer fabric tube) that was
attached only at the ends.

The Court agrees with Defendants that U.S. Patent No.
8,776,836 corroborates Ragner's testimony.  Patent '836, which

---

[6] Michael Berardi testified that he was not sure if the process
17 drawing he was shown during his deposition or during this
hearing was the exact document he saw during the August 23
meeting.  Michael and Cheryl Berardi both testified that the
drawing they saw during the meeting at their house was in color.
Michael Berardi contests that the document at the meeting did
not have pictures or graphics.  The exhibit was entered into
evidence with both parties' acquiescence.  The Court finds on
the evidence presented at the hearing that the document entered
into evidence is either the graphic shown at the meeting or is
not materially different.

was filed in 2006, but not published until 2013, memorializes
Ragner's knowledge about retractable garden hoses when he
attended the August 23, 2011 meeting.  However, because this
patent was not published until 2013, this information was not
publicly known at the time Ragner and Berardi met and discussed
the MicroHose.

Again, without engaging in claim construction, the Court
finds that Patent '836 corroborates Ragner's testimony that he
had previously designed a hose with these three features: (1)
inner and outer tubes connected only at the ends; (2) a fabric
outer tube made of nylon or polyester; and (3) an elastic inner
tube to provide biasing force without the need for a spring.
This prior knowledge corroborates Ragner's testimony that he was
prepared to, and did in fact, discuss these features with
Michael Berardi at the August 23 meeting.  The fact that Patent
'836 later entered the public domain does not bar a finding of
co-inventorship, especially given that this information was "not
contemporaneously available to an ordinary skilled artisan"
during the meeting in question.  Cf., CardiAQ Valve Techs. v.
Neovasc Inc., 708 Fed. Appx. 654, 660 (Fed. Cir. 2017)
(unpublished).

Furthermore, Michael Berardi's first prototype also
corroborates Ragner's testimony.  Ragner testified that he was
struck by the similarity between what he had described to

39

Michael Berardi as prototype 2 and Michael Berardi's first prototype. Both prototypes featured elastic running through the middle of a larger, a two-and-a-half-inch diameter hose. In both prototypes, water could not run through the internal elastic element.

Perhaps even more telling is that this initial prototype did not seem to match Michael Berardi's own alleged conception of his hose. Michael Berardi's first version appears to more closely match Ragner's description of prototype 2 than his original idea for a hose. During his "eureka moment," Michael Berardi contemplated running water through an elastic tube like the ones he saw in his community gym. However, this was not the idea he first implemented. Instead, Michael Berardi started his inventive process with the design that Ragner testified he shared with Michael Berardi just days before.

Because these exhibits are physical evidence created at the time of conception or reduction to practice, there is no risk of litigation-inspired fabrication or exaggeration. The Court finds that these exhibits corroborate Gary Ragner's testimony.

Next, the Court will take into account all the pertinent evidence when weighing the credibility of Ragner's story. Using the factors from Price, the Court will examine whether each witness's testimony corroborates Ragner's invention story.

A long delay between the events in question and testimony may undermine the reliability of an alleged inventor's testimony.  See Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371-72 (Fed. Cir. 1998).  However, when an alleged inventor relies on contemporaneous documents and demonstrates a strong recollection of the subject matter, his or her testimony is bolstered.  Ceats, Inc. v. Continental Airlines, 2012 WL 12886830 at *7 (E.D. Tex. 2012).  In this case, all the corroborating and contradictory witnesses are testifying about events that occurred in 2011 or earlier.  It has been several years since this meeting has occurred but, in some cases, the witnesses have had access to contemporaneous documents.

An interested witness is a "named party, an employee of or assignor to a named party, or [a person who] otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue."  Id. (citing Thomson S.A. v. Quixote Corp., 116 F.3d 1172, 1176 (Fed. Cir. 1999)); see Netscape Comms. Corp. v. ValueClick, Inc., 704 F.Supp.2d 544, 555-56 (E.D. Va. 2010) (discussing the requirements for corroborating interested and disinterested witnesses' testimony).  As will be discussed below, several of the witnesses offering corroborating or contradicting testimony are interested witnesses.

41

### 1. Margaret Combs' Testimony

Though Ragner Technologies no longer employs Combs, she has retained a 10% equity in the company.  Combs is an interested witness for purposes of corroborating Ragner's testimony.

Combs testified that she was not close enough to Ragner and Michael Berardi to overhear a conversation about prototype 2 or any alternative designs for an expandable hose.  Combs' testimony neither contradicts nor corroborates Ragner's testimony.

### 2. Robert de Rochemont's Testimony

De Rochemont is currently the CEO of Ragner Technologies. De Rochemont is an interested witness for the purposes of corroborating Ragner's testimony.

De Rochemont testified that due to his hearing loss, he, like Combs, was not able to hear Ragner and Michael Berardi's conversation.  De Rochemont's testimony neither contradicts nor corroborates Ragner's testimony.

### 3. Keith Mirchandani's Testimony

As an owner of Tristar, Keith Mirchandani is an employee of a named party.  Because Tristar also produces an expandable hose, Mirchandani likely has an interest in the outcome of this inventorship hearing.  Mirchandani is an interested witness for the purposes of corroborating Ragner's testimony.

Mirchandani testified that Ragner relayed his conversation with Michael Berardi to him later.  Mirchandani testified that Ragner told him that Ragner had shared with Michael Berardi that a spring may not be necessary for a retractable hose.  However, Mirchandani was not present at the meeting to witness this conversation himself.  Furthermore, Mirchandani did not learn of the MicroHose until September 2012 when he began pursuing licensing agreements for an expandable hose.  It is therefore unlikely that Mirchandani is familiar with the details of the MicroHose structure or prototype 2.

The Court finds that Mirchandani's corroboration is weak at best.

### 4. Cheryl Berardi's Testimony

Cheryl Berardi is an employee of a named party, Blue Gentian.  Cheryl Berardi does not stand to gain if Ragner is named as a co-inventor of these patents.  Cheryl Berardi is therefore an interested witness.  Though Cheryl Berardi may not stand to gain if Ragner is named as a co-inventor, she is not without an incentive to reconstruct the events of August 23 in a manner favorable to her position.  Cheryl Berardi and Blue Gentian stand to benefit from Michael Berardi remaining the sole inventor of the XHose.

Cheryl Berardi's testimony partially contradicts Ragner's testimony.  Cheryl Berardi testified that the meeting attendees

43

did not discuss elastic or any previous models of the MicroHose during the August 23 meeting at her home. Cheryl Berardi also testified that she was not paying attention to all parts of the meeting and would at times leave the room. The Court finds Cheryl Berardi's contradictory testimony unpersuasive.

### 5. Michael Berardi's Testimony

Michael Berardi is an employee of a named party, Blue Gentian. However, Michael Berardi does not stand to gain if Ragner is named as a co-inventor of these patents. Michael Berardi is therefore an interested witness as defined above. Like Cheryl Berardi, Michael Berardi also has an interest in reconstructing the events of the August 23 meeting in a manner more favorable to himself. Michael Berardi and Blue Gentian have an interest in remaining the sole owners of the six patents in question.

Michael Berardi's testimony both contradicts and corroborates Ragner's testimony. Michael Berardi contradicted Ragner's testimony by claiming that while they may have discussed "elastomers," at the August 23 meeting, they did not discuss "elastic." However, Michael Berardi also testified that he did ask Ragner about the materials used in the MicroHose prototype during the demonstration portion of the meeting. Michael Berardi stated that while he did remember some questions being asked during the Ragner Technologies team's explanation of

Process 17, he could not remember any specific questions. This account does not preclude the possibility that Ragner's testimony about his conversation with Michael Berardi was accurate. To the extent their testimony conflicts, after observing their demeanor and after reviewing all the evidence as a whole, the Court views Ragner's testimony on this issue the most credible.

Furthermore, while Ragner maintains that Michael Berardi took most, if not all, of his idea for the XHose from Ragner Technologies, Michael Berardi partially concedes that he "may have subconsciously remembered" some elements of Ragner's video for the MicroHose during his inventive process. Michael Berardi also admitted that his original idea for the XHose "kind of reminded me I guess maybe of the expanding hose that Ragner had invented."

Michael Berardi's testimony is particularly relevant for corroboration. As the only inventor currently listed on the six patents in suit, Michael Berardi is very familiar with the details of the technology used in the XHose. Michael Berardi also held and used a prototype of the MicroHose at the August 23 meeting. During the three to four-hour meeting at his house, Michael Berardi listened to Ragner lecture "like a professor" about manufacturing the MicroHose. Michael Berardi is therefore familiar with the details of both inventions.

45

Ragner Technologies attempted to establish an ongoing business relationship with Ed Kelly and Michael Berardi. Following the August 23 meeting, it became clear, at least to Michael Berardi, that this business relationship would not move forward. As mentioned above, the prospect of a business relationship lasted from late July 2011, to August 23, 2011. When Margaret Combs emailed Ed Kelly and Michael Berardi about a non-disclosure agreement on August 25, 2011, she did not receive a response. Ragner Technologies and Michael Berardi never met again.

After considering all pertinent evidence, the Court finds that Ragner's testimony is adequately corroborated both by physical and circumstantial evidence. Although he was seeking investors not a collaborator, when Gary Ragner made his elaborate and thorough presentation at the August 23 meeting, he conveyed to Michael Berardi key elements of the eventual product known as the XHose, more specifically, as Defendants contend: (1) inner and outer tubes attached only at the ends; (2) a fabric outer tube, and (3) an elastic inner tube that can provide force to retract the hose, including without a metal spring.

When, as here, "inventors have some open line of communication during or in temporal proximity to their inventive efforts" co-inventorship can occur. Falana, 669 F.3d at 1358.

46

Michael Berardi may be a resourceful and inventive person, but here his creation of the XHose occurred only because of the immediately preceding insight, inventiveness, prior detailed experimentation, design, help, and guidance, albeit short-lived, of Gary Ragner.

### Conclusion

Gary Ragner came to the August 2011 meeting well-prepared as an experienced engineer and inventor of flexible and expandable hoses. Ragner had not only experimented with various designs, he had built several prototypes (including one he brought and demonstrated at the meeting) and had taken the further step of designing a machine to build them. To explain the machine is to explain the product. His expertise and years of work were on full display.

In a practical sense, however, Ragner was ill-prepared for the hastily arranged version of "Shark Tank" he encountered in Michael Berardi's home. Berardi, as creative in other milieus as he may have been, hosted the meeting not as an experienced engineer but because of his understandable eagerness to learn about and exploit commercially the product he had seen in the Ragner Technology online video. He left the meeting having been taught something he did not know before the meeting - the key design principles of an expandable and flexible hose as outlined above. He simply went on, in short time, to build, using the

information he had learned, a cheaper and simpler version of the invention Ragner disclosed at the meeting and one, importantly, containing each of its key components.

Accordingly, for the reasons discussed above, Defendants have shown through clear and convincing evidence that Gary Ragner contributed to the conception of the XHose and at least one claim in each of the asserted Berardi patents and should be named an co-inventor.  The Court will grant Defendants' motion for a correction of inventorship.

An accompanying Order will be entered directing a correction of inventorship for the patents in suit.  Orders denying Defendants' motion to disregard Plaintiffs' unauthorized June 12, 2019 filing, and motion for expedited consideration of motion to disregard Plaintiffs' unauthorized June 12, 2019 filing will also be entered.


Date: <u>August 12, 2021</u>               <u>  s/ Noel L. Hillman      </u>
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

# EXHIBIT N

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BLUE GENTIAN, LLC, NATIONAL
EXPRESS, INC., and TELEBRANDS CORP.,

               Plaintiffs,

    v.

TRISTAR PRODUCTS, INC. and WAL-
MART STORES, INC. d/b/a SAM'S CLUB
AND SAM'S WHOLESALE CLUB,

               Defendants.

[AMENDED] NOTICE OF APPEAL

Case No.: 13-1758

NOTICE IS GIVEN that Plaintiffs, Blue Gentian, LLC, National Express, Inc. and

Telebrands Corporation, appeal to the United States Court of Appeals for the Federal Circuit from

the Opinion and Judgment (Docket Nos. 545 & 548) as entered in this action on January 16,

2020, and Amended Opinion (Docket No. 567), as entered in this action on August 12, 2021,

entered in favor of Defendants as to Defendants' claims for Correction of Inventorship of U.S.

Patent Numbers: 8,291,941, 8,291,942, 8,479,776, 8,757,213, D772,681, and D724,186.

Dated and signed this 10th day of September, 2021.

               STONE & MAGNANINI LLP
               By: /s/ David S. Stone
               David S. Stone
               100 Connell Drive, Suite 2200
               Berkeley Heights, NJ 07922
               Telephone: (973) 218-1111
               dstone@stonemagnalaw.com
               *Attorneys for Plaintiff Telebrands*
               *Corporation*

               MCELROY, DEUTSCH,
               MULVANEY & CARPENTER, LLP
               By: /s/ George C. Jones
               George C. Jones
               1300 Mount Kemble Avenue
               P.O. Box 2075

Morristown, NJ 07962-2075
Telephone: (973) 993-8100
gjones@mdmc-law.com

McHALE & SLAVIN, P.A.
By: /s/ Edward F. McHale
Edward F. McHale
2855 PGA Boulevard
Palm Beach Gardens, FL 3341
Telephone (561) 625-6575
litigation@mchaleslavin.com

*Attorneys for Blue Gentian, LLC and
National Express, Inc. and Michael
Berardi.*